1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3            Before The Honorable Laurel Beeler, Magistrate Judge

4

5   UNITED STATES OF AMERICA,        )
                                     )
6            Plaintiff,              )
                                     )
7   vs.                             )    No. CR 24-00141-VC-1
                                     )
8   LINWEI DING,                    )
                                     )
9            Defendant.             )
    _____)

10

11                                   San Francisco, California
                                     Wednesday, March 6, 2023

12

13   TRANSCRIPT OF PROCEEDINGS OF THE OFFICIAL ELECTRONIC SOUND
              RECORDING 10:37 - 11:11 = 34 MINUTES

14

15   APPEARANCES:

16   For Plaintiff:
                                     United States Attorney's
17                                   Office
                                     Criminal Division
18                                   450 Golden Gate Avenue
                                     Box 36055
19                                   San Francisco, California
                                      94102
20                          BY:  CASEY BOOME, ESQ.

21   For Defendant:
                                     Goodwin Procter LLP
22                                   601 Marshall Street
                                     Redwood City, California 94063
23                          BY:  GRANT P. FONDO, ESQ.

24

25

*Echo Reporting, Inc.*

ii

Transcribed by:                Echo Reporting, Inc.
                               Contracted Court Reporter/
                               Transcriber
                               echoreporting@yahoo.com

1

1  <u>Wednesday, March 6, 2023</u>                    <u>10:37 a.m.</u>

2                    P-R-O-C-E-E-D-I-N-G-S

3                         --oOo--

4            THE CLERK:  Calling criminal action 24-141, USA

5  versus Linwei Ding.

6       Counsel, can you please state your appearances for the

7  record?

8            MR. BOOME:  Good morning, your Honor.  Casey Boome

9  for the government.

10           MR. FONDO:  Good morning, your Honor.  Grant Fondo

11  for the defendant Linwei Ding, specially appearing this

12  morning, and I note that he's in custody and in court.

13           THE COURT:  Okay.  In agent custody.

14           MR. LIBBY:  Josh Libby, US Pretrial.  Good

15  morning.

16           THE COURT:  Good morning.  Okay.

17       So you're here today because the government has

18  returned charges against you in the form of an indictment.

19  What we do at the initial appearance -- and did you have a

20  chance to talk before court at all?  You probably didn't.

21           MR. FONDO:  We did a little bit, your Honor.

22           THE COURT:  A little bit.  Okay.

23       So what we do at the initial appearance is we go

24  through what the charges are, talk about what happens next

25  in the case, and we start with your constitutional rights.

2

1    You have the right to an attorney in your case.  You're
2    entitled to consult with and be represented by an attorney
3    at all stages of your case, in court and out of court,
4    including during any questioning by the government.  If
5    someone can afford to hire a lawyer, they may hire a lawyer
6    of their own choosing.  If someone can't afford to hire a
7    lawyer, the Court appoints one at no cost.  Do you
8    understand your right to an attorney?  And then we're on the
9    record, so you'll have to speak up audibly.  Sorry about
10   that.
11        THE DEFENDANT:  Yes, yes.
12        THE COURT:  Okay.  And -- so you're doing a
13   special appearance for today.
14        MR. FONDO:  Correct.
15        THE COURT:  And so I think what I normally do, but
16   you tell me if you want to do something different, rather
17   than enter the not guilty -- I don't know if you want to --
18   we'll go through the right to remain silent, the Due Process
19   Protections Act, the advisement of charges, query whether
20   you want me to defer entering the actual formal arraignment,
21   just notice of the charges until after counsel is finalized.
22   You tell me what you think.
23        MR. FONDO:  That's fine, your Honor.  Just so you
24   understand where we're -- our procedural status is, I'm
25   going to assist him through the detention process.

3

1          THE COURT:  Okay.  Got it.  So then I think we can
2  do the arraignment.  Great.  Okay.  So you also have the
3  right to remain -- thank you for clarifying that.
4      You also have the right to remain silent.  You don't
5  have to say anything to the government about your case.  If
6  you said something already, you don't have to say anything
7  else.  If you start to make a statement, you may stop at any
8  time.  If you decide that you do want to talk to the
9  government about your case, you're entitled to talk with
10  your lawyer first and have him with you, because if you talk
11  to the government about your case, your statements may be
12  used against you.  Do you understand your right to remain
13  silent?
14          THE DEFENDANT:  Yes.
15          THE COURT:  Okay.  I'll remind the government of
16  its obligations pursuant to the Due Process Protections Act
17  and its obligations under <u>Brady vs. Maryland</u> and its progeny
18  to make the <u>Brady</u> disclosures.  A failure to do so in a
19  timely manner may result in dismissal of the indictment,
20  individual charges, exclusion of evidence, witnesses, or any
21  other remedy that is just under the circumstances.
22      The indictment charges three counts of trade secrets
23  violations and --
24          MR. BOOME:  Four counts, your Honor.  Excuse me.
25          THE COURT:  Four counts.  Okay.  Sorry.  Four

4

counts.  One, two, three.  Four counts of trade secrets
violations, correct.  The penalties -- I'm not saying this
is what you'll get.  It depends on a lot of different
things.  But this is the maximum under the statute.  And for
each count, it's up to 10 years in prison, a $250,000 fine
or twice the gross gain or loss, whichever is greater, $100
special assessment fee, three years supervised release --
three years supervised release, which is like probation
after any jail sentence, and restitution can be implicated
too.  Also, there's a forfeiture allegation in the
indictment, and that means that if you use things to commit
crimes or get money from committing crimes, the government
can take those things.  So those are generally the charges
and the penalties.  Do you understand those things
generally?

