CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

CASEY BOOME (NYBN 5101845)
MOLLY K. PRIEDEMAN (CABN 302096)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6627
    casey.boome@usdoj.gov
    molly.priedeman@usdoj.gov

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. 3:24-cr-00141-VC |
| Plaintiff, | ) **UNITED STATES' MOTION TO EXCLUDE EXPERT TESTIMONY OF ISAAC PLFAUM** |
| v. | ) The Honorable Vince Chhabria |
| LINWEI DING, | ) Courtroom 4, 17th Floor |
| Defendant. | ) |

UNITED STATES' MOTION TO EXCLUDE EXPERT TESTIMONY OF ISAAC PFLAUM
3:24-cr-00141-VC

**INTRODUCTION**

On August 26, 2025, the defense noticed Isaac Pflaum as an expert witness. Mr. Pflaum is the senior director of software litigation at Quandary Peak Research. Mr. Pflaum has spent the entirety of his career as a "software expert witness." He has no experience with Artificial Intelligence ("AI")/Machine Learning ("ML"), or any of the technology at the core of this case. He has no training in software engineering, and no experience with hardware, the subject of three of the trade secret categories in this case. The Court should exclude Mr. Pflaum's testimony pursuant to Federal Rule of Evidence 702 because he is fundamentally unqualified to testify on the topics disclosed in his statement. Even if Mr. Pflaum were qualified to opine about the trade secrets in this case, the Court should exclude Mr. Pflaum's proposed testimony because it either would not be helpful to the jury or relies on unreliable methodologies. Significant portions of the disclosure statement for Mr. Pflaum also fail to comport with Rule 16.

**BACKGROUND**

**I.      Background Regarding Alleged Trade Secrets**

The defendant is charged with the theft of seven categories of Google's AI and ML computing infrastructure trade secrets. The trade secrets relate to Google's custom-designed Tensor Processing Unit ("TPU") chips and system, Graphics Processing Unit ("GPU") machines and systems, and proprietary components of its custom SmartNIC.

Trade Secret Category One contains information related to the internal organization, design, and programming interface of Google's TPU chips. It includes documents that make up the complete description of the Instruction Set Architecture ("ISA") of the TPU's two processors, a detailed set of instructions that constitutes the contract between the hardware and the software and reveal detailed information about the internals of the TPU processors. It also includes implementation level details about the TPU's Inter-Chip Interconnect ("ICI") component that enables high speed communication between different TPU chips.

Trade Secret Category Two contains detailed information about the hardware and physical design of Google's TPU chips, and information about the hardware for an entire TPU system, including how chips are embedded in servers, how the servers are connected in racks, and how the racks are

UNITED STATES' MOTION TO EXCLUDE EXPERT TESTIMONY                                   1
3:24-CR-00141-VC

connected to make a TPU supercomputer.  Documents in this category include detailed floorplan, area, and dimensions of Google's TPU chips, including specific implementation level details about the memory hierarchy used in Google's most recent TPU chip, down to the size, placement, and organization of the memory components.

Trade Secret Category Three contains information about the software used in Google's TPU systems, including software designed to compile ML workloads to run on TPU hardware, software to schedule workloads and manage TPU resources, and software designed to handle failure on TPU components.  Information in this category contains routing algorithms designed to handle failures in Google's custom networking Optical Circuit Switch ("OCS") System within TPU systems.

Trade Secret Category Four contains information about the hardware design and implementation of Google's GPU-based supercomputers.  Google purchases its GPUs from a third-party vendor.  However, it has designed its own servers to house the GPUs, as well its own networking hardware to connect the servers to Google's network.  The documents in this category include a 160-page design document of Google's custom GPU-server, including detailed diagrams of the server components and custom-designed Google board.  The information in this category also includes mechanical details of the server and their cooling solutions.

