# Exhibit D

# Lightspeed China Partners
# Confidentiality Agreement

This Confidentiality Agreement ("Agreement") is entered into on the date specified at the end hereof by Shanghai Zhisuan Technology Co., Ltd. (**"Company"**) and Lightspeed China Partners (**"Lightspeed China Partners"**).

In connection with the potential investment project (**"Transaction"**) that Lightspeed China Partners (directly or through other associated, managed, or designated funds or affiliated entities under Lightspeed China Partners) intends to make in the Company and its directly or indirectly controlled entities, one Party intends to disclose to the other Party confidential and/or proprietary information related to the discloser or its affiliated companies. In this Agreement, the Company and Lightspeed China Partners are collectively referred to as the "**Parties**," and individually as a "**Party**." The Party receiving the confidential information is hereinafter referred to as the "**Recipient**," and the Party disclosing the confidential information is referred to as the "**Discloser**."

For the purpose of protecting the confidentiality of non-public information with commercial value disclosed by the Discloser, the Parties agree as follows:

1.  ***Confidentiality obligations***

    (a)    All non-public information related to the Transaction, the Discloser and its affiliated parties, and owned or controlled by the Discloser or its affiliated parties (including but not limited to internal regulations and rules, business plans, capital structure tables, financial budgets and statements; costs, pricing, and marketing plans; contracts, certificates and licenses; information about employees, customers, suppliers, shareholders, partners, or investors; proprietary technology, specialized skills, business processes, trade secrets, and business models; notes, sketches, flowcharts, formulas, design drawings, and related elements; source codes, object codes, schematic designs, user interfaces, trademarks, trade names, patents, and other intellectual property), regardless of whether such information is provided orally or in writing, or by paper, electronic files, or any other medium (collectively, "**Confidential Information**"), provided by the Discloser or its representatives (as defined below) before or after the signing of this Agreement, or otherwise obtained by the Recipient, shall be kept confidential by the Recipient in accordance with this Agreement.

    (b)    Confidential Information does not include information that: (i) was already in the Recipient's possession or was lawfully obtained by the Recipient prior to disclosure by the Discloser; (ii) becomes publicly known and available from open and legal channels through no breach of this Agreement by the Recipient or any other person for any reason; (iii) the Recipient can provide sufficient evidence is independently developed without relying on the Discloser's assistance or Discloser's Confidential Information; or (iv) is lawfully obtained by the Recipient from a third party not subject to any confidentiality obligations.

    (c)    The Recipient agrees to use the Confidential Information solely for the purpose of evaluating the Transaction feasibility and advancing the Transaction and not to

1

AML-0000112

disclose the Confidential Information to any third party in any form without the prior consent of the Discloser. However, the Recipient may disclose the Confidential Information as follows: (i) on a "need-to-know" basis to the Recipient's employees, directors, senior executives, shareholders, partners, affiliated parties, advisors, professional institutions, and agents (collectively "**Representatives**"), provided that the Recipient ensures that each Representative who has access to the Confidential Information is informed of its confidential nature and agrees to be bound by confidentiality obligations at a standard equivalent to the standard of confidentiality obligations required by the Recipient to its Representatives with respect to the Confidential Information of the Recipient, or the standard of confidentiality obligations required by the Recipient under this Agreement with respect to the Confidential Information of the Discloser, whichever is more stringent; any breach of these confidentiality obligations by any Representative of the Recipient resulting in unauthorized disclosure or public release of the Confidential Information shall be deemed a breach by the Recipient, for which the Recipient shall be legally liable; (ii) disclosure pursuant to an order or judgment from a competent authority (including laws, regulations, national mandatory provisions, or orders/judgments from judicial, administrative, or other regulatory bodies ("**Competent Authorities**")), provided that, without violating applicable laws and regulations or the legitimate requirements of the Competent Authorities, the Recipient shall promptly notify the Discloser of such compelled disclosure, use reasonable efforts to limit the scope of such disclosure, provide only the portion of the Confidential Information required by the Competent Authorities, and use commercially reasonable efforts to secure confidential treatment of the disclosed information by the Competent Authorities (if such compelled disclosure is due to or directly targets the Discloser's Confidential Information, and if the Recipient is required or instructed by the Discloser to take legal action or other measures to protect or limit the disclosure, the reasonable expenses incurred shall be borne directly by the Discloser or reimbursed by the Discloser to the Recipient); or (iii) if the Recipient obtains written authorization from the Discloser, within the scope of such authorization, to use or disclose the Confidential Information.

