UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>             Plaintiff,<br><br>        v.<br><br>LINWEI DING,<br><br>             Defendant. | Case No.  24-cr-00141-VC-1<br><br>**ORDER RE MOTIONS IN LIMINE**<br><br>Re: Dkt. Nos. 142, 143, 144, 145, 151, 153 |

This ruling summarizes the Court's current rulings on the parties' motions in limine.[1] The motions not addressed in this ruling are still being considered. As a reminder, a ruling on a motion in limine may be revisited at trial depending upon how the evidence comes in. *See City of Pomona v. SQM North America Corporation*, 866 F.3d 1060, 1070 (9th Cir. 2017).

**The government's Motion in Limine No. 1 to protect trade secrets at trial is granted.** As discussed in its supplemental filing, the government anticipates seeking courtroom closure during the testimony of Professor Daniel Sanchez and potentially during the testimony of two of its lay witnesses. To minimize disruption, the government will craft its direct examination of these witnesses such that any testimony subject to courtroom closure will occur at the end of the

---

[1] The Court will use the following numbering for the government's motions: (1) Motion to Protect Trade Secrets at Trial (Dkt. No. 145); (2) Motion to Admit Inextricably Intertwined Evidence (Dkt. No. 142); (3) Motion to Admit Ding's Testimonial Statements (Dkt. No. 143); (4) Motion to Exclude Evidence from Victim's Legal Counsel (Dkt. No. 144); (5) Motion to Exclude Government's Charging Decisions (Dkt. No. 144); (6) Motion to Admit Statements in Investor Meeting Minutes and Other Documents (Dkt. No. 147); (7) Motion to Exclude Expert Testimony of Isaac Pflaum (Dkt. No. 146); (8) Motion to Exclude Expert Testimony of James Pooley (Dkt. No. 148); (9) Motion to Exclude Expert Testimony of Mark Eskridge (Dkt. No. 149).

testimony. As discussed at the pretrial conference, the following procedure will be used with respect to any testimony for which the government plans to seek courtroom closure:

- The government shall give the defense and the Court a detailed outline or narrative description of the testimony it anticipates will require courtroom closure seven days in advance, so that the defense has an opportunity to challenge the need for courtroom closure.

- If the defense objects to closure for any particular testimony, or if the Court on its own has questions about whether closure is needed, it will hear argument from the parties and issue a ruling. If it's a close question, the Court will allow the courtroom to be closed to the public and determine after trial whether any portions of that testimony should be unsealed in the transcript.

- Any cross-examination relating to testimony subject to courtroom closure will also be sequestered.

- The jury will be instructed that closure does not mean the Court has determined that the testimony contains trade secret information, but only that Google asserts it is trade secret information, and that the courtroom is being closed to the public in an abundance of caution.

If the defense plans to present additional evidence that is likely to require courtroom closure, it should raise the question of courtroom closure with the government in advance. This will enable the parties, with the Court's involvement, if necessary, to resolve ahead of time which evidence will be subject to courtroom closure and thus allow the defense to present its case with minimal disruption.

This ruling also resolves Ding's Motion in Limine No. 3.

**The government's Motion in Limine No. 2 to admit inextricably intertwined evidence is granted.** The government seeks to admit evidence related to: (1) 1,700+ documents that were uploaded by Ding from his corporate device to his personal Google drive account between May 2022 and December 2023; (2) Apple Notes files containing Google information that Ding created between May 2023 to December 2023; and (3) a video in which Ding allegedly demonstrates Google technology and represents that technology as belonging to his startup, Zhisuan (the "Zhisuan video"). The defense submitted an overlapping motion (Ding's Motion in Limine 14) that seeks to exclude this evidence, as well as two additional categories of evidence:

2

(1) evidence related to Ding's employment with Rongshu, before Ding founded Zhisuan; and (2) evidence that, while Ding was in China, another Google employee swiped his badge for him at Google's California offices.

The parties dispute whether these categories of evidence are barred by Rule 404(b)'s prohibition on evidence of "other acts" or whether they relate to acts that are "inextricably intertwined" with the charged conduct. *United States v. Beckman*, 298 F.3d 788, 793 (9th Cir. 2002). Each of the disputed categories here are necessary components of the government's narrative about Ding's mass exfiltration of Google documents for the benefit of his startup, Zhisuan.

