GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
FARZAD FEYZI (SBN 343538)
*FFeyzi@goodwinlaw.com*
NIRAV BHARDWAJ (SBN 350829)
*NBhardwaj@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel: +1 650 752 3100 | Fax: +1 650 853 1038

DARRYL M. WOO (SBN 100513)
*DWoo@goodwinlaw.com*
JESSICA HUANG FUZELLIER (SBN 315208)
*JHFuzellier@goodwinlaw.com*
DAVID RAPP-KIRSHNER (SBN 344494)
*DRappKirshner@goodwinlaw.com*
COLETTE A. LOWRY (SBN 359889)
*CLowry@goodwinlaw.com*
**GOODWIN PROCTER LLP**
525 Market Street, Floor 32
San Francisco, CA 94105
Tel.: +1 415 733 6000 | Fax: +1 415 677 9041

Attorneys for Defendant: LINWEI DING

[*ADDITIONAL COUNSEL LISTED IN SIGNATURE BLOCK*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LINWEI DING,<br><br>Defendant. | Case No.  3:24-CR-00141-VC<br><br>**DEFENDANT LINWEI DING'S STATEMENT OF HIS ASSERTION OF SPEEDY TRIAL ACT RIGHTS**<br><br>Filed/lodged concurrently herewith:<br><br>1.  Declaration of Grant P. Fondo |

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................4

II.    RELEVANT BACKGROUND ..............................................................................4

       A.    Speedy Trial Events Prior To The Trial Date Of October 14, 2025. ..........4

             1.    The Initial Indictment...........................................................................4

             2.    The Superseding Indictment. ................................................................5

             3.    The Second Superseding Indictment.....................................................6

       B.    The Court Continued The Trial Date To January 12, 2026, And Set Pretrial Motion-Related Deadlines Based On The Continued Trial Date..........................................................8

       C.    There Have Been No Available CJA Funds Since July 2025. ..................9

III.   LEGAL STANDARD............................................................................................9

IV.    ARGUMENT ......................................................................................................11

       A.    The Speedy Trial Clock Runs Out, At the Latest, 49 Days From October 14, 2025. ...............................................................................................11

             1.    Forty-Nine Days Were Not Excluded By Stipulation, Order, Or Automatic Exclusion Under Section 3161(h). ......................................................11

             2.    The Speedy Trial Clock Was Not Reset By The Superseding Indictment. .11

             3.    The Speedy Trial Clock Was Not Reset By The Second Superseding Indictment. .....................................................................................15

             4.    Mr. Ding Did Not Consent To Continuing Jury Selection To January 7, 2026, Or The Trial Date to January 12,  2026. ..........................................15

       B.    The Pretrial Dates Set As A Result Of The Continued Trial Date Are Not Applicable To The Speedy Trial Time Computation................................................16

       C.    Continuing Jury Selection To January 7, 2026, And The Trial Date To January 12, 2026 Is Not Reasonable And Does Not Serve The Ends of Justice, And The Time Between October 14, 2025 To January 12, 2026 Cannot Be Tolled. ......................17

V.     CONCLUSION...................................................................................................20

## **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Doggett v. United States*,
  505 U.S. 647 (1992) ........................................................................................ 15

*Furlow v. United States*,
  644 F.2d 764 (9th Cir. 1981) .......................................................................... 16

*Henderson v. United States*,
  476 U.S. 321 (1986) .................................................................................... 7, 15

*McNeely v. Blanas*,
  336 F.3d 822 (9th Cir. 2003) ...................................................................... 14, 15

*Smith v. Hooey*,
  393 U.S. 374 (1969) ........................................................................................ 14

*United States v. Alford*,
  142 F.3d 825, 827 (5th Cir. 1998) .................................................................... 9

*United States v. Andrews*,
  790 F.2d 803 (10th Cir. 1986) ........................................................................ 15

*United States v. Avila*,
  106 F.4th 684 (7th Cir. 2024) ......................................................................... 15

*United States v. Chen Chiang Liu*,
  631 F.3d 993 (9th Cir. 2011) ............................................................................ 8

*United States v. Clymer*,
  25 F.3d 824 (9th Cir. 1994) ........................................................................... 8, 9

*United States v. Correa*,
  182 F. Supp. 2d 326 (S.D.N.Y. 2001) ............................................................ 16

*United States v. Didier*,
  542 F.2d 1182 (2d Cir. 1976) ......................................................................... 15

*United States v. Gallardo*,
  773 F.2d 1496 (9th Cir. 1985) .......................................................................... 7

*United States v. Gonzalez*,
  671 F.2d 441 (11th Cir. 1982) .......................................................................... 7

*United States v. Henry*,
  984 F.3d 1343 (9th Cir. 2021) ........................................................................ 15

*United States v. Jaimes-Oliveros*,
No. 4:cr 10-324-BLW, 2011 WL 1897610, at *1 (D. Idaho May 18, 2011) ............................ 9

*United States v. Kemprud*,
No. 2:19-CR-00218-MCE, 2020 WL 2836784 (E.D. Ca. June 1, 2020)................................ 16

*United States v. King*,
483 F.3d 969 (9th Cir. 2007).............................................................................................. 12

*United States v. Medina*,
524 F.3d 974 (9th Cir. 2008)................................................................................................ 7

*United States v. Olsen*,
21 F.4th 1036 (9th Cir. 2022) .............................................................................................. 6

*United States v. Pollock*,
726 F.2d 1456 (9th Cir. 1984)............................................................................................ 15

*United States v. Richman*,
600 F.2d 286 (1st Cir. 1979)............................................................................................... 16