            THE DEFENDANT:  (No audible response.)

            THE COURT:  Counsel, do you have a detailed
reading of the indictment?

            MR. FONDO:  Yes, we do, your Honor.

            THE COURT:  Are you prepared to enter not guilty
pleas on your client's behalf and to deny the forfeiture
allocation?

            MR. FONDO:  Yes, your Honor.

            THE COURT:  All right.  Not guilty pleas will be
entered.  The forfeiture allocation is denied.  The record

5

1  will reflect that you've been arraigned.

2      What's the government's position on detention?

3          MR. BOOME:  Your Honor, the government is moving

4  for detention today based on a risk of flight.

5          THE COURT:  Okay.  And why don't you make a

6  proffer to me about why that is.

7          MR. BOOME:  This is not a presumption case, and --

8          THE COURT:  So it's got to be a serious risk of

9  flight, not a risk of flight.

10         MR. BOOME:  That's right, your Honor.  And it's

11  the government's burden to show that by a preponderance of

12  the evidence --

13         THE COURT:  Okay.

14         MR. BOOME:  -- in this case.

15     The reasons for our motion are that Mr. Ding has

16  financial assets and family in the People's Republic of

17  China.  The offense conduct here showed dishonesty and

18  manipulation, and the Defendant had a one-way ticket to

19  Beijing that he was set to depart on January 7th of 2024,

20  which is the day before (sic) the FBI searched his residence

21  and seized his PRC passport.

22         THE COURT:  Okay.  So he had a flight on January

23  27th (sic).  Then there was a search warrant, then they took

24  his passport, and he didn't go, and he stayed here.

25         MR. BOOME:  He's remained.

6

1          THE COURT:  Right.

2          MR. BOOME:  And I'll mention the mitigating

3  factors --

4          THE COURT:  Okay.

5          MR. BOOME:  -- as well, your Honor, if I can be --

6  if I can elaborate a little bit on the dishonesty and

7  manipulative behavior that gives the government pause about

8  Mr. Ding's risk of flight.  Here, the allegations, as you

9  know from the indictment, are that he stole trade secrets

10 relating to artificial intelligence technology from Google

11 while concealing from Google his association with two

12 companies in the PRC that were focused on AI and artificial

13 intelligence.  He traveled to China on multiple occasions to

14 fundraise for these companies, all while secreting away

15 these trade secrets that would -- the government will show

16 benefit these companies.

17      During some travel to China, particularly in November

18 and December of last year, 2023, Mr. Ding took steps to

19 conceal his travel from Google, including by leaving his

20 Google access badge with another employee in the United

21 States.  And he requested that that employee scan the badge

22 at his US office location to make it appear as though he was

23 working from the US when, in fact, he was in China

24 fundraising for his companies.

25      When Mr. Ding's residence was searched by the FBI, they

7

1  found evidence of bank accounts at China Merchants Bank and

2  Bank of China.  He was interviewed by the FBI while they

3  conducted the search on January 6, and he was dishonest with

4  them about his conduct in this case, about --

5          THE COURT:  How was he dishonest?

6          MR. BOOME:  He denied resigning from Google when

7  the government has evidence that he did, in fact, resign.

8  There was significant denial, especially in the beginning

9  portions of the interview, about his uploading of trade

10 secrets from Google.  He first -- he had stated that he only

11 took notes and didn't copy information from the Google

12 network.  When confronted with more information by the

13 agents, he then admitted that, well, in fact, he did -- he

14 had copied some information, but only a few documents, maybe

15 50.  In fact, when the government searched his personal

16 cloud storage accounts, the government found more than 500

17 files containing Google confidential information, including

18 the trade secrets alleged in the indictment.

19      And there's one more factor about that dishonesty that

20 I need to mention for the Court's consideration, and that's

21 what happened on December 8th of 2023.  While Mr. Ding was

22 in the People's Republic of China, he was confronted by a

23 Google investigator because, at that point, Google had

24 discovered just a small fraction of the upload activity,

25 meaning uploading Google confidential information to his

8

1 personal cloud accounts.  The investigator questioned Mr.