Trade Secret Category Five contains information about the software and operation of Google's GPU-based supercomputers.  Category Five contains design and implementation details of software and network technologies developed by Google that facilitate high-performance communication between GPUs located in different servers, design and implementation details of the software used to allocate and manage ML workloads to different GPUs, and information describing how Google customized the topology of their supercomputers to meet the workload needs of a large customer.  Documents in this category describe the hardware and software features necessary to implement TCPDirect, a software technology developed by Google to enable high-performance communication between GPUs located in different servers.

Trade Secret Category Six contains microarchitecture details of Google's custom-designed hardware block that makes up part of Google's custom-designed SmartNIC, a specialized network infrastructure card used to connect Google's servers to its datacenter network.  Trade Secret Category

UNITED STATES' MOTION TO EXCLUDE EXPERT TESTIMONY                                    2
3:24-CR-00141-VC

Six also includes information about Google's overarching SmartNIC strategy.

Trade Secret Category Seven contains information about the design and implementation of software related to Google's custom SmartNIC. A number of the documents in this category include information related to the software components that support Remote Direct Memory Access ("RDMA"), a high-performance communication technology that allows memory to be copied directly from the memory of one server to the memory of other sever, without involving the operating system of either server.

## II.    Defense's Expert Notice of Isaac Pflaum

On August 26, 2025, the defense noticed Isaac Pflaum as an expert in "reviewing software source code, and in source code architecture and design." Priedeman Decl., Ex. 1. Mr. Pflaum has a Bachelors Degree in Biology and Chemistry, a Masters Degree in Computational Chemistry, and a law degree. *Id.* at 30. Other than several legal internships, Mr. Pflaum has spent the entirety of his career as a "software expert witness" at two different litigation consulting firms. *Id.* at 29. His purported expertise involves programming language and technologies related to "mobile and IoT devices, industrial and automotive controls, consumer and medical devices, and e-commerce and enterprise systems and websites." *Id.* at 1. Mr. Pflaum has never worked as software engineer, nor has he ever worked at a technology company. *Id.* at 29. He has no experience or expertise related to AI/ML, data centers, or cloud computing. It is unclear what experience or training Mr. Pflaum has in software source code, other than his expert testimonial experience in industries other than AI/ML.

The defendant's notice of Mr. Pflaum's testimony describes the following categories of testimony:

- Testimony about "incentives that Google and other businesses within the data center industry have to make information publicly available during the time frame alleged in the indictment." (Priedeman Decl., Ex. 1, ¶ 1).

- Testimony about technical information available to businesses in the cloud and data center industry during the time frame alleged in the indictment. (*Id.*, ¶ 2).

- Testimony about how the information in the trade secret categories is not applicable to smaller-scale computing environments. (*Id.*, ¶¶ 16, 37, 70).

UNITED STATES' MOTION TO EXCLUDE EXPERT TESTIMONY                                    3
3:24-CR-00141-VC

- Testimony about how the information in the trade secret categories was insufficient to "replicate," "reproduce," or "recreate" Google's technology.  (*Id.*, ¶¶ 23, 25, 41, 63, 67, 77).
- Testimony about the purported public nature of the information in the trade secret categories.  (*Id.*, ¶¶ 22, 35, 42, 53 66).
- Testimony about alleged inconsistencies between statements made by Google witnesses interview reports and the trade secret documents.  (*Id.*, ¶¶ 12, 28, 49).
- Testimony that engineers often act as "information collectors."  (*Id.*, ¶ 5).

**LEGAL STANDARD**

Pursuant to Federal Rule of Evidence 702 and the Supreme Court's opinion in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Court acts as a gatekeeper to screen out unreliable testimony from purported experts.  The Court's gatekeeping function is important.  "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it."  *Id.* at 595 (1993) (quoting Jack B. Weinstein, "Rule 702 of the Federal Rules of Evidence is Sound; It Should Not be Amended," 138 F.R.D. 613, 632 (1991)).