(d)     The Recipient acknowledges and agrees that all Confidential Information disclosed by the Discloser is provided "as is" without any warranties, express or implied, regarding the accuracy, completeness, or its use.

2.     *No rights granted*

Confidential Information is and shall remain the exclusive property of the Discloser. The Recipient does not acquire any ownership, intellectual property rights, or any other interest in the Confidential Information under this Agreement. Except for receiving the Confidential Information and using it solely for the purposes described above, this Agreement does not create or grant any license or other rights. Unless the Parties agree separately in writing, the Discloser shall retain all rights in any discoveries, developments, improvements, modifications, revisions, or derivatives of its Confidential Information.

3.     *No external disclosure*

Without prior consent from the other Party, neither Party shall disclose: (a) the terms of

2

AML-0000113

this Agreement or the existence of this Agreement; or (b) any potential transaction or other business relationship between the Recipient and the Discloser, to any third party beyond its Representatives.

4.      ***Return or disposal of Confidential Information***

The Recipient agrees to, upon the Discloser's request, return, destroy, and/or delete the Confidential Information provided by the Discloser within a reasonably short period. Accordingly, the Recipient shall, at the Discloser's reasonable request, return to the Discloser all media containing Confidential Information—including originals, copies, abstracts, or any other documents or media that contain or reference the Confidential Information—or destroy or delete such media (and provide proof of such destruction to the Discloser in a manner reasonably satisfactory to the Discloser). Notwithstanding the foregoing, the Recipient shall have the right to retain the Confidential Information or copies thereof solely for the purpose of complying with applicable laws, regulations, or lawful requests from relevant competent authorities. During any retention period of such Confidential Information or copies, the Recipient shall continue to be bound by the confidentiality obligations of this Agreement with respect to the retained Confidential Information or copies.

5.      ***Term***

(a)      This Agreement and the confidentiality obligations hereunder shall become effective as of the effective date of its valid execution by the Parties. (a) If the Recipient or its affiliated parties ultimately do not enter into a transaction with the Discloser or its affiliated parties, the obligations under this Agreement shall remain in effect for two (2) years from the effective date; (b) If the Recipient or its affiliated parties enter into a transaction with the Discloser or its affiliated parties, the confidentiality obligations shall remain in effect for the duration of the transaction, and for two (2) years following the termination or expiration of the cooperation. If the Parties (including their respective affiliated parties) agree in the final transaction documents related to the transaction to adopt confidentiality provisions that expressly supersede the corresponding confidentiality obligations of this Agreement, the confidentiality provisions in such final transaction documents shall prevail once effective and binding.

(b)      For any Confidential Information disclosed to or known by the Recipient prior to the signing of this Agreement, the confidentiality period for such Confidential Information shall commence from the date it is disclosed or becomes known to the Recipient, and such period shall not end before the expiration date of the confidentiality obligations determined under Section 5(a) of this Agreement.

(c)      The confidentiality periods for each piece of Confidential Information shall be independent; the disclosure or publication of some Confidential Information pursuant to this Agreement, applicable laws and regulations, or legitimate requests by relevant Competent Authorities shall not affect the confidentiality period or the Recipient's confidentiality obligations with respect to other Confidential Information that has not been disclosed.

AML-0000114

6.      *Governing laws and dispute resolution*

This Agreement shall be governed by and construed in accordance with the laws of the People's Republic of China. Any dispute, objection, or claim arising out of or in connection with this Agreement shall first be resolved through friendly negotiations between the Parties. If the dispute remains unresolved within 30 days after one Party issues a written notice to the other Party requesting negotiations, either Party may submit the dispute to the Shanghai International Economic and Trade Arbitration Commission for arbitration in accordance with its then-effective arbitration rules. The arbitration venue shall be in Shanghai, and the language of arbitration shall be Chinese. The arbitration award shall be final and binding on both Parties.