The uploaded documents and Notes files speak to the range of information that Ding exfiltrated or attempted to exfiltrate before the termination of his employment at Google. The Zhisuan video, which was made after Ding uploaded all the alleged trade secret files and before he downloaded them to his personal device, goes directly to Ding's intent to leverage Google technology for Zhisuan's benefit. Ding's stint with Rongshu is key to the government's narrative because Ding's mass exfiltration of Google files was contemporaneous with the beginning of his employment with Rongshu. Moreover, Ding allegedly founded Zhisuan in consultation with Rongshu's CEO, Yuan Ye. Finally, the badge swiping supports the government's assertion that Ding was attempting to conceal that he was in China getting ready to start Zhisuan.

Although the defense is entitled to challenge these aspects of the government's narrative at trial, they are not "other acts" excludable under Rule 404(b). Nonetheless, Rule 403 may apply, depending on the government's presentation of this evidence. If the government's presentation of these aspects becomes excessive, the Court will limit it. Additionally, if it becomes apparent that the government is mischaracterizing any uncharged documents, the Court will exclude all references to the documents and instruct the jury to disregard the evidence.

Ding's Motion in Limine No. 14 is denied in light of this ruling.

**The government's Motion in Limine No. 3 to admit Ding's testimonial statements is denied as premature.** The Court previously suppressed certain statements made by Ding that

were obtained as a result of a *Miranda* violation. The government seeks to admit the suppressed statements for impeachment if Ding testifies at trial, under the exception that allows prosecutors to introduce illegally obtained evidence for the limited purpose of impeaching the defendant's testimony. *United States v. Rosales-Aguilar*, 818 F.3d 965, 969 (9th Cir. 2016). But, under this exception, the prosecution can only use suppressed evidence to impeach the defendant's testimony on matters that are brought up by the defendant on direct examination. *See United States v. Whitson*, 587 F.2d 948, 952 (9th Cir. 1978). Therefore, at this point, the Court cannot assess whether it is appropriate to admit the suppressed statements for impeachment.

In his overlapping motion, Ding says he intends to testify that he provided his device passwords to law enforcement and asks the Court to rule that merely referencing this fact will not open the door to admitting the suppressed statements. The Court is undecided on this issue. If Ding testifies that he provided his passwords voluntarily and uses that to argue that he did not believe he had done anything wrong, it might be permissible for the government to introduce previously-suppressed statements that reflect consciousness of guilt. The parties can address this issue at the next pretrial conference.

This ruling also resolves Ding's Motion in Limine No. 1.

**The government's Motion in Limine No. 4 to exclude evidence from Google's legal counsel is granted.** The government seeks to exclude: (1) emails from Google counsel summarizing other employees' descriptions of the documents stolen by Ding; and (2) evidence and argument related to the process undertaken by Google to analyze the documents stolen by Ding. To the extent the defense wants to give the jury the impression that the prosecution is being driven by Google, that is not appropriate. And more generally, evidence from Google's legal counsel will be excluded under Rule 403 because of the significant risk of distraction and jury confusion that it presents. But if Ding wishes to identify specific evidence from Google's legal counsel that he contends is especially probative of intent (perhaps because it underscores Google's own difficulty in determining which of the stolen materials actually meet the definition of a trade secret), he may do so before or at the next pretrial conference.

**The government's Motion in Limine No. 5 to exclude evidence of its charging decisions is granted.** As discussed at the hearing, the effect of Google's review on the government's charging determinations is excludable under Rule 403. As of now, Ding has not presented a compelling reason for why any of this evidence would be relevant, especially in light of the significant distraction and jury confusion it is likely to cause. But if Ding has any specific examples of evidence that should be admitted, he can raise those before or at the next pretrial conference.

**Ding's Motion in Limine No. 1 to preclude reference to Ding's suppressed statements is granted.** See ruling on the government's Motion in Limine No. 3.