*United States v. Scott*,
245 Fed. Appx. 391 (5th Cir. 2007) .................................................................................... 16

*United States v. Taylor*,
487 U.S. 326 (1988) ............................................................................................................ 17

*United States v. Thomas*,
726 F.3d 1086 (9th Cir. 2013)..................................................................................... 3, 8, 12

*United States v. Young*,
528 F.3d 1294 (11th Cir. 2008)............................................................................................ 8

*Zedner v. United States*,
547 U.S. 489 (2006)............................................................................................................. 7

**State Cases**

*Rhinehart v. Mun. Court*,
35 Cal.3d 772 (1984) ........................................................................................................... 7

**Statutes**

18 U.S.C. § 1831 ..................................................................................................................... 11

18 U.S.C. § 1832 ..................................................................................................................... 11

18 U.S.C. § 3161(c) .............................................................................................................. 1, 7

18 U.S.C. § 3161(h) ................................................................................................. 7, 8, 13, 15

## I.   **INTRODUCTION**

Defendant Linwei Ding ("Mr. Ding") files this statement and assertion of his rights under the Speedy Trial Act, 18 U.S.C. § 3161, per the Court's September 23, 2025 Minute Order directing him to either file a stipulation of exclusion of time under the Act or assert his speedy trial rights. (See Dkt. No. 201.)

Mr. Ding asserts that for the reasons stated below that the speedy trial clock is set to run out 49 days from the last excluded date of October 14, 2025, which is December 2, 2025.  Nevertheless, Mr. Ding recognizes the issues and challenges relating to the government shutdown, including that it is fundamentally unfair and prejudicial for Mr. Ding to proceed to trial without CJA funding for experts he needs to prepare for and intends to call during the defense case-in-chief, including and not limited to funding needed to supplement his disclosed experts' reports and preparing for *Daubert* hearings of certain of those experts.  As such, Mr. Ding is agreeable to the date of January 7, 2026 for the commencement of voir dire, and thus is agreeable to a stipulation or order that keeps this date and brings the period remaining on the speedy trial clock to 1 day as of January 7, 2026.  He is not willing to extend his speedy trial date for the entire period from October 14, 2025 (or whatever date the Court deems is the date the speedy trial clock stars again), beyond January 7, 2026.

## II.   **RELEVANT BACKGROUND**

### A.   **Speedy Trial Events Prior To The Trial Date Of October 14, 2025.**

#### 1.   **The Initial Indictment.**

(1)   On March 5, 2024, the government filed the original indictment, charging Mr. Ding with four counts of theft of trade secrets, with each count corresponding to one of four categories of alleged trade secrets.  (Dkt. No. 1.)  Mr. Ding was arraigned and made his initial appearance on March 6, 2024.  (Dkt. No. 5.)  The arraignment started the speedy trial clock as to counts 1–4 on March 6, 2024.  *See* 18 U.S.C. § 3161(c)(1).  The parties stipulated and agreed to exclude time under the Speedy Trial Act from March 6, 2024 to April 24, 2024.  (Dkt. No. 6.)

(2)   On April 4, 2024, the Court entered the parties' stipulation to continue the status conference set for April 24, 2024 to May 8, 2024, and exclude time under the Speedy Trial Act from April 24, 2024 to May 8, 2024.  (Dkt. No. 15.)

(3)      Between May 8, 2024 and May 22, 2024, time was not excluded.

(4)      On May 22, 2024, the Court held a status conference, during which the parties jointly proposed to set a further status conference for August 28, 2024, and to exclude the time between May 22, 2024 and August 28, 2024.  (Dkt. No. 18.)  The Court thereafter set a further status conference for August 28, 2024, and excluded time under the Speedy Trial Act from May 22, 2024 to August 28, 2024.  *Id.*

(5)      On August 28, 2024, the Court held a status conference.  (Dkt. No. 37.)  During the status conference, the parties agreed to exclude time under the Speedy Trial Act from August 28, 2024 to October 30, 2024.  *Id.*  The Court issued a Minute Order excluding time from August 28, 2024 to October 30, 2024.  *Id.*

(6)      On October 25, 2024, the Court entered the parties' stipulation to continue the status conference set for October 30, 2024 to December 11, 2024, and exclude time under the Speedy Trial Act from October 30, 2024 to December 11, 2024.  (Dkt. No. 40.)

(7)      The status conference initially set for December 11, 2024 was continued by the Court to December 18, 2024.  (Dkt. No. 41.)  The time between December 11, 2024 and December 18, 2024 was not excluded.

(8)      On December 18, 2024, the Court held a status conference.  (Dkt. No. 43.)  During the status conference, the parties agreed to exclude time under the Speedy Trial Act from December 18, 2024 to February 5, 2025.  *Id.*  The Court issued a Minute Order excluding time from December 17, 2024 to February 5, 2025.  (Dkt. No. 43.)

**2.      The Superseding Indictment.**

(9)      On February 4, 2025, the government filed a Superseding Indictment, for a total of seven counts of theft of trade secrets corresponding to seven categories of alleged trade secrets, and seven counts of economic espionage corresponding to the same seven categories of alleged trade secrets.  (Dkt. No. 44.)  Mr. Ding was arraigned on the Superseding Indictment on February 10, 2025.  (Dkt. No. 50.)  The filing of the Superseding Indictment did not start a new speedy trial clock.  *See*, *infra*, Section IV.A.2.