2 Ding about the upload activity, and he asked Mr. Ding to

3 sign an affidavit of self-deletion.  And in that affidavit,

4 Mr. Ding swore that he had searched all of his personal

5 devices and accounts for Google confidential information and

6 that he had deleted all such information.  That was December

7 8th of 2023.  A month later, the FBI searches his accounts

8 and found more than 500 files, including the trade secrets

9 alleged in the indictment.

10      So I have to mention now, there is some mitigating --

11 mitigation here.  You're right to point out, your Honor,

12 that Mr. Ding is still here even though the FBI searched his

13 house on January 6, although they did take his passport, and

14 he was not able to get on the plane.

15      Mr. Fondo reached out to the government a couple of

16 weeks later after January -- the January 6 search, informed

17 the government that he represented Mr. Ding, and offered to

18 self-surrender Mr. Ding.

19      While the government has every confidence in Mr. Fondo

20 and his representations, based on his conduct, Mr. Ding, we

21 do not have the same confidence in Mr. Ding, and we were

22 concerned that if he knew that he had charges against him --

23 serious charges, that he would flee.

24      So that's where we are, your Honor.  If the Court is

25 not inclined to grant the government's detention motion, we

9

1  would urge the Court to consider stringent conditions.  In

2  anticipation of the hearing this morning, Mr. Fondo and the

3  government have had some discussions about conditions,

4  including a secured bond secured by Mr. Ding's residence,

5  which he owns, GPS location monitoring so that any trips to

6  the airport, for example, could be detected, as well as

7  agreeing to surrender his access to several cloud storage

8  accounts that were involved in the offense in -- and in

9  which the government found the alleged trade secrets.

10      Those conditions, including, of course, a promise not

11  to obtain any new travel documents and surrender any that he

12  might still have, I have to say would help to mitigate the

13  risk, but not eliminate it.  And the government, for that

14  reason, maintains that detention is the only way, based on a

15  serious risk of flight, to ensure that Mr. Ding continues to

16  appear for court.

17          THE COURT:  Okay.

18      Mr. Fondo.

19          MR. FONDO:  Thank you, your Honor.

20      Just another point or two just to follow up on what the

21  government said.  So I actually called the government twice

22  most recently, probably about one to two weeks ago, to offer

23  the self-surrender.  Also, my -- our -- Mr. Ding is locked

24  out of all the devices and Google Drives that I believe the

25  government is concerned about.  And I also offered this

10

1  morning to talk to them, if there was any other -- any -- to

2  sort of coordinate on what they were concerned about, and we

3  would make sure that my client did not have access without

4  his attorneys present and would not have a passport -- I

5  mean -- password.

6         THE COURT:  The cloud access is -- I mean, we have

7  tons of trade secrets cases on the civil side.  These issues

8  are easily addressed, especially with third-party vendors,

9  right?  So it's super easy to avoid that situation.  I know

10 the government probably doesn't have third-party vendors, or

11 maybe it does these days, but it's like -- that concern is

12 easily addressed.  So I'm sure that can be worked out.

13        MR. FONDO:  And, your Honor, the other allegations

14 are kind of, sort of, standard trade secret type allegations

15 about, you know, taking information, lying about it, et

16 cetera.  I'm not going to go into that.

17    But let me address some of the other issues, which is,

18 as noted, there was a search warrant executed nearly two

19 months ago.  He has remained in the country.  He never got

20 on that flight.  Also, he does travel back and forth to

21 China.  That was not an unusual event, and so it's not out

22 of the ordinary.  In addition, they have his passport.  He's

23 been in the US for approximately 15 years.  He went to

24 graduate school here in Southern California, USC.  He has a

25 green card.  He's been gainfully employed essentially the

11

1  whole time through.  He is married.  His wife is here.  He

2  has a six-year-old son.  His son is a US citizen.  They have

3  a house that they own and have owned for the last five years

4  in this area in Newark, California.

5      And so there is -- we think this concern about him

6  leaving is highly overblown.  There's a reason you have to

7  show your passport to get out of the country.  And he has

8  not -- he has not left since then.  I've met with him on a

9  number of occasions.  So we do not believe that he is a

10 flight risk in this context any more than any other non-US

11 born citizen.

12         THE COURT:  Okay.  So one of the issues is, you

13 will get through this case -- just -- so you will get

14 through this.  You will get through this.  And I don't think

15 that the government has met its burden of establishing a

16 serious risk of flight.  I think that the issues are those

17 that attend.  It's not unusual to travel to China when

18 you're from China.  The allegations are serious, and you

19 will get through it.

20     And I also appreciate from the government's perspective

21 -- we've had other cases where, to use a high level term of

22 art, it was a boneheaded move to leave because people are

23 going to get through it.  It's never as bad as it looks when

24 you first look at things.  You will get through this.  You

25 have a wife, you have a child.  Hopefully, you'll get -- you

12

1  have great representation now.  Hopefully, you'll work out a

2  way to get great representation on a going forward basis.

3      There are lots of things that can happen to make it

4  better than it looks now.  People do flee because they can

5  and they're scared, but it would be a mistake to do it, if

6  only for your family.  You will get through this.  It will

7  be okay eventually.  It probably doesn't feel that way now,

8  but it will be okay eventually.