 "To qualify as an expert, a witness must have 'knowledge, skill, experience, training, or education' relevant" to evidence or facts in issue.  *United States v. Chang*, 207 F. 3d 1169, 1172 (9th Cir. 2000) (quoting Fed. R. Evid. 702).  An expert must also have expertise that is relevant to the issues to which he is opining.  *See White v. Ford Co.*, 312 F.3d 998, 1008-09 (9th Cir. 2002) ("A layman, which is what an expert witness is when testifying outside his area of expertise, ought not be anointed with ersatz authority as a court-approved expert witness for what is essentially a lay opinion.")

Expert testimony must also be both relevant and reliable.  To be relevant, evidence must "assist the trier of act to understand or determine a fact in issue" and "must logically advance a material aspect of the party's case."  *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007).  Testimony from a purported expert "is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline."  *United States v. Sandoval-Mendoza*, 472 F.3d 645, 654 (9th Cir. 2006) (internal quotation marks and citations omitted).

UNITED STATES' MOTION TO EXCLUDE EXPERT TESTIMONY                                      4
3:24-CR-00141-VC

**ARGUMENT**

Mr. Pflaum's proposed testimony includes general information about the incentives faced by Google and other businesses in the data center industry to make information public, as well as information about how Google's specialized technologies are not appliable to smaller-scale computing environments. Mr. Pflaum is also anticipated to testify about the specific nature of the asserted trade secrets. There is little question that Mr. Pflaum lacks the qualifications to offer opinions about Google's trade secrets or the cloud and data center industry more generally. *See Pecover v. Elec. Arts Inc.*, 2010 WL 8742757, at *5 (N.D. Cal. Dec. 21, 2010) (Walker, J.)("As a threshold matter, a proposed witness must qualify as an expert 'by knowledge, skill, experience, training, or education.") (citing Fed. R. Evid. 702). The trade secrets at issue in this case relate to Google's AI computing infrastructure, and include information related to hardware and software designs for Google's custom TPU chips and systems, custom GPU system, and custom SmartNIC. The hardware and software infrastructure required to support Google's AI supercomputers and data centers is specialized and complex.

Mr. Pflaum has an undergraduate and masters degree in Biology and Chemistry, and a law degree. He has no formal training in computer science or software engineering. He does not have any hardware training or experience, the subject of three categories of trade secrets for which he intends to opine. To the extent that Mr. Pflaum has software experience, it appears to be limited to source code review in industries unrelated to AI/ML. The software trade secret categories in this case primarily contain software design information, not source code. Mr. Pflaum does not appear to have any software design or conceptual experience. Most importantly, however, Mr. Pflaum has never worked at a technology company, or a cloud computing AI/ML provider, let alone a company operating an AI/ML infrastructure at Google's scale. In fact, he has no experience with AI/ML, cloud computing, data centers, AI supercomputers, the specialized accelerators used for AI/ML (*i.e.*, TPUs and GPUs), SmartNICs, or the sophisticated software solutions necessary to support ML workloads. In other words, Mr. Pflaum has absolutely no experience, let alone expertise, related to the sophisticated hardware and software computing infrastructure that are at the heart of this case. In short, Mr. Pflaum is not qualified to testify as an expert and his testimony should be excluded in its entirety. *See United States v. Jones,* 24 F.3d 1177, 1180 (9th Cir. 1994) (affirming decision to exclude expert testimony about voice

UNITED STATES' MOTION TO EXCLUDE EXPERT TESTIMONY                                                    5
3:24-CR-00141-VC

identification where witness had no specialized training in voice analysis and limited knowledge of the field); *Pecover*, 2010 WL 8742757, at \*5 (excluding testimony of expert video-game retail expert who was not qualified as an expert in economics or statistics); *Sloan Valve Co. v. Zurn Indus., Inc.*, 2013 WL 6068790, at \*7 (N.D. Ill. Nov. 18, 2013) (excluding testimony of PhD in mechanical engineering who did not have professional experience in the field of plumbing or flush valves).