7.      *No obligation*

This Agreement is executed solely for the purpose of protecting the confidentiality of the Confidential Information and does not imply that the Parties are obliged to enter into any contemplated transaction. Unless the Parties conclude final transaction documents regarding the transaction, neither Party nor its Representatives shall incur any legal obligations related to the transaction merely by virtue of this Agreement or any other written or oral communications relating to this Agreement.

8.      *Liability for breach*

The Parties agree and acknowledge that a breach of this Agreement may cause irreparable harm to the other Party. Therefore, the Parties agree that if either Party or any of its Representatives breaches or is about to breach any provision of this Agreement, the other Party shall be entitled to seek legal remedies. The breaching Party shall immediately cease any conduct in violation of this Agreement and take all measures necessary to eliminate any adverse effects arising therefrom. In the event that a breach by either Party or its Representatives of any provision of this Agreement causes or results in any and all losses, liabilities, damages, claims, penalties, litigation, judgments, costs, expenses, and disbursements incurred by the other Party, the breaching Party shall indemnify the other Party for such losses. The Recipient understands and acknowledges that monetary damages may be insufficient to fully compensate for the losses caused by a breach of the confidentiality obligations under this Agreement, and the Parties agree that, in such event, the Discloser shall have the right to seek remedies such as injunctive relief, specific performance, and compulsory performance.

9.      *Miscellaneous*

Unless agreed in writing by both Parties, this Agreement shall not be modified or amended. No Party's rights or obligations under this Agreement may be assigned without the prior written consent of the other Party. Failure by any Party to exercise any right under this Agreement shall not be deemed a waiver of that right. In addition to the rights and remedies provided by law, each Party shall be entitled to all rights and remedies available under this Agreement. If any provision of this Agreement is deemed invalid or unenforceable, the Parties agree to render such provision enforceable to the maximum extent possible, and all

4

AML-0000115

other provisions of this Agreement shall remain in full force and effect. This Agreement constitutes the entire understanding between the Parties regarding the subject matter hereof and supersedes all prior understandings, agreements, communications, and representations, whether oral or written.

10.    *Copies*

This Agreement shall become effective as of the date it is signed by the duly authorized representatives of the Parties and affixed with the official seals (if applicable); it is made in duplicate, with each Party holding one copy. This Agreement may be delivered by facsimile, email (including PDF scans or other electronic document formats), or other similar transmission methods, and such delivery shall be deemed effective and have the same legal effect.

[No text below]

AML-0000116

[This page is the signature page for the Lightspeed China Partners Confidentiality Agreement]

**Company**

**<mark>Shanghai Zhisuan Technology Co., Ltd.</mark>**
(Official seal, if applicable)

Signature: _____
Name: Ding Linwei
Title: Legal representative
Date: <u>December 4</u>, 2023

**Lightspeed China Partners**

**Lightspeed China Partners**
(Official seal, if applicable)

Signature: _____
Name: James Qun Mi
Title: Partner and authorized representative
Date: <u>MM/DD</u>, 2023

6

# 光速光合创业投资基金
# 保密协议

本保密协议("本协议") 由 <mark>上海至算科技有限公司</mark> ("**公司**") 与光速光合创业投资基金（Lightspeed China Partners）("**光速光合**") 于文末所署日期签署。

就光速光合（直接或通过其他关联的、管理的或指定的光速光合旗下的基金或关联实体）拟对公司及其直接或间接控制的实体进行的潜在投资项目("**交易**")，一方拟向另一方披露归属于披露方或者与披露方或其关联公司有关的保密信息和/或专属信息。在本协议中，公司与光速光合合称为"**双方**"，单称为"**一方**"。接收保密信息的一方下称为"**接收方**"，披露保密信息的一方下称为"**披露方**"。

为保护披露方所披露的非公开且具有商业价值的信息的保密性，双方达成如下协议：

1.   ***保密义务***

   (a)   对由披露方或其代表（定义见下文）于本协议签署之前或之后提供给接收方或其代表的、或者接收方经由其他途径获知的，且为披露方或其关联方所有或掌握的所有有关交易、披露方及其关联方的非公开信息（包括但不限于内部规章制度，商业计划，资本构成表，财务预算及财务报表；成本，定价及市场推广计划；合同，证照；员工，客户，供应商，股东，伙伴或投资人；专有技术，专项技能，商业流程，商业秘密及商业模式；笔记，草图，流程图，公式，设计图及与之相关的各种元素；源代码，结果代码，图解设计，用户交互界面，商标商号，专利及其他知识产权），无论该等信息是以口头或者书面的形式提供，无论以纸质或电子文件、资料或者其他媒介为载体提供(上述信息称为"**保密信息**")，接收方将根据本协议的约定采取或限制必要行动予以保密。