**Ding's Motion in Limine No. 2 to exclude protective order confidentiality designations on trial exhibits is granted as unopposed.**

**Ding's Motion in Limine No. 3 to limit excessive clearing of the courtroom for discussion of alleged trade secrets is granted.** See ruling on the government's Motion in Limine No. 1.

**Ding's Motion in Limine No. 4 to preclude the government from introducing marital communications between Mr. Ding and his ex-wife is granted as unopposed.**

**Ding's Motion in Limine No. 5 to preclude the government from referencing Mr. Ding's marital status or the circumstances leading to his divorce is granted.** As of now, there does not appear to be any reason to admit evidence relating to Ding's marital status or the circumstances leading to his divorce. But, as with every motion in limine discussed here, this motion can be revisited at trial.

**Ding's Motion in Limine No. 6 to preclude the government from eliciting speculative testimony regarding hypothetical means of committing crimes is granted.** Ding seeks to prevent the government from eliciting testimony that Ding could have: (1) used undetected transmission methods; or (2) used the stolen documents at Zhisuan, at some unidentified time in the future. The government anticipates providing testimony that once Ding transferred the files with Google information outside the Google network, Google was unable to determine what

Ding did with the stolen files. The government also anticipates that its digital forensics expert will testify that the analysis of Ding's computer would not reveal with certainty every possible action Ding may have taken with respect to the files. This proposed testimony is appropriate. However, the witnesses can only discuss the limits of what the evidence can show; they may not speculate as to what Ding did.

**Ding's Motion in Limine No. 7 to preclude the government from arguing that Mr. Ding is a "spy," "traitor," or "foreign agent" is granted; his motion to preclude the government from using the term "stolen" is denied.** The government explains in its opposition to Ding's motion that it has not alleged that Ding is a spy, traitor, or foreign agent and that it does not intend to make these assertions at trial. Thus, that aspect of Ding's motion is granted as unopposed. With respect to the term "stolen," not allowing the government to say a key word in an element that it must prove beyond a reasonable doubt would improperly limit its argument.

**Ding's Motion in Limine No. 8 to preclude the government from relying upon any late-produced discovery is denied as moot, in light of the changes to the trial schedule.**

**Ding's Motion in Limine No. 9 to sequester witnesses is granted as unopposed.**

**Ding's Motion in Limine No. 10 to permit attorney-conducted voir dire is granted.** As always, the attorneys will be able to conduct voir dire. The Court will set a time limit at the next pretrial conference.

**Ding's Motion in Limine No. 11 to preclude reference to the anonymous tip regarding Ding's presentation at MiraclePlus is granted.** The government asserts that it will only reference the fact of the anonymous tip to explain Google's subsequent actions and will not offer the substance of the tip for its truth. But the government can adequately explain Google's investigation by stating in general terms that it came to Google's attention that Ding presented at MiraclePlus. Thus, evidence, argument, and testimony referencing the anonymous tip will be excluded from trial.

**Ding's Motion in Limine No. 14 to exclude evidence under Rules 401–404 is denied.** See ruling on the government's Motion in Limine No. 2.

**Motions in Limine Related to Expert Testimony.** As discussed at the hearing, the defense is ordered to provide new disclosures for the challenged defense experts, as well as for Ding's Mandarin translation expert. The new disclosures should address the aspects of testimony that the government contends were not adequately disclosed under Rule 16 of the Federal Rules of Criminal Procedure and should be sufficiently detailed to put the government on notice as to what a given opinion is and what it is based on. These additional expert disclosures are due by October 24, 2025. Any rebuttal expert disclosures from the government are due 14 days after the defense's deadline.

Daubert hearings will be scheduled for December 5, 8, 9, and 10. As indicated at the pretrial conference, Daubert hearings will be scheduled for Pflaum, Pooley, and Segal, with Pflaum's Daubert hearing to be scheduled before December 10. Additionally, the Google witness testimony challenged in Ding's Motions in Limine 17 and 18 will be categorized as expert testimony. The disclosures provided for that testimony are adequate. But the Court will hold Daubert hearings for the Google witnesses to determine whether the portions of their testimony challenged by Ding are sufficiently reliable.

**IT IS SO ORDERED.**

Dated: October 1, 2025

VINCE CHHABRIA
United States District Judge

7