On February 5, 2025, the Court held a status conference. (Dkt. No. 46.) During the status conference, the parties agreed to exclude time under the Speedy Trial Act from February 5, 2025 to April 2, 2025. *Id.* On February 12, 2025, the Court scheduled the parties' jury trial to begin October 14, 2025. (Dkt. No. 55.)

(10)    Between February 25, 2025 and April 8, 2025, Mr. Ding filed various pretrial motions, the last of which was ruled upon by the Court on June 24, 2025:

- On February 25, 2025, Mr. Ding filed a motion for a bill of particulars. (Dkt. No. 54.) Mr. Ding later filed an amended motion for a bill of particulars on April 4, 2025 (Dkt. No. 80), on which the Court held a hearing on May 1, 2025 and denied the motion the same day (Dkt. No. 97).

- On March 4, 2025, Mr. Ding filed a motion to dismiss. (Dkt. No. 63.) The Court held a hearing on the motion to dismiss on April 8, 2025 (Dkt. No. 82), and issued an order denying the motion on June 11, 2025 (Dkt. No. 105).

- On April 8, 2025, Mr. Ding filed a motion to suppress. (Dkt. No. 82.) The Court held a hearing on the motion to suppress on May 1, 2025, but took the motion to suppress under submission (Dkt. No. 97). The Court issued an order granting in substantial part Mr. Ding's motion to suppress on June 24, 2025. (Dkt. No. 107.)

(11)    On June 4, 2025, the Court entered the parties' stipulation to exclude time under the Speedy Trial Act from April 30, 2025 and October 14, 2025. (Dkt. No. 101.)

### 3.    The Second Superseding Indictment.

(12)    On September 9, 2025, the government filed a Second Superseding Indictment, which did not add new charges, but only amended the time periods for each charged activity. (Dkt. No. 140.) Mr. Ding was arraigned on the Second Superseding Indictment on September 23, 2025. (Dkt. No. 202.) The filing of the Second Superseding Indictment did not reset the speedy trial clock as to any of the charges. *See United States v. Thomas*, 726 F.3d 1086, 1091 (9th Cir. 2013) (" 'When a superseding indictment merely corrects technical errors but charges again the same offenses the 70-day clock continues and does not begin anew unless the original indictment in its entirety has

been previously dismissed.' "), citing *United States v. Karsseboom*, 881 F.2d 604, 607 (9th Cir. 1989).

Also on September 9, 2025, the government and Mr. Ding filed respective motions *in limine*. The government further filed motions to exclude the testimony of Mr. Ding's disclosed experts Isaac Pflaum, James Pooley, and Mark Eskridge (Dkt. Nos. 146, 148, 149), and Mr. Ding filed a motion to exclude the testimony of the government's disclosed expert Adam Segal (Dkt. No. 154) (together, the "Expert Motions"). The motions were to be addressed at the September 23, 2025 pretrial conference. *See* Standing Order for Criminal Cases Before Judge Vince Chhabria (last updated Apr. 25, 2023) ¶ 29.

Therefore, per the June 4, 2025 stipulation and order, the government had 49 days from October 14, 2025 to bring the case to trial. In other words the Speedy Trial clock is set to expire no later than December 2, 2025.

| ¶ | Time Period | Status of Calculation of Time Under Speedy Trial Act |
|---|---|---|
| 1 | March 6, 2024 – April 24, 2024 | Excluded by stipulation and order (70 days remain) |
| 2 | April 24, 2024 – May 8, 2024 | Excluded by stipulation and order (70 days remain) |
| 3 | May 8, 2024 – May 22, 2024 | 14 days not excluded (56 days remain) |
| 4 | May 22, 2024 – August 28, 2024 | Excluded by parties' agreement and order (56 days remain) |
| 5 | August 28, 2024 – October 30, 2024 | Excluded by parties' agreement and order (56 days remain) |
| 6 | October 30, 2024 – December 11, 2024 | Excluded by stipulation and order (56 days remain) |
| 7 | December 11 – December 18, 2024 | 7 days not excluded (49 days remain) |
| 8 | December 18, 2024 – February 5, 2025 | Excluded by parties' agreement and order (49 days remain) |
| 9 | February 5, 2025 – April 2, 2025 | Excluded by parties' agreement and order (49 days remain) |
| 10 | February 25, 2025 – May 1, 2025 | Excluded time between filing of motion for a bill of particulars and date of hearing and |

| | | | disposition<br>(49 days remain) |
|---|---|---|---|
| 10 | March 4, 2025 – June 8, 2025 | | Excluded time between filing of motion to dismiss and date of hearing, and no more than 30 days for the motion to be under advisement by the court<br>(49 days remain) |
| 10 | April 8, 2025 – June 1, 2025 | | Excluded time between filing of motion to suppress and date of hearing, and no more than 30 days for the motion to be under advisement by the court<br>(49 days remain) |
| 11 | April 30, 2025 – October 14, 2025 | | Excluded by stipulation and order<br>(49 days remain) |
| 12 | September 9, 2025 – September 23, 2025 | | Excluded time between filing of motions *in limine* and date of hearing<br>(49 days remain) |

### B.    The Court Continued The Trial Date To January 12, 2026, And Set Pretrial Motion-Related Deadlines Based On The Continued Trial Date.