9      Okay.  So what conditions do you -- did you fill out a

10  bond form?

11          MR. FONDO:  So we have one here, yes, your Honor.

12          THE COURT:  Okay.  So what are the conditions you

13  propose you should talk to the government about?  And it's

14  just -- you know -- and the issue is, we're going to go

15  through all the conditions, all conditions will be in

16  writing.

17      You'll promise me that you'll show up for your court

18  appearances and surrender for the sentence of any sentence

19  imposed.  I really -- as long as you are on board with that

20  process of being here for your family, it's going to be

21  okay.  And no one is going to prevent you from living your

22  life.  It's going to be okay.  All right.

23          MR. BOOME:  And if the Court -- I understand

24  you're denying my motion, and I'm not seeking to reargue it,

25  but if you would let me clarify one piece of the record.

13

1          THE COURT:  Yes.

2          MR. BOOME:  I'm not -- I was not arguing that

3    being a citizen of China, having family in China --

4          THE COURT:  No, I appreciate that you -- you

5    couldn't argue it because you're not allowed to.

6          MR. BOOME:  Of course.

7          THE COURT:  But one is allowed to take into

8    consideration the circumstances that surround somebody's

9    personal involvement in a case, including where they're

10   from.  It's just that ground alone isn't enough to detain.

11   But I am allowed to consider it, so I think it's fair that

12   you raised it.

13         MR. BOOME:  And the issue is, you know -- if -- in

14   case I wasn't clear.  The one -- it was --

15         THE COURT:  There's another defendant who's hiding

16   out in China right now in another government case, yeah.

17         MR. BOOME:  The one-way ticket was booked after

18   Mr. Ding had resigned from Google and taken steps to start

19   businesses in China.

20         THE COURT:  Yes.

21         MR. BOOME:  So the government's concern --

22         THE COURT:  It is not -- it is not unusual.  I

23   will just tell you it's not unusual to book a one-way ticket

24   to Asia when you don't know when you're coming back.  It

25   happens all the time.  I happen to know that because -- from

14

1  personal experience in the business sector.  My husband

2  travels all the time to Asia and frequently buys a one-way

3  ticket because he doesn't know when he's coming back.

4           MR. BOOME:  Right.

5           THE COURT:  So, like, it's a month, two months,

6  whatever.  So it's not untypical with traveling to Asia.  It

7  may mean something.  I'm not saying it doesn't mean

8  something.  But -- and if he had the means to leave, he

9  could have already because with -- he knew what happened,

10  and he had representation, and he was offering to self-

11  surrender.  So I do think that the risk is mitigated by the

12  wife and child and the substantial ties here.  That's the

13  reason.  If he were on his own, maybe it would be different.

14           MR. BOOME:  Certainly, your Honor.  And I'm not

15  trying to argue with the Court.  I just wanted to make

16  sure --

17           THE COURT:  No, no --

18           MR. BOOME:  -- it was clear the basis for my

19  motion was not --

20           THE COURT:  No, I appreciate that.

21           MR. BOOME:  -- what -- clear what it was, that it

22  was the starting businesses in China, resigning from Google,

23  assets in China.  That combination, not just the

24  citizenship.

25           THE COURT:  A hundred percent understand.  You

15

1  made good arguments, and they do support your concern about

2  a serious risk of flight.  So I agree with what you said.

3            MR. BOOME:  And we would be happy to work with Mr.

4  Fondo on conditions which we think should include --

5            THE COURT:  So why don't you just look -- but why

6  don't you just look at them, yeah, and decide -- and I'm --

7  and then propose whatever you would like, and if you

8  disagree, tell me.

9        And you'll get out, I mean, shortly.  We'll do the

10  processing, and he'll (sic) walk up and out the 20th floor,

11  probably meet with your lawyer, probably meet with Pretrial

12  Services afterwards, and then you can go home.  So -- okay.

13  It'll be fine.  Because he's in agent custody, not marshal's

14  custody, right?

15            U.S. MARSHAL:  Negative, ma'am.  He's in our

16  custody.

17            THE COURT:  Oh, he's in custody.  So does he have

18  to go back to Santa Rita?

19            U.S. MARSHAL:  No.  He's actually -- we haven't

20  booked to Santa Rita, so --

21            THE COURT:  Okay.

22            U.S. MARSHAL:  -- if there's a release order

23  today, we'll release him out of the cell block.

24            THE COURT:  Perfect.  Okay.  Great.  Okay.  Yeah.

25  Well -- thank you.

16

1    So, Pete, you managed to make it up here?

2        UNIDENTIFIED SPEAKER:  Last night, your Honor.

3 Late last night.

4        THE COURT:  Yeah.  I'm so sorry.  Like, it was --

5 apparently, the airport was a disaster.  My husband's flight

6 got canceled at 1:00 a.m.  Like, his 10:30 flight got

7 canceled at 1:00 a.m., so -- yeah, I'm glad you're here.