Even if Mr. Pflaum were somehow qualified to opine about the trade secrets at issue in this case, his opinions would be subject to exclusion for a litany of additional reasons. First, Mr. Pflaum's proposed testimony that it would be impossible to "replicate" or "recreate" Google's technology is not relevant to nor helpful to the jury. Second, Mr. Pflaum's opinions about the purported public nature of numerous of the alleged trade secrets fail to comply with Rule 16, would not be helpful to jury, and do not rely on a reliable methodology. Finally, Mr. Pflaum's proposed opinion regarding inconsistencies between statements made by Google witnesses in FBI interview memorandum and the trade secret documents, and his proposed opinion that engineers "compile information" do not rely on specialized expertise and are not helpful to the trier of fact.

First, Mr. Pflaum's proposed testimony that the trade secret information was insufficient to "replicate," or "recreate" Google's technology should be excluded because it would not be helpful to the jury. Under the Economic Espionage Act (EEA), the government is required to prove that the asserted trade secrets derive "*independent economic value*, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, the public." 18 U.S.C 1839(3)(B) (emphasis added). When assessing independent economic value, courts consider "the degree to which the secret information confers a competitive advantage on its owner." *United States v. Chung*, 659 F.3d 815, 826-27 (9th Cir. 2011) (explaining that the information at issue derived economic value from being kept a secret because "the information could assist a competitor in understanding how [the trade secret owner] approaches problem-solving and in figuring out how to best bid on the similar project in the future"). In effect, the government is not required to prove that the stolen information is sufficient to "replicate," or "reproduce" Google's technology as Mr. Pflaum's proposed testimony suggests. Because Mr. Pflaum's proposed testimony applies the wrong standard, it is not relevant to the jury and should be excluded. *See Palantir Techs. Inc. v. Abramowitz*, No. 19-CV-06879-BLF, 2022 WL 22913842, at \*5

(N.D. Cal. Nov. 3, 2022) (excluding expert opinion that applies wrong legal standard and would only confuse the jury); *see also Bowoto v. Chevron Corp.*, No. C 99-02506 SI, 2006 WL 2604592, at *4 (N.D. Cal. Aug. 23, 2006) (excluding testimony of "marginal relevance" that would not be "particularly helpful to the jury").

Second, Mr. Pflaum's proposed testimony that categories of trade secret information contain public information would not be helpful to the jury, fails to comply with Rule 16 disclosure requirements, and does not rely on reliable methodology. Under the EEA, trade secrets may "consist of a compilation of data, public sources or a combination of proprietary and public sources." *United States v. Nosal*, 844 F. 3d 1024, 1042 (9th Cir. 2016). In other words, information is protectable as a trade secret even if particular elements are in the public domain. Here, the government's alleged trade secret categories include the combination of proprietary and public information. Under this theory, the ultimate determination for the jury is whether the combination of information asserted as trade secrets are available in the public domain, not whether the trade secret categories contain *some* public information. Defense's disclosure indicates that Mr. Pflaum has not analyzed whether the combination of *all* of the information in a particular trade secret document or category is in the public domain, which is the relevant inquiry in this case. Because Mr. Pflaum's analysis does not address whether the combination of information in the stolen documents and the combination of information in each category is publicly available, his opinion would serve only to confuse the jury and should be excluded. *See Palantir Techs. Inc.*, 2022 WL 22913842, at *5.

Mr. Pflaum's opinion regarding the public information contained in various trade secret categories also fails to comply with the Federal Rule of Criminal Procedure 16. In December 2022, Rule 16 was amended to require the defendant to disclose "a complete statement of all opinions that the defendant will elicit from [an expert witness] in the defendant's case-in-chief," and the "bases and reasons for them" along with the witness's qualifications. Fed. R. Crim. P. 16(b)(1)(C)(iii). This was a significant enhancement to Rule 16's expert disclosure notice. As the 2022 Amendment Advisory Committee Notes to Rule 16 state, the update deletes the phrase "written summary" and requires disclosure of "a complete statement of all opinions the expert will provide." *Id.*, Advisory Committee Notes (2022 Amendments). The Advisory Committee Notes for the 2022 Amendments make clear that