   (b)   保密信息不包括：(i) 于披露方披露前，接收方已经掌握或合法获得的信息；(ii)非因接收方的过错或任何人基于任何原因违反了有关保密义务而处于公知领域且能够通过公开合法渠道知悉的信息；(iii) 接收方能提供充分证据证明系不依赖披露方协助或披露方的保密信息而独立开发的信息； 或(iv) 接收方通过合法途径从披露方以外的不受任何保密义务约束的第三方合法获得的信息。

1

US-0095453

(c)　　接收方同意仅为评估交易可行性及推进交易之目的使用保密信息，未经披露方事先同意，不向任何第三方以任何形式披露保密信息。但是，接收方可以进行以下披露：(i) 基于"必须知晓"的原则，向需要了解本交易的接收方的雇员、董事、高管、股东、合伙人、关联方、顾问、专业机构、代理人(合称为"**代表**")披露，前提是接收方将确保其每一位接触保密信息的接收方代表于接触保密信息前知悉保密信息的保密性质并同意受到保密义务的约束，标准应相当于接收方要求其代表对接收方的保密信息所承担的保密义务标准，或本协议项下接收方对披露方的保密信息所承担的保密义务标准（以较高者为准）；上述任何接收方代表违反保密义务导致披露方的保密信息未经授权被披露或公开的，视为接收方违反本协议项下的保密义务，接收方需为此承担法律责任；(ii) 根据法律、法规、国家强制性规定、司法、行政机关或其他监管机构（"**有权机关**"）的命令或判决进行的披露，但条件是接收方在不违反适用法律法规及有权机关的合法要求的前提下应就该等强制披露尽快通知披露方，并且尽合理努力控制强制披露的范围，仅提供有权机关强制要求披露的那部分保密信息，并将尽其合理商业努力要求有权机关对该信息予以保密（如该等有权机关要求的披露系披露方原因导致或系直接针对披露方的保密信息，且接收方应披露方要求或指示采取法律程序或其他措施来保护披露方的保密信息或限制披露范围，由此产生的合理费用应由披露方直接承担，或由披露方补偿接收方）；或(iii) 接收方在取得披露方书面授权情况下在授权范围内使用或披露保密信息。

(d)　　接收方同意并认可所有披露方披露的保密信息均"按其现状"提供，对于该等信息的准确性、完整性或它的使用，无论明示或暗示或其它形式，披露方不做任何的保证。

2.　　*未授予权利*

保密信息是并且始终是披露方的专有财产，接收方并未从本协议中获得对保密信息的任何所有权、知识产权或其他利益。除了接收保密信息并将之用于上文所述用途，本协议未创造或授予任何许可或其他权利。除非双方通过单独的书面协议达成一致，否则披露方对于任何对披露方保密信息的发现、开发、改进、改变、修正和衍生物享有所有权。

2

US-0095454

3.    *无对外披露*

未经另一方事先同意，任何一方不得向其代表以外的第三方披露：(a)本协议的条款或者本协议的存在；或者 (b)接收方与披露方之间潜在的交易或者其他商业关系。

4.    *保密信息的归还或者处置*

接收方同意在披露方要求后在合理的最短期限内归还披露方、销毁及/或删除披露方提供的保密信息。为此，接收方应按披露方的合理要求将所有含有保密信息的载体，包括原件及复印件、摘要、含有或者援引了的保密信息的其他文件或者媒介返还给披露方，或销毁或删除该等含有保密信息的载体（并以披露方合理满意的方式提供该等销毁的证明）。尽管有前述约定，接收方有权仅为遵守有关法律法规、或相关有权机关的合法要求之目的保留相关保密信息或其副本。在该等保密信息或副本的留存期间，接收方对保留的披露方的保密信息或其副本仍应按照本协议履行保密义务。