On September 23, 2025, the Court held a pretrial conference.  (Dkt. No. 201.)  During the conference, the Court noted the impending federal government shutdown on October 1, 2025 as a potential reason to continue the trial.   Declaration of Grant P. Fondo ("Fondo Decl.") ¶ 3.  Mr. Ding stated he did not agree to continuing the trial to 2026, and believed a one-week continuance would be sufficient.  *Id.*   The government likewise did not agree to continuing the trial to 2026, and suggested a continuance for trial to begin no later than November 3, 2025.   The Court ultimately continued the trial date to January 12, 2026, with jury selection set for January 7, 2026.  Mr. Ding alerted the Court and the government that he did not intend to agree to any extension of the Speedy Trial Act date.  *Id.*

After ordering the trial date continued to January 2026, the Court set a new pretrial conference for December 17, 2025.  (Dkt. No. 201.)  The Court then heard oral arguments on the parties' various motions *in limine*.  As to the Expert Motions, the Court ordered Mr. Ding to provide new disclosures for the challenged defense experts, and for Mr. Ding's Mandarin translation expert, by October 24, 2025.  (Dkt. No. 205.)  The Court also scheduled *Daubert* hearings regarding Messrs.

Pflaum, Pooley, and Segal to take place between the dates of December 5 to December 10, 2025. (Dkt. Nos. 201, 205.)

On October 1, 2025, the federal government shutdown began.  One the same day, the Court issued rulings on government's motions *in limine* Nos. 1, 2, 4, and 5, and Mr. Ding's motions *in limine* Nos. 2, 3, 4, 5, 6, 7,8, 9, 10, 11, and 14.  (Dkt. No. 205.)  The Court deferred ruling on government's motion *in limine* No. 3 and Mr. Ding's motion *in limine* No. 1 and stated the parties could address the issues at the December 17, 2025 pretrial conference.  *Id.*  To date, the Court has not yet ruled on Mr. Ding's motion *in limine* Nos. 12 and 13.

Mr. Ding maintains that no time between October 14, 2025 and January 7, 2026 is excludable from the computation of time under the Speedy Trial Act, and that the Speedy Trial deadline remains 49 days from October 14, 2025.  Nevertheless, Mr. Ding does not oppose the January 7, 2026 date for commencement of voir dire, provided that 48 of the 49 remaining days are extinguished by January 7, 2026, as well.

**C.      There Have Been No Available CJA Funds Since July 2025.**

As this Court is well aware, Mr. Ding is represented by counsel appointed under the Criminal Justice Act (CJA).  CJA funds were depleted on or around July 3, 2025 for Fiscal Year 2025.  Fondo Decl. ¶ 5; *see also* "CJA Panel Attorney Funds Information FY 2025," UNITED STATES COURTS, last updated October 6, 2025 (available at https://www.uscourts.gov/about-federal-courts/defender-services/cja-panel-attorney-funds-information-fy-2025).  Counsel for Mr. Ding was informed that all payments for July 23, 2025 through September 30, 2025 would be deferred.  Fondo Decl. ¶ 5. Accordingly, no CJA disbursements have been made since July, and the defense has been unable to pay experts for work performed since July 23, 2025.  *Id.*  The defense understands their experts will not be paid for prior or future work at least until the government shutdown ceases, leaving critical expert work during the peak period unfunded, through no fault of Mr. Ding or his counsel.  *Id.*

**III.    LEGAL STANDARD**

The Constitution guarantees Mr. Ding the right to a speedy trial.  U.S. Const. amend. VI.  To "give effect to" and better define the confines of this right, Congress enacted the Speedy Trial Act. *United States v. Olsen*, 21 F.4th 1036, 1040 (9th Cir. 2022).  The Speedy Trial Act requires  the

6

United States to try the defendant within 70 days of the indictment's filing or the accused's initial appearance, whichever occurs later.  18 U.S.C. § 3161(c)(1).

The time within which trial must commence[1] may be expanded by excludable delays. 18 U.S.C. § 3161(h).  There are several exclusions of time that the Court or the government may cite as a basis for expansion of Mr. Ding's time in this case:

*First*, any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" is excluded.  18 U.S.C. § 3161(h)(1)(D).

*Second*, any "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court" is also excluded.  18 U.S.C. § 3161(h)(1)(H).

Subsection (D) and subsection (H) must be read in concert.  *Henderson v. United States*, 476 U.S. 321, 326–27 (1986); *see also United States v. Medina*, 524 F.3d 974, 978 (9th Cir. 2008). Under subsection (D), all time from the date the motion is filed until the hearing occurs is automatically excluded.  *Medina*, 524 F.3d at 979.  At that point, subsection (H)'s 30-day under advisement clock will begin to tick.  *Id.*

*Third*, exclusion is permitted for delays arising from ends of justice continuances.  18 U.S.C. § 3161(h)(7)(A).  The Court may exclude time from the calculation of the speedy trial deadline when the Court, "after considering certain factors, makes on-the-record findings that the ends of justice served by granting the continuance outweigh the public's and defendant's interests in a speedy trial." *Zedner v. United States*, 547 U.S. 489, 498 (2006).  When subsection (h)(7)(A) applies, the Court begins to exclude time on the date the delaying event occurs.  *United States v. Gallardo*, 773 F.2d 1496, 1500–06 (9th Cir. 1985).

---

[1] The commencement of trial under the Speedy Trial Act is the day the court begins voir dire.  *See United States v. Gonzalez*, 671 F.2d 441, 443 (11th Cir. 1982); *Rhinehart v. Mun. Court*, 35 Cal.3d 772, 779 (1984).

## IV.    ARGUMENT

### A.    The Speedy Trial Clock Runs Out, At the Latest, 49 Days From October 14, 2025.

The speedy trial clock will run out 49 days after October 14, 2025. This calculation accounts for 21 days that have not been excluded since Mr. Ding was arraigned on the initial indictment on March 6, 2025.