8 Yeah.  Sorry about that.  I was -- I felt for you yesterday.

9 Okay.

10       MR. FONDO:  Your Honor, in light of the previous

11 conversations that we had with the government and in light

12 of the government -- your statements, we've agreed to

13 location monitoring --

14       THE COURT:  Okay.

15       MR. FONDO:  -- for temporarily.  And we'll

16 obviously not waive have a right to come in and change that.

17 And I think we --

18       THE COURT:  It's totally fine.

19       MR. FONDO:  -- can expect that we will if he's

20 behaving himself.  And then we agreed to $150,000 secured

21 bond.  We just want to make sure that was okay with the

22 Court.  One thing I did not raise with counsel just now was

23 we would want approximately until at least next Friday to

24 get that paperwork in --

25       THE COURT:  That's fine.

17

1            MR. FONDO:  -- but not hold up his release --

2            THE COURT:  That's fine.

3            MR. FONDO:  -- in the interim.  Okay.  And so that

4    is (indiscernible) --

5            MR. BOOME:  We -- yes, your Honor.  In light of

6    the Court denying the detention motion, those conditions, I

7    think, would help mitigate some of the concern here.

8            THE COURT:  And I am going to refer the matter to

9    Pretrial Services for bail setting.  It'll only help.  So

10   when he gets out on -- shortly, however the Marshals process

11   him out, you can meet him up there, if you want, walk down

12   with him to Pretrial Services on 18.  He's got, you know,

13   his wife here.  The agents are here and can talk with

14   Pretrial Services too right after court.  And that way, we

15   can put it over.  We can -- well, there are two things we

16   can do.  We can put it just on Judge Chhabria's calendar,

17   you know, and we'll have to put a date on judge --  it's

18   Judge Chhabria, right?

19           MR. BOOME:  Yes, your Honor.

20           THE COURT:  And so I'll have to put it on Judge

21   Chhabria's calendar.  We can put it on for another date

22   here.

23       I think that probably Pretrial Services, they may not

24   recommend location monitoring.  That's one issue.  They

25   probably will be fine with whatever conditions you

18

1  recommend.  And if anything, they come up with the

2  conditions they think are the least onerous conditions

3  necessary to secure somebody's presence in court.  But

4  that's fine.  If they -- you know, if they want more, which

5  is probably unlikely, just given what you're agreeing to, I

6  don't think we necessarily need to put it on here.  You can

7  come back at some point if you want to revisit.  It's

8  completely up to you.  I'm here every day this month.  So if

9  you decide you want to put it on calendar here, too, that's

10 fine.  So it's up to you whether you want to put it on for a

11 few days.  I don't know that it's necessary.  I think that

12 what's more important is putting it on Judge Chhabria's

13 calendar.  So, yeah.

14          MR. FONDO:  Your Honor, I agree.  I think what --

15 if we could get the -- until next Friday, then if there's an

16 issue, then we will -- and we have a good reason for it,

17 we'll come --

18          THE COURT:  Okay.  So a week from Friday.  Is that

19 what you're --

20          MR. FONDO:  Yeah, a week from this Friday.

21          THE COURT:  Yeah.  Okay.  That's fine.  So the

22 bond posting -- so and -- well, you're -- the bond will be

23 $150,000 secured, with the deadline to post of March 15th.

24 And I think it's -- if there's equity in the property, I

25 assume you'll just post a deed form --

19

1        MR. FONDO:  There is.  Yes, your Honor.

2        THE COURT:  -- with the clerk -- with the clerk's

3   office.

4        MR. BOOME:  And it would be -- we would be

5   securing it with his residence.

6        THE COURT:  Yeah.  So that's fine.  That's pretty

7   simple paperwork under the general order for bail, as you'll

8   remember.

9        MR. BOOME:  Sorry, your Honor.  We'll just --

10  since we're in agreement, we'll finish filling this out --

11       THE COURT:  Yes, please.

12       MR. BOOME:  -- if we could have another minute.

13  Thank you.

14     (Pause.)

15       THE COURT:  And so one issue is when you want to

16  put it on Judge Chhabria's calendar because of the issues of

17  representation.  And that's a ground for excluding time

18  under the Speedy Trial Act.  So what are your thoughts

19  there?

20       MR. FONDO:  Your Honor, I would say 45 days.

21       THE COURT:  Okay.  That's fine.

22       MR. FONDO:  I'm sure we can get it resolved.

23       THE COURT:  Sometimes they push back, but I have

24  no problem with doing it.  So I just let you know, like,

25  whatever they -- I think it's appropriate to put it out, a

20

1   chunk of time, and we'll put it on for a status, maybe just

2   so we -- we could either put it on, so we'll either put it

3   on for him.  But since someone is going to need -- now that

4   I think about it, since someone is going to need an

5   appearance to represent him as opposed to a special

6   appearance through the detention, well, I think we'll put it

7   on before the duty judge at a date that you can pick in

8   April --

9           MR. FONDO:  Okay.

10          THE COURT:  -- or May, whatever the 45 days works

11  out to.  So you can look at your calendars and see what you

12  think.  Then there should be the one-page Speedy Trial Act

13  form that's under the podium there that the government can

14  pull out.  We can exclude time to obtain counsel and also to

15  provide discovery.  You know, you may want to do some of

16  that facilitating piece of it along the way.  So --

17          MR. FONDO:  As soon as we pick a date, we're ready

18  to submit the form, your Honor.