UNITED STATES' MOTION TO EXCLUDE EXPERT TESTIMONY                                    7
3:24-CR-00141-VC

the amendment was designed to address two shortcomings with the prior expert witness disclosure requirements: "the lack of adequate specificity regarding what information must be disclosed, and the lack of an enforceable deadline for disclosure." *Id.*  The amendment was designed to "facilitate trial preparation, allowing the parties a fair opportunity to prepare to cross-examine expert witnesses and secure opposing expert testimony if needed." *Id.*

The defendant's disclosure indicates that Mr. Pflaum will testify that the trade secret categories contain "public information," based on a "preliminary list" of public materials that he intends to supplement prior to trial.  Priedeman Decl., Ex. 1 ¶ 1.  With limited exceptions, the disclosure fails to explain how this list of materials relates to the specific trade secret information at issue or how they provide a bases for his opinions.  By simply attaching a list of materials without any analysis or explanation for how it supports his opinions, and suggesting that Mr. Pflaum will continue to "supplement" that list prior to trial, the defendant's disclosure both fails to disclose the bases for his opinion under Rule 16 and attempts to evade the expert disclosure deadlines agreed to by the parties and imposed by the Court.

Third, Mr. Pflaum's proposed testimony related to purported inconsistencies between Google witnesses statements as documented in FBI interview reports and the trade secret documents is not the proper subject of expert testimony.  To the extent a witness testifies, and the Court agrees that Mr. Pflaum is qualified to testify on the underlying subject matter, it would be appropriate for Mr. Pflaum to testify regarding his opinion of the underlying accuracy of the facts supporting the Google witnesses' testimony.  Mr. Pflaum should not be permitted to opine, however, on "inconsistencies" between a Google witness's statements and the trade secret documents.  As an initial matter, evaluating "inconsistencies" between a witness statement and a substantive document requires no "specialized knowledge," and thus risks usurping the jury's fact-finding determinations.  Mr. Pflaum's proposed testimony is even more troubling, however, in that it suggests that he will opine on inconsistencies in statements made by Google witnesses *as documented in FBI interview reports*.  These reports are classic hearsay and are not admissible at trial.  Moreover, they are not admissible to impeach a witness to the extent they testify in a way that appears to be inconsistent with the agent's report.  *See United States v. Leonardi*, 623 F.2d 746, 757 (2d Cir. 1980) (holding that witness could not be impeached with FBI

UNITED STATES' MOTION TO EXCLUDE EXPERT TESTIMONY                                    8
3:24-CR-00141-VC

agent's statements where witness had not subscribed to statements and the interview did not purport to memorialize all of the witness's statements); *United States v. Saget*, 991 F.2d 702, 710 (11th Cir. 1993) (holding that "witness may not be impeached with a third party's characterization or interpretation of a prior oral statement unless the witness has subscribed to or otherwise adopted at the statement as his own"). Given that the interview reports would not be admissible at trial and the defense would not be permitted to impeach the witnesses with these statements, the Court should reject the defense's backdoor attempt to use Mr. Pflaum to do the same.

Finally, Mr. Pflaum's proposed testimony that engineers often act as "information collectors, collecting and storing materials they encounter across a wide range of sources" requires no specialized expertise and therefore should be excluded. Priedeman Decl., Ex. 1, ¶ 5. Moreover, even if the Court determined that this type of opinion draws on specialized expertise, Mr. Pflaum lacks any such relevant expertise. As previously detailed, Mr. Pflaum has never worked as a software engineer. It is therefore unclear how his 12 years of experience as a testifying "software expert witness" qualifies him to testify about the habits of software engineers.

## CONCLUSION

For the foregoing reasons, the Court should exclude the proposed expert testimony of Mr. Pflaum in its entirety.

DATED: September 9, 2025

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*Molly K. Priedeman*

MOLLY K. PRIEDEMAN
CASEY BOOME
Assistant United States Attorneys