5.    *期限*

(a)    本协议及本协议项下保密义务自双方有效签署本协议之日生效，且(a)如接收方或其关联方最终未能与披露方或其关联方达成交易，则本协议及本协议项下保密义务自生效日起有效期为两（2）年；(b)如接收方或其关联方与披露方或其关联方达成交易，则本协议及本协议项下保密义务于双方交易存续期间持续有效，且在合作到期或终止后两（2）年内双方仍应受到本保密协议的约束。如果双方(包括其各自关联方)在与交易相关的最终交易文件中对于保密条款另行达成约定并明确取代本协议项下的相关保密义务的，则以届时生效并有约束力的交易文件中的保密条款为准。

(b)    在本协议签订之日前，若个别保密信息已被披露予接收方，或被接收方知晓，则该保密信息的保密期限自被披露予接收方或被接收方知晓之日起算，且该保密期限的结束之日不应早于本协议第5条(a)项确定的保密义务有效期的结束之日。

(c)    各保密信息的保密期限互相独立，相关保密信息依据本协议/法律法规及/或相关有权机关的合法要求被予以公开或披露不影响其他未公开/披露的保密信息的保密期限及接收方对该等保密信息的保密义务。

US-0095455

6.    *适用法律和争议解决*

本协议适用中国法律并据此解释。由本协议产生的或与本协议有关的任何争议、异议或索赔，双方应首先以友好协商方式解决。如果一方向另一方发出要求协商解决的书面通知后30天之内争议仍然得不到解决，则任何一方均可将有关争议提交给<mark>上海国际经济贸易仲裁委员会</mark>，按照其届时有效的仲裁规则进行仲裁。仲裁地点应在<mark>上海</mark>，仲裁语言为中文。仲裁裁决是终局性的，对双方均有约束力。

7.    *无义务*

本协议仅为保护保密信息的安全这一目的而签署，并不意味着双方必须进行拟定交易。除非双方就交易达成最终交易文件，任何一方或其代表并不会仅因本协议或者与本协议有关的任何其他书面或者口头沟通而负有与交易相关的任何类型的法律义务。

8.    *违约责任*

双方同意并承认，违反本协议可能会对另一方造成无法挽回的损害。双方因此同意，若一方或其任何代表违反或将要违反本协议中的任何条款，另一方有权依法采取补救措施。该违约一方应立即停止任何违反本协议之行为，并采取一切手段消除由此引起的任何不利影响。因一方或其任何代表对本协议任何条款的任何违约，而导致另一方受到或产生的任何及所有损失、负债、损害、索赔、处罚、诉讼、判决、成本、费用和支出，该违约一方应当予以赔偿。接收方理解并确认经济赔偿可能不足以完全赔偿其违反本协议下保密义务给披露方造成的损失，双方同意，在此情形下，披露方应有权寻求禁令救济、特定履行、强制履行等救济措施。

9.    *其他*

非经双方书面同意，本协议不可修改或变更。本协议下任何一方的权利义务，未经另一方的事先书面同意，不得转让。任何一方未行使本协议下的任何权利不视为其放弃该等权利。除法律赋予的权利和救济外，任何一方应被赋予本协议下的权利和救济。如果本协议的任何条款被视为无效或者不可执行的，双方同意在最大程度内使得该等条款可执行，并且本协议其他条款应当保持始终有效和可执行。本协议构

4

US-0095456

成了双方就本协议所涉事项的全部理解，并取代以前的所有理解、协议、交流和陈述，不论是口头的还是书面的。

10. ***副本***

本协议自双方授权代表签署并加盖公章（如适用）之日起生效；一式两份，双方各执一份。本协议可以通过传真、电子邮件(包含PDF扫描件或其他电子文档形式)或其他类似传输方法交付，以该等形式的交付应视为合理交付并具有同等法律效力。

[以下无正文]

5

[本页为光速光合创业投资基金保密协议之签字页]

**公司**

<mark>上海至算科技有限公司</mark>

公章（如适用）

签字：＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

姓名：<mark>丁林葳</mark>

职位：<mark>法定代表人</mark>

日期：2023年<u>12</u>月<u>4</u>日

**光速光合**

**光速光合创业投资基金（Lightspeed China Partners）**

公章（如适用）

签字：＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

姓名： James Qun Mi （宓群）

职位： 合伙人暨授权代表

日期： 2023年＿＿月＿＿日

US-0095458

7

US-0095459