#### 1.    Forty-Nine Days Were Not Excluded By Stipulation, Order, Or Automatic Exclusion Under Section 3161(h).

The time periods between May 8, 2024 and May 22, 2024, and December 11, 2024 and December 18, 2024, were not excluded from the speedy trial computation of time. The parties did not agree to or file a stipulation to exclude, nor did the Court order exclusion of, either time period. Moreover, during both periods, there were no pretrial motions pending, nor were any other provisions under 18 U.S.C. Section 3161(h) justifying exclusion of time applicable.

#### 2.    The Speedy Trial Clock Was Not Reset By The Superseding Indictment.

Mr. Ding's arraignment on the initial indictment, on March 6, 2024, started the speedy trial clock. His arraignment on the Superseding Indictment, on February 10, 2025, did not start a new clock because the newly-added charges all related to the original charges.

Nothing in the Speedy Trial Act allows the clock to restart simply on filing a superseding indictment. *See United States v. Young*, 528 F.3d 1294, 1296 (11th Cir. 2008). "When a superseding indictment contains charges which, under double-jeopardy principles, are required to be joined with the original charges, Speedy Trial Act calculations begin from the date of the original indictment (or initial appearance)." *United States v. Clymer*, 25 F.3d 824, 827 n.2 (9th Cir. 1994); *see also United States v. Thomas*, 726 F.3d 1086, 1091 (9th Cir. 2013) (recognizing the concept that a new count introduced in a superseding indictment was "not required to be joined" as referring to the "joinder required by the Double Jeopardy Clause of the Constitution"); *United States v. Chen Chiang Liu*, 631 F.3d 993, 998 (9th Cir. 2011) (holding Speedy Trial Act "calculations begin from the date of the original indictment if a subsequent indictment contains charges which, under double-jeopardy principles, are required to be joined with the original charges").

In *Clymer*, defendant Mr. Clymer was originally charged with conspiracy to possess methamphetamine with the intent to distribute, and possession of methamphetamine with the intent to distribute. *Clymer*, 25 F.3d at 826. A superseding indictment was later filed containing the five additional counts against Mr. Clymer, of manufacturing and attempting to manufacture methamphetamine, and possession with the intent to distribute. *Id.* The Ninth Circuit noted that the filing of the superseding indictment did not restart the Speedy Trial Clock, because the charges against Mr. Clymer were "required to be joined with the original charges," and therefore the Speedy Trial calculations began from the date of the original indictment or appearance. *Id.* at 827 n.2.

In *United States v. Jaimes-Oliveros* (which relied in part on *Clymer*), the original indictment charged three defendants, including Mr. Jaimes Oliveros, with conspiracy to distribute methamphetamine and four other related counts. *Jaimes-Oliveros*, No. 4:cr 10-324-BLW, 2011 WL 1897610, at *1 (D. Idaho May 18, 2011). A superseding indictment was later filed, adding a single charge against Mr. Jaimes Oliveros for felon-in-possession. *Id.* The district court concluded that the felon-in-possession charge was not required to be joined with the original charge under double jeopardy principles. The felon-in-possession charge "appears to be a stand-alone charge, sharing no elements with the original meth charges, not dependent on their outcome, and thus not exposing the defendant to double jeopardy even if it [was] brought as a separate claim in a separate indictment." *Id.*, at *3.

And in *United States v. Alford*, defendant Mr. Alford was originally charged with importation of marijuana and possession of marijuana with intent to distribute occurring on or about November 27, 1996. *Alford*, 142 F.3d 825, 827 (5th Cir. 1998). The government later filed a superseding indictment, additionally charging Mr. Alford with importation and possession of marijuana with intent to distribute for five additional time periods; but, the government conceded that offenses charged in two of the added counts (counts 9 and 10) were based on the same conduct that formed the basis of the counts in the original indictment. *Id.* The Fifth Circuit held that counts 9 and 10 of the superseding indictment were essentially offenses charged in the original indictment, and because trial on those counts did not commence within 70 days of Mr. Alford's first appearance where the original indictment was pending, counts 9 and 10 were subject to dismissal. *Id.* at 829.

9

Here, the additional charges in the Superseding Indictment were required to be joined with the original charges. The Superseding Indictment simply expanded the number of theft of trade secret counts and categories of alleged trade secrets from four to seven; the alleged trade secrets and the technology underlying those trade secrets were unchanged, and added seven related charges of economic espionage.

Both indictments alleged that the trade secrets at issue "pertain to the hardware infrastructure and software platform that allow Google's supercomputing data centers to train large AI models . . . . The trade secrets contain detailed information about the architecture and functionality of GPU and TPU chips and systems, the software that allow[ed] the chips to communicate and execute tasks, and the software that orchestrate[d] thousands of chips into a supercomputer capable of" training and executing AI workloads. Dkt. No. 1 ¶ 30; Dkt. No. 44 ¶ 35. The technology at issue consisted of Google's AI products and services included the AI models and applications "trained" through Machine Learning; the "core hardware components of a Google supercomputing data center" including Graphics Processing Units ("GPUs") and Tensor Processing Units ("TPUs"); and the "hardware infrastructure in Google's network of data centers . . . managed by several layers of software," one component of which was the Cluster Management System ("CMS"). Dkt. No. 1 ¶¶ 1–5; Dkt. No. 44 ¶¶ 1–7. The Superseding Indictment added allegations that the trade secrets at issue also pertained to SmartNIC, "a custom designed . . . a type of network interface card," but acknowledged that SmartNIC was part of the function of the GPU products. Dkt. No. 44 ¶¶ 6, 35.