19          THE COURT:  Right.  So -- yeah, so 45 days out on

20  the duty calendar would put us into probably --

21          THE CLERK:  Mid-April.

22          THE COURT:  -- mid-April -- mid to late April.

23  You -- let's -- pick a day, any day.

24          MR. FONDO:  Sorry, what was the date?

25          THE CLERK:  Any day.  Mid-April.  We could do

21

1  April 17.

2        THE COURT:  Why don't we pick a Wednesday, just in

3  case we want to put it over to Judge Chhabria's calendar

4  that afternoon?

5        THE CLERK:  April 17.

6        THE COURT:  So we've got -- perfect.  Elaine is,

7  like, ahead of the game.

8        MR. FONDO:  Sure.  I will be -- sorry, I think I'm

9  out of the country that week.  So can we do --

10        THE COURT:  Okay.  So we can do the week before or

11  the week after, whatever you --

12        MR. FONDO:  Week after is fine.  We can do the

13  24th.

14        THE COURT:  Okay.  So the April 24th.  I will put

15  it on the duty calendar, at 10:30.  I'll find that for

16  continuity of counsel, to secure counsel, and for effective

17  preparation, because there will be discovery, and counsel

18  will need to get up to speed, that there's grounds for

19  excluding time under the Speedy Trial Act.  Until that date,

20  I find the ends of justice served by the continuance

21  outweigh the best interests of the public, the government,

22  and the defendant.  And the speedy trial, I will sign that,

23  and we'll go through the conditions.

24        Okay.  So all conditions will be in writing, as I

25  mentioned.  So it's -- you will be signing this as both the

22

surety and the defendant because when you post property,
you're basically a surety for yourself.  So I better cross
those out because you're not going to need that.

So all conditions are in writing.  I know that you're
going to follow all the conditions.  But if you were to
violate the conditions, you're -- you could go into custody
and be in custody during your case.  All the conditions are
actually court orders.  So if you violate a court order,
that's something called contempt of court.

One of the conditions is that you have to show up for
all of your court appearances, surrender for the service of
any sentence imposed.  I know you're not going to do -- it's
a crime to try to influence a juror or threaten or attempt
to bribe a witness, retaliate against anyone for providing
information about your case or otherwise obstruct justice.
All those things are separate crimes, up to five years in
prison and a $250,000 fine.  I know you're not going to do
this.  But if you were to commit a crime on release, it's
something called an aggravating factor and could be a higher
sentence for whatever that was.

These are all things we tell everybody.  I know all of
these things aren't going to be a problem, but we tell
everybody that.

As I said, it'll be $150,000 secured bond.  You'll have
the property address secured by -- and it's going to be the

23

1  property address in Newark.  Is that right?

2            MR. FONDO:  Correct, your Honor.

3            THE COURT:  Okay.  I just -- I need to put that on

4  -- secured by the --

5            MR. FONDO:  Dandelion address.

6            THE COURT:  -- real property listed above.  When

7  you do post the property, the clerk's office needs that

8  information.  So I'm writing it on the bond form.  And then

9  deadline is 3/15/2024.

10       And -- so that's -- I already said appear at all

11  proceedings, do not coming another federal, state, or local

12  crime.  You'll be supervised by Pretrial Services.  You'll

13  report immediately after release.  You just walk down to the

14  -- they're probably assigning somebody in the East Bay, but

15  you'll walk down and talk with Pretrial Services on the way

16  home today.  You'll not -- I know the government -- the FBI

17  already took your passports, but you're not to have any

18  other travel documents while on release.  And so don't apply

19  for any.  You'll not possess a firearm, destructive device,

20  or a dangerous weapon.

21       Do we do that anymore, from Pretrial Services?  Do we

22  still do that --

23            MR. LIBBY:  We do.

24            THE COURT:  -- for all cases?  All right.  I

25  thought there was something weird about the -- when it

24

1  wasn't that kind of offense.

2       You'll not change residence before -- without Pretrial

3  Services' approval.  So you have to live where you're

4  living.  Your travel is restricted to the Northern District

5  of California, which is basically the Greater Bay Area.  The

6  counties are listed on the back, and there's a map on the

7  bond form.  You'll a hard copy.

8       You'll be subject to location monitoring.  Pretrial

9  Services usually likes a curfew with location monitoring,

10 right?  But it's kind of -- it's just -- basically, it's the

11 -- it's for the government for now.