In addition, both indictments alleged the same activity and conduct by Mr. Ding to exfiltrate such information. Both indictments also alleged the time period of the alleged exfiltration – about May 2022 to December 2023 – and to the same two personal Google Cloud accounts identified. Dkt. No. 1 ¶¶ 15, 22, 25, 29; Dkt. No. 44 ¶¶ 17, 27, 34.

The other primary distinction between the initial indictment and the Superseding Indictment is the addition of seven counts of economic espionage. Both the initial indictment and Superseding Indictment alleged Mr. Ding's activity in the People's Republic in China (PRC) in 2022 and 2023, including his affiliation with two PRC-based companies: (1) Beijing Rongshu Lianzhi Technology Co., Ltd. ("Rongshu"), an "early-stage technology company based in the People's Republic of China

10

(PRC)," whose business objectives "included the development of acceleration software designed for machine learning on GPU chips"; and (2) Shanghai Zhisuan Technology Co., Ltd. ("Zhisuan"), "a PRC-based startup company that proposed to develop a CMS that could accelerate machine learning workloads, including training large AI models powered by supercomputing chips" that Mr. Ding founded and acted as its CEO; and (3) that Mr. Ding later applied on behalf of Zhisuan to a "PRC-based startup incubation program known as Miracle Plus." Dkt. No. 1 ¶¶ 15–21; Dkt. No. 44 ¶¶ 17–23. The Superseding Indictment added three paragraphs of new allegations of Mr. Ding's "inten[t] to [b]enefit the PRC [g]overnment and [its i]nstrumentalities," citing documents that allegedly showed that Zhisuan pointed to PRC policy documents, applied to a PRC talent program, and intended to market itself to and provide services to PRC-controlled entities. Dkt. No. 44 ¶¶ 24–26.

However, the economic espionage charges were likewise required to be joined with the original charges under double jeopardy principles. As in *Jaimes-Oliveros*, the economic espionage charges are not stand-alone charges. The economic espionage charges share elements with and rely on the theft of trade secret charges, as a determination of economic espionage requires a finding that a defendant "(1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains a trade secret; (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys a trade secret; [or] (3) receives, buys, or possesses a trade secret, knowing the same to have been stolen or appropriated, obtained, or converted without authorization" (*see* 18 U.S.C. § 1831(a)(1)–(3)) – the exact same elements enumerated, verbatim, for theft of trade secrets (*see* 18 U.S.C. § 1832(a)(1)–(3)). Moreover, the "trade secrets" at issue for the seven theft of trade secret charges are the same "trade secrets" at issue for the seven economic espionage charges. As such, the economic espionage charges are dependent in part on an outcome of the determination of the theft of trade secret charges, as a finding that no trade secret exists in any category listed in the indictment necessitates a finding that no economic espionage occurred for that same category. For the same reason, Mr. Ding would be exposed to double jeopardy if the economic espionage charges were brought as a separate claim in a separate indictment, as well, because the jury would be required to first make a finding that any category of

11

trade secrets actually contained trade secrets.

Therefore, the filing of the Superseding Indictment did not start a second 70-day clock under the Speedy Trial Act. All fourteen counts are tied to the speedy trial clock that began running when Mr. Ding was arraigned on the initial indictment, on March 6, 2024.[2]

### 3.   The Speedy Trial Clock Was Not Reset By The Second Superseding Indictment.

Mr. Ding's arraignment on the Second Superseding Indictment, on September 23, 2025, likewise did not start a new speedy trial clock.

The Second Superseding Indictment did not add new charges, but only amended the time periods for each charged activity. (Dkt. No. 140.) The Second Superseding Indictment expanded the start date of the charged counts from June 1, 2022 and June 3, 2022 to May 21, 2022. (*Compare* Dkt. No. 44 ¶ 44c *with* Dkt. No. 140 ¶ 46c.) But these expanded time periods were already alleged in the initial and Superseding Indictment, and the Second Superseding Indictment added no new factual allegations to further support these amended time periods.

Where, as here, a superseding indictment does not charge a new crime, but only corrects dates in the previous indictment, the clock does not restart. This rule "prevents the government from circumventing the speedy trial guarantee by restarting the speedy-trial clock by obtaining superseding indictments with minor corrections." *United States v. King*, 483 F.3d 969, 972 (9th Cir. 2007), citing *United States v. Gonzales*, 897 F.2d 1312, 1316 (5th Cir. 1990).

As such, the filing of the Second Superseding Indictment likewise did not start a new 70-day clock and the trigger date for the running of the Speedy Trial Act clock for all charges remains March 6, 2024.

### 4.   Mr. Ding Did Not Consent To Continuing Jury Selection To January 7, 2026, Or The Trial Date to January 12,  2026.

Mr. Ding has only stipulated to exclude time up to October 14, 2025 from the computation under the Speedy Trial Act. (Dkt. No. 101.) And at the September 23, 2025 pretrial conference and

---

[2] Even if the Superseding Indictment started a new speedy trial clock as to the economic espionage charges, it did not start a new clock as to the original charges. *See Thomas*, 726 F.3d at 1091.

in his supplemental filing regarding motion *in limine* No. 8, Mr. Ding only sought a six-day continuance of the start of trial to October 20, 2025.  (*See* Dkt. No. 188.)  Mr. Ding furthermore objected to the continued trial date of January 12, 2026 (with jury selection to take place January 7, 2026) at the September 23, 2025, pretrial conference.  Fondo Decl. ¶ 3.

**B.  The Pretrial Dates Set As A Result Of The Continued Trial Date Are Not Applicable To The Speedy Trial Time Computation.**

The pretrial motion-related dates set after October 14, 2025 should not be excluded from the speedy trial computation.