12             MR. LIBBY:  So, your Honor --

13             THE COURT:  And it's just basically so we know

14 where he is.  What's your view on that?

15             MR. LIBBY:  It really comes down to whether you

16 guys want him on lockdown --

17             THE COURT:  No --

18             MR. FONDO:  No.

19             THE COURT:  -- 100-percent not.

20             MR. LIBBY:  -- or -- okay.  Then it can be

21 lockdown --

22             THE COURT:  I just want him to have a normal life.

23             MR. LIBBY:  -- with reasons allowed to leave, or

24 it can be just a general curfew.

25             THE COURT:  Okay.

25

1          MR. LIBBY:  However, the -- curfew is fine with

2   us, your Honor.

3          THE COURT:  Well, he doesn't really need a curfew.

4   You know, I just -- I think -- you know, government just

5   wants to make sure he's not leaving the country.  And so

6   what should we do with that piece of it?  I mean, how should

7   I address that?

8          MR. LIBBY:  Well, I think --

9          THE COURT:  I know the curfew is easier for you,

10  but I just -- you know, he's got a kid, he's got a life.

11  I'm not -- I don't think they're -- I mean, honestly, I

12  think he's probably going to be fine without the electronic

13  monitoring.  But we'll just get a little stability for 30

14  days and see what it looks like.

15         MR. LIBBY:  Curfew is perfectly fine, your Honor.

16  I would say something along the lines of 8:00 p.m. to 6:00

17  a.m.

18         THE COURT:  I mean, is that -- does that work for

19  your life?

20         THE DEFENDANT:  (No audible response.)

21         THE COURT:  I mean, I can also say 11:00 p.m to

22  6:00 a.m.

23         MR. FONDO:  I think 11:00 p.m., your Honor.

24         THE COURT:  I mean, that's --

25         MR. LIBBY:  The other issue becomes the

26

1   technology.

2             THE COURT:  Exactly.  Well, that's the real issue,

3   because if it's GPS, and he goes around --

4             MR. LIBBY:  So -- yeah, GPS is literally tracking

5   him everywhere, as opposed to --

6             THE COURT:  So the government put GPS.  But here's

7   the other thing with Pretrial Services -- I don't usually

8   tell them because it depends on what they have.  And they

9   don't -- and it's spend a year.  GPS is spend a year.

10            MR. LIBBY:  It is.

11            THE COURT:  And so I can't necessarily tell them

12  to do -- the government will be perfectly happy if he didn't

13  have a curfew and there's GPS so they could tell if he goes

14  to SFO.  That's what they want to do.

15            MR. BOOME:  That's exactly right, your Honor.

16            THE COURT:  And so that's what they want -- that's

17  what they want to do.  Or gets on a train, and it's like see

18  you later.  So that's -- I don't know what to do.  He can

19  pay for GPS.

20            MR. LIBBY:  So on GPS, your Honor, we could do a

21  zone around airports, and then -- there is no curfew.  And

22  then if he goes near an airport, we get an alert.  I have a

23  feeling we're going to recommend that this be -- this is

24  going to be removed, let me be honest with you, once the

25  bond is secure.

27

1          THE COURT:  They're not going to -- they're not
2  going to recommend GPS.  They're just not going to do it.
3          MR. LIBBY:  But we can start there.
4          THE COURT:  I have no problem with -- I have no
5  problem with ordering it.  So don't get me wrong.  I'm not
6  pushing back on it.  And really it's the airport issue.  I
7  think we just do something -- if you've got a zone thing
8  where you can -- I mean, I think we just want to make sure
9  he doesn't go anywhere.
10         MR. FONDO:  The only thing I would add is, how far
11  is the zone?  Just because my office is in Redwood City.
12         THE COURT:  Oh, he's allowed to go out and about
13  in the Northern District.
14         MR. FONDO:  No, no.  I meant -- but you set a zone
15  with, like -- is it like --
16         THE COURT:  Oh, I see.
17         MR. FONDO:  Is it like a mile outside the airport?
18         MR. LIBBY:  Yes.  It would be fine.
19         MR. FONDO:  Okay.
20         MR. LIBBY:  It would be fine.
21         THE COURT:  Well, but he's literally going to
22  drive by down -- well, I guess he'll probably drive down.  I
23  don't know how he would go to Redwood City from Newark.
24  That's how pathetic I am on, like, the --
25         MR. LIBBY:  Would you --

28

1          MR. FONDO:  He would not go -- he would not pass

2     the airport.

3          MR. LIBBY:  Would you cross the San Mateo bridge?

4          THE COURT:  He probably doesn't know either.

5          MR. LIBBY:  Yeah.  So --

6          THE COURT:  We're all so provincial here.  But if

7     he were going 101, he would drive right by the airport.

8          MR. LIBBY:  Here's what I will tell you.  If he

9     were to drive by an airport, we'll get an alert -- we're

10    able to dive in and see what's going on.  If he's driving on

11    the freeway, we can figure that out fairly quickly.