After ordering the trial date continued to January 2026, the Court set a new pretrial conference for December 17, 2025, and further pretrial motion-related deadlines based on the new trial date. (Dkt. No. 201.)  Those dates include:

- October 24, 2025 for Mr. Ding to provide supplemental disclosures as to the challenged defense experts and Mr. Ding's Mandarin translation expert.  (Dkt. No. 201.)
- *Daubert* hearings for Messrs. Pflaum, Pooley, and Segal to take place between the dates of December 5 to December 10, 2025.  (Dkt. Nos. 201, 205.)  Counsel for Mr. Ding and the government met and conferred on October 2, 2025, and have established that, based on the disclosed experts' availabilities, the last *Daubert* hearing date would be December 9, 2025.  Fondo Decl. ¶ 4.
- December 17, 2025 to address the remaining pending motions *in limine*.  (*See* Dkt. No. 205.)

Under normal circumstances, delay resulting from pretrial motions "from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion" and no more than thirty days thereafter "during which any proceeding concerning the defendant is actually under advisement by the court" would be excluded under the speedy trial computation. 18 U.S.C. § 3161(h)(1)(D) and (H).  However, but for the continued trial date, the delays here as to the still-pending motions *in limine*, supplemental expert disclosures, and *Daubert* hearings, would not have been scheduled for their currently-set dates.  Moreover, these delays attributable to the continuance of the trial date are unreasonable and should not be excluded from the Speedy Trial Act

13

clock.

The delay is attributable to the government.  Lack of CJA funding and the federal government shutdown, the latter being the principal reason the Court cited to justify the continuance of trial to January 2026, are undeniably delays that are the fault of the government, not the defendant.  For delays not caused by the defendant or attributable to the defendant's own acts or tactical decisions by defense counsel, the burden is on the state to provide reasonable explanation for pretrial delay.  *See McNeely v. Blanas*, 336 F.3d 822, 826–27 (9th Cir. 2003) (holding the prosecution bears the burden of explaining pretrial delays).  For "more neutral reason[s]" such as negligence or overcrowded courts, those reasons are weighed less heavily, but are still considered the "ultimate responsibility" of the government.  *Id.*, citing *Barker v. Wingo*, 407 U.S. 514, 531 (1972).  In other words, delays for reasons such as "court backlog . . . are attributable to the State."  *McNeely*, 336 F.3d at 829.

For this reason and those further explained below, the pretrial motion-related dates set beyond October 14, 2025 are not excludable from the speedy trial clock.

**C.**     **Continuing Jury Selection to January 7, 2026, and the Trial Date to January 12, 2026 is Not Reasonable and Does Not Serve the Ends of Justice, and the Time Between October 14, 2025 to January 12, 2026 Cannot be Tolled.**

Continuing jury selection to January 7, 2026 and the trial date to January 12, 2026 violates Mr. Ding's rights under the Constitution and the Speedy Trial Act.  There is no reasonable basis to continue these dates to January 2026, nor are the "ends of justice" served by the continuance.  The time period from October 14, 2025 and January 7, 2025 therefore cannot be tolled, or excluded from the speedy trial computation.

The Sixth Amendment right to a speedy trial "protect[s] at least three basic demands of criminal justice in the Anglo-American legal system: '[1] to prevent undue and oppressive incarceration prior to trial, [2] to minimize anxiety and concern accompanying public accusation and [3] to limit the possibilities that long delay will impair the ability of an accused to defend himself.' " *Smith v. Hooey,* 393 U.S. 374, 377–78 (1969).  Although Congress included the any period of delay resulting from a continuance granted by a judge on his or her own motion, based on

14

findings that the "ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial" (*see* 18 U.S.C. § 3161(h)(7)(A)), this "ends of justice" exclusion of time was not meant to be a general exclusion for *every* delay no matter the source. *United States v. Pollock*, 726 F.2d 1456, 1461 (9th Cir. 1984). Excludability under subsection (h)(7) is not automatic – the period of delay must be "reasonable." *Henderson*, 476 U.S. at 326–27. Reasonableness is assessed on a case-by-case basis according to a totality of the circumstances test. *United States v. Henry*, 984 F.3d 1343, 1353 (9th Cir. 2021).

Continuing the jury selection date and trial date – over Mr. Ding's objection – sets the trial to take place over 670 days, or nearly two years, after he was first indicted. This delay of close to two years is not reasonable, and in fact, is "presumptively prejudicial." *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) (courts "have generally found post accusation delay 'presumptively prejudicial' at least as it approaches one year.").

The reasons cited by the Court for delaying the trial start date to January, included the impending federal government shutdown and the potential consequences flowing from this shutdown, including the failure of the government to properly fund reasonable CJA expenses. The federal government shutdown, which began on October 1, 2025, does not constitute reasonable delay nor does it fall within any excusable delay articulated in Section 3161(h).

First, such a delay is of the government's making. A government shutdown is no different from circumstances such as "overcrowded courts" (*see McNeely*, 336 F.3d at 827) – the unavailability of the court due to operational constraints, whether due to a crowded calendar or otherwise, is not a permissible factor for an ends-of-justice finding. *See, e.g.*, *United States v. Avila*, 106 F.4th 684, 700–01 (7th Cir. 2024) (district court abused its discretion by excluding time based partly on the court's crowded calendar); *United States v. Andrews*, 790 F.2d 803, 808 (10th Cir. 1986), *cert. denied*, 481 U.S. 1018 (delay of trial date occasioned by a heavy docket, legal holidays, and judge's unavailability constituted a violation of the Speedy Trial Act); *United States v. Didier*, 542 F.2d 1182, 1188 (2d Cir. 1976) (court's desire to await result of Fifth Circuit appeal and court's crowded calendar not sufficient reasons for delay).