12         MR. FONDO:  Okay.

13         THE COURT:  Okay.  All right.  So we'll just do

14    the GPS monitoring for now.  Pretrial will, like, let us

15    know if there's any problems.  I'm not going to impose a

16    curfew or anything like that.  We'll just deal with that.

17    And that's how it'll be.  Okay.  All right.

18         MR. FONDO:  Thank you, your Honor.

19         THE COURT:  So -- and you'll -- no access to

20    certain -- three accounts that are listed here, but you can

21    have access to and --

22         MR. BOOME:  Your Honor, what I would clarify that

23    -- sorry, and I should have -- access without attorney

24    present.

25         THE COURT:  No access without presence of

29

1  attorney.  I mean, again, all of these things -- normally,

2  what we do is we do a forensic scrub of all the data.  And,

3  you know, it's super easy.  The devices, you just send it to

4  a vendor.  They do a scrub.  They do -- you can -- like, you

5  can run it against the Google accounts.  You can see -- you

6  can -- they probably already have done this.  They've

7  figured out, you know, what was taken.  It's all done

8  already.  You can run the -- run it against the devices.

9  The third-party vendor can do it to avoid privileged

10 information, or the taint team can do it.  And usually,

11 these things are remediable.

12     And so I trust that you'll sort it out, because, you

13 know, we tend to -- he's just going to have to have another

14 e-mail account and put some kind of a forwarding in.  And so

15 it's just one of those things in trade secrets cases.  We

16 have a really stock model of how we approach them.  So I'll

17 do it.  I'm going to order it, but I'm just saying you guys

18 should sort this out.  So he's already signed that.  So

19 that's fine.

20     Do you promise to abide by all the conditions of your

21 release?

22         THE DEFENDANT:  (No audible response.)

23         THE COURT:  Okay.  All right.  So I'm going to

24 sign it.

25     Oh, and then one thing I didn't say to you is this, the

30

1 $150,000 is -- you know, you're posting the property. But

2 if you were to violate any of the conditions of your

3 supervision, the government would declare the bond forfeit

4 and will come after you for the $150,000, and -- I mean,

5 they'll have the property posted, but even if they didn't

6 have the property posted, even if it wasn't secured, they

7 can basically get to your money. It's the government. And

8 so that's the -- and that, of course, would affect the

9 financial stability of your wife and your son and you. So

10 that's the extra incentive you have to comply with the

11 conditions of supervision.

12     Okay. All right. So I have signed the bond form. The

13 next date -- we have the next date we already put in of --

14         THE CLERK: April 24th.

15         THE COURT: April 24th, 4/24/2024, 10:30 a.m. ID

16 of counsel -- and we won't put it on Judge Chhabria's

17 calendar, but it -- we have the possibility of putting it on

18 Judge Chhabria's calendar that afternoon at 1:00 o'clock if

19 that's what everybody wants.

20         MR. FONDO: I think that makes sense, your Honor.

21         THE COURT: Then it'll be for ID of counsel and

22 further setting, and time has been excluded under the Speedy

23 Trial clock. I'll hand the bond form back to Elaine for

24 posting. I'll give you the indictment back.

25     And good luck. You'll -- as I said, pretty shortly,

1  you'll walk out the 20th floor.  I assume Mr. Fondo and your

2  family will be up there to meet with you and walk you down

3  to the Pretrial Services interview.  Yes.

4          MR. LIBBY:  If I could just add one thing, your

5  Honor.

6          THE COURT:  Yes.

7          MR. LIBBY:  The plan with the GPS.  We're going to

8  put a zone around the Northern District.  If he leaves this

9  district, we'll get an alert, and then will put a zone

10  around all the airports.  But otherwise, he'll have freedom

11  of movement.

12          THE COURT:  Perfect.

13          MR. FONDO:  Thank you, your Honor.

14          THE COURT:  Perfect.

15          MR. BOOME:  Thank you.

16          THE COURT:  That's great.  Look at you.

17  Technology.  Okay.  Good.  All right.  So thanks, everybody.

18          MR. FONDO:  Thank you, your Honor.

19          MR. BOOME:  Thank you, your Honor.

20      (Proceedings adjourned at 11:11 a.m.)

21

22

23

24

25

32

1                    CERTIFICATE OF TRANSCRIBER

2

3        I certify that the foregoing is a true and correct

4   transcript, to the best of my ability, of the above pages of

5   the official electronic sound recording provided to me by

6   the U.S.  District Court, Northern District of California,

7   of the proceedings taken on the date and time previously

8   stated in the above matter.

9        I further certify that I am neither counsel for,

10  related to, nor employed by any of the parties to the action

11  in which this hearing was taken; and, further, that I am not

12  financially nor otherwise interested in the outcome of the

13  action.

14

15

16

17          Echo Reporting, Inc., Transcriber

18                 Friday, June 14, 2024

19

20

21

22

23

24

25