Second, there is no indication to date that the courthouse would be non-operational during

15

the shutdown, or that Federal Judiciary funds would not be available to continue operations. The Judiciary "remains open and will continue paid operations" despite the federal government shutdown. *See* "Judiciary Still Operating as Shutdown Starts," UNITED STATES COURTS, last updated October 1, 2025 (available at https://www.uscourts.gov/data-news/judiciary-news/2025/10/01/judiciary-still-operating-shutdown-starts). Court operations are to continue through October 17, "using court fee balances and other funds not dependent on a new appropriation." *Id.*, And, if the shutdown were to continue even after Judiciary funds are exhausted, "the courts will then operate under the terms of the Anti-Deficiency Act, which allows work to continue during a lapse in appropriations if it is necessary to support to exercise of Article III judicial powers." *Id.* To date, the Northern District of California federal courthouse remains open and in operation.

And third, there have been no orders or legislation tolling any applicable deadlines or excluding delayed time pertaining to the government shutdown. The Speedy Trial Act itself does not directly address continuances stemming from emergencies. Unlike in circumstances such as pandemics, natural disasters, and public emergencies, the government shutdown has not made it impossible for Mr. Ding's trial to proceed. *Compare, e.g.*, *United States v. Kemprud*, No. 2:19-CR-00218-MCE, 2020 WL 2836784, at *3–4 (E.D. Ca. June 1, 2020) (excludable delay appropriate due to public health concerns presented by COVID-19 pandemic); *United States v. Scott*, 245 Fed. Appx. 391 (5th Cir. 2007) (recognizing Hurricane Katrina-related continuances served the ends of justice); *United States v. Correa*, 182 F. Supp. 2d 326, 329 (S.D.N.Y. 2001) (excluding time following the September 11, 2001 terrorist attacks); *Furlow v. United States*, 644 F.2d 764, 767–69 (9th Cir. 1981) (affirming two-week ends-of-justice continuance following Mt. St. Helens' eruption, recognizing that the eruption made it impossible for the trial to proceed); *United States v. Richman*, 600 F.2d 286, 292–94 (1st Cir. 1979) (continuance necessitated by "a paralyzing blizzard"). Unlike a natural disaster, terror attack, or pandemic, the shutdown is an event caused by the government itself, and is within the government's control. Here, with a government shutdown, the only restraints to proceeding to trial are financial ones, imposed by the government itself.

Even if the government shutdown made proceeding to trial impossible or impracticable, the

16

shutdown is not a reasonable delay under the Speedy Trial Act because the shutdown is a financial choice that the government made. Just as the Speedy Trial Act does not excuse dilatory prosecution brought about by bad faith or neglectful government conduct (*see United States v. Taylor*, 487 U.S. 326, 339 (1988), *superseded by statute on other grounds*), the Act likewise does not excuse the government's decision not to provide the funding that allows the trial to go forward as previously scheduled. It is fundamentally unfair to a CJA-funded defendant like Mr. Ding to proceed to trial (or prepare for trial) under financial constraints created entirely by the government and under the government's control. Moreover, the abstract nature of the government shutdown makes any delay in bringing this case to trial open-ended – there is currently no indication whether or when the shutdown will end, or when CJA funding will become available again to pay for work already performed, or for any work forward from this date.

In sum, the ends of justice are not served by continuing jury selection to January 7, 2026 or the trial to January 12, 2026, and any reasons as bases on which to continue the trial do not outweigh the best interests of the public and of the defendant in a speedy trial.

## V.    CONCLUSION

For the foregoing reasons, Mr. Ding asserts his right to a trial to commence no later than 49 days from October 14, 2025, and asserts that it is additionally unfair and prejudicial for him to proceed to trial without CJA funding. Notwithstanding, Mr. Ding is agreeable to the date of January 7, 2026 for the commencement of voir dire, and agrees to a stipulation or order that brings the period remaining on the speedy trial clock to 1 day. He is not willing to extend his speedy trial date beyond January 7, 2026.

Respectfully submitted,

Dated: October 7, 2025

By: */s/ Grant P. Fondo*
GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
DARRYL M. WOO (SBN 100513)
*DWoo@goodwinlaw.com*
JESSICA HUANG FUZELLIER (SBN 315208)
*JHFuzellier@goodwinlaw.com*
FARZAD FEYZI (SBN 343538)
*FFeyzi@goodwinlaw.com*
DAVID RAPP-KIRSHNER (SBN 344494)

17

*DRappKirshner@goodwinlaw.com*
NIRAV BHARDWAJ (SBN 350829)
*NBhardwaj@goodwinlaw.com*
COLETTE A. LOWRY (SBN 359889)
*CLowry@goodwinlaw.com*
**GOODWIN PROCTER** LLP

LORA J. KRSULICH (SBN 315399)
*LKrsulich@goodwinlaw.com*
**GOODWIN PROCTER** LLP
601 S. Figueroa Street, Suite 4100
Los Angeles, CA 90017
Tel.: +1 213 426 2500 | Fax: +1 213 623 1673

Attorneys for Defendant: LINWEI DING

18

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **October 7, 2025**. I further certify that all participants in the case are registered CM/ ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **October 7, 2025**.

*/s/ Grant P. Fondo*

GRANT P. FONDO

1