| | |
|---|---|
| CRAIG H. MISSAKIAN (CABN 125202)<br>United States Attorney<br><br>MARTHA BOERSCH (CABN 126569)<br>Chief, Criminal Division<br><br>CASEY BOOME (NYBN 5101845)<br>MOLLY K. PRIEDEMAN (CABN 302096)<br>ROLAND CHANG (CABN 271511)<br>Assistant United States Attorneys<br><br>    450 Golden Gate Avenue, Box 36055<br>    San Francisco, California 94102-3495<br>    Telephone: (415) 436-6627<br>    casey.boome@usdoj.gov<br>    molly.priedeman@usdoj.gov<br>    roland.chang@usdoj.gov<br><br>Attorneys for United States of America | GRANT P. FONDO (SBN 181530)<br>*GFondo@goodwinlaw.com*<br>FARZAD FEYZI (SBN 343538)<br>*FFeyzi@goodwinlaw.com*<br>**GOODWIN PROCTER LLP**<br>601 Marshall Street<br>Redwood City, CA 94063<br>Tel: +1 650 752 3100<br>Fax: +1 650 853 1038<br><br>DARRYL M. WOO (SBN 100513)<br>*DWoo@goodwinlaw.com*<br>RACHEL M. WALSH (SBN 250568)<br>*RWalsh@goodwinlaw.com*<br>JESSICA HUANG FUZELLIER (SBN 315208)<br>*JHFuzellier@goodwinlaw.com*<br>DAVID RAPP-KIRSHNER (SBN 344494)<br>*DRappKirshner@goodwinlaw.com*<br>**GOODWIN PROCTER LLP**<br>525 Market Street, Floor 32<br>San Francisco, CA 94105<br>Tel.: +1 415 733 6000<br>Fax: +1 415 677 9041<br><br>Attorneys for Defendant Linwei Ding<br><br>[*ADDITIONAL COUNSEL LISTED IN SIGNATURE BLOCK*] |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>  v.<br><br>LINWEI DING,<br><br>        Defendant. | Case No. 3:24-CR-00141-VC<br><br>**JOINT PRETRIAL CONFERENCE STATEMENT**<br><br>The Honorable Vince Chhabria<br>Courtroom 4, 17th Floor<br><br>Trial: January 12, 2026<br>Pretrial Conference: December 17, 2025 |

The parties through undersigned counsel hereby respectfully submit the following Joint Pretrial Conference Statement pursuant to Crim. L. R. 17.1-1(b) and the Court's direction at the September 23, 2025 pretrial conference to file a joint statement identifying outstanding issues in the proposed jury instructions, as well as any other issues that the parties would like the Court to adjudicate at the December 17, 2025 pretrial conference. *See* Dkt. No. 201. The case is set for trial to commence on January 12, 2026, with jury selection to take place on January 7, 2026. *Id. Daubert* hearings occurred on December 5, 8, and 9, 2025. *Id.*

## I.   OUTSTANDING ITEMS LISTED IN CRIMINAL LOCAL RULE 17.1-1

**(1)   Stipulation of facts which may be deemed proved at the trial without further proof by either party and limitation of witnesses; Pretrial resolution of objections to exhibits or testimony to be offered at trial.**

The parties have continued to meet and confer regarding evidentiary stipulations, including stipulations that would obviate the need for certain witnesses. The parties anticipate filing a set of stipulations shortly.

Government's statement:  Pursuant to the Court's direction during the December 5, 2025 *Daubert* hearing, by December 19, 2025, the government will provide defense counsel with a list of documents found on the defendant's electronic devices and in his accounts that it intends to admit at trial according to the parameters for admissibility that the Court established in its November 25, 2025 Order (Dkt. 234). The parties will be mindful to alert the Court of any outstanding disputes in order to resolve them outside the presence of the jury.

Defendant's statement:  The parties continue to dispute the admissibility of many of the documents that were raised in the government's motion in *limine* No. 6 (Dkt. No. 147) and defendant's motion in *limine* No. 15 (Dkt. No. 150), regarding materials found on Mr. Ding's electronic devices ("Ding Devices Documents"), that were partially addressed in the Court's November 25, 2025, Order Regarding Government's Motion *in Limine* 6 and Ding's Motion *in Limine* 15 (Dkt. No. 234, "November 25, 2025 Order"). Mr. Ding will review the government's proposed list of trade secrets and be prepared to discuss any objections or concerns at the pretrial conference.

**(2)** **Pretrial exchange of documents, exhibits, summaries, schedules, models or diagrams intended to be offered or used at trial, except materials that may be used only for impeachment or rebuttal.**

<u>Government's statement</u>: The government will file a revised exhibit list prior to the agreed-upon December 23, 2025 deadline in this Statement. Pursuant to the Court's direction, the government will provide defense counsel with: (i) a list of trade secret documents that it anticipates will be the primary focus of trial on December 15, 2025; and (ii) a list of documents that it intends to admit at trial from the defendant's electronic devices based on the Court's November 25, 2025 Order (Dkt. 234) on December 19, 2025. The government respectfully reserves the right to amend these lists, including in response to Mr. Ding's revised pre-trial filings.

<u>Defendant's statement</u>: Mr. Ding will file an amended exhibit list by the parties' agreed-upon December 23, 2025 deadline as detailed below.

**(3)** **Any other matter which may tend to promote a fair and expeditious trial**

The following pretrial motions have been filed and fully briefed as of the date of this pretrial conference statement, and are pending decision:

- Defendant's Motions *In Limine* Nos. 12–13 to Exclude Improperly Identified Trade Secrets (Dkt. No. 159). The Court heard oral argument on this motion on September 23, 2025.

- Defendant's Motion *in Limine* No. 16 to Preclude the Government's Experts from Offering Legal Opinions About Whether Documents or Snippets of Documents Are Trade Secrets (Dkt. No. 152). The hearing for this motion is currently set for December 17, 2025.

- United States' Administrative Motion to File Under Seal (Dkt. 218), Omnibus Administrative Motion to File Under Seal Regarding Pending Sealing Requests (Dkt. 228), and Administrative Motion to File Under Seal and Response (Dkt. 241). The hearing on these motions is currently set for December 17, 2025. *See* Dkt. 254.

- United States' Motion to Exclude Expert Testimony of Isaac Pflaum (Dkt. No. 146); and United States' Supplemental Motion to Exclude Defense Expert Isaac Pflaum (Dkt. No. 229). A *Daubert* hearing occurred on December 5, 2025. Dkt. No. 209. The

government is filing a supplemental motion to exclude Isaac Pflaum on December 11, 2025. Mr. Ding will file his response on December 17, 2025.

Pursuant to the Court's November 24, 2025 Order granting the parties' stipulation to deadlines for additional pretrial motions (Dkt. No. 233), the following pretrial motions were filed on December 3, 2025, and oppositions to these motions will be filed no later than December 10, 2025. Oral argument, if needed, is anticipated at the December 17, 2025 pretrial conference:

- Defendant's Motion *In Limine* No. 20 Regarding Defendant's Chinese Citizenship (Dkt. No. 242).
- Defendant's Motion *In Limine* No. 21 Regarding Defendant's Alleged Email Accounts (Dkt. No. 243).
- Defendant's Motions *In Limine* Nos. 22–25 to Admit Publicly Available Materials (Dkt. No. 245)

II.   **PRETRIAL DEADLINES TO RESCHEDULE**

The continuance of the trial date from October 14, 2025 to January 12, 2026 vacated various pretrial deadlines that have not been reset. In addition, the parties may need to file revised Individuals Involved List, Exhibit List(s), and/or Witness List(s). The parties' proposed deadlines for those events are as follows:

| Event | Proposed New Deadline |
| --- | --- |
| Revised Individuals Involved List; Revised Exhibit Lists; Revised Witness Lists | December 23, 2025 |
| Arrangement of Daily Transcript or RealTime Reporting | December 29, 2025 |
| Contact Courtroom Deputy Regarding Courtroom Layout and Technology | January 7, 2026[1] |
| Deliver Original and Copy Trial Exhibit Sets, List of Names, Places, Uncommon Terms and Acronyms | January 8, 2026 |

---

[1] The parties request the opportunity to test courtroom technology on this date, either before or after jury selection.

### III. VERDICT FORM

The parties filed competing proposed verdict forms on September 18, 2025. (*See* Dkt. Nos. 171, 173.) Mr. Ding will, prior to the pretrial conference, file an amended proposed verdict form, and requests a pretrial ruling from the Court on which verdict form will be given to the jury. The government has not reviewed the defendant's amended proposed verdict form. It respectfully requests the opportunity to review and lodge objections to the amended form before the Court makes any ruling on the final verdict form.

### IV. OUTSTANDING DISPUTED JURY INSTRUCTIONS

#### A. Proposed Jury Instructions filed on September 16, 2025

The parties filed Joint Proposed Jury Instructions on September 16, 2025. *See* Dkt. No. 175. The following jury instructions from that proposed set remain disputed:

**1. Instruction No. 16: Transcript of Recording in Foreign Language**

Government's position: The government will seek to admit at least two English transcripts of recordings in Mandarin Chinese, including a video of the defendant practicing his Miracle Plus presentation (Exhibits 1004S [video] and 1004 [translation]), and the transcript for a video in which the defendant demonstrates Google technology and represents that technology as belonging to his technology startup, Zhisuan (the "Zhisuan video," exhibits 1175S [video] and 1175 [translation at AML-003182]). The Court has granted the government's Motion *in Limine* No. 2 to admit the Zhisuan video. *See* Dkt. No. 205 at 2-3.

The government has not received a competing version of the English-language transcripts for any Mandarin Chinese recording. If there are disputed translations, the government anticipates a meet-and-confer process involving each party's Mandarin language expert to agree on the accuracy of the English-language transcript prior to trial. Thus, the Court should use Ninth Circuit Model Criminal Jury Instruction 2.8. *See* Dkt. 175 at 22.

Defendant's position: Mr. Ding is not aware of any translations of recordings in a foreign language that the government intends to use at trial. To the extent the government will be using translations of recordings in a foreign language, Mr. Ding reserves any and all objections and anticipates disputing to the translation or translations offered by the government. In such instance,

the jury instruction proposed by Mr. Ding (*see* Dkt. No. 175 at 23), and not the instruction proposed by the government (*see id.* at 22) would be appropriate, as the Ninth Circuit Model Criminal Jury Instruction 2.8 comments confirm. *See* Ninth Cir. Model Crim. J. Inst. 2.8 (Mar. 2025), Comment, at p. 29 (such instruction is appropriate "where parties are unable to stipulate to a transcript.").

### 2. Instruction No. 17: Argument of Counsel

Government's position: This instruction is not necessary, duplicative, and cumulative in light of Stipulated Instruction No. 24.

Defendant's position: Stipulated Instruction No. 24 – What is Not Evidence, does advise the jury that "Questions, statements, objections, and arguments by the lawyers are not evidence," but proposed instruction No. 17 specifically reminds the jury ahead of closing arguments that statements of attorneys are not evidence. This instruction has been included in other final jury instructions, such as the final closing instructions in the similarly-charged case *United States v. Lee*, No. CR 06-0424 JW, Dkt. No. 298 (Second Revised Closing Instructions), at pp. 17–18 (N.D. Cal. Nov. 13, 2009).

### 3. Instruction No. 32: Separate Consideration of Multiple Counts – Single Defendant

Government's position: The defendant's additional language is unnecessary and confusing. It gives the appearance of directing the jury's verdict in the defendant's favor by focusing unnecessarily on the economic espionage charges, when the Court will have already instructed the jury that it must find each element of each count beyond a reasonable doubt. *See United States v. Hayward*, 420 F.2d 142, 144 (D.C. Cir. 1969) (overturning conviction where judge directed the verdict by taking "from the jury an essential element of its function").

Defendant's position: The jury instruction as written in the model instructions is misleading as written. Because theft of trade secrets and economic espionage charges have overlapping elements, it is possible that a determination of not guilty on certain elements of theft of trade secrets does control, and necessitate, a verdict of not guilty on economic espionage. Defendant's proposed instruction seeks to clarify that.

//

**4.   Instruction No. 40: Trade Secret – Defined**

<u>Government's position</u>:  The government proposes using the Ninth Circuit Model Criminal Jury Instructions that track the language of the statute.  The defendant's proposed additions to the compilation language do not track the statute and suggest that the trade secret owner must store or combine compilation trade secrets in a particular way or place.  For the reasons stated in the government's opposition to the defendant's Motion *in Limine* No. 12, that is not an accurate reflection of the law.  Additionally, the defendant's proposed language stating that individuals can develop technology "independently" through "proper means" is vague and unnecessary.  The government's proposed instruction makes clear that the "personal skills, talents, or abilities that an employee develops at his place of employment are not trade secrets."  This is an accurate statement of the law and nothing more is required.

<u>Defendant's position</u>:  Ownership of the alleged trade secrets at issue is in dispute. Defendant contends that each of the 105 trade secret compilations that the government has identified is not entitled to protection because they are trade secrets created by the government, not Google, through the government's compilation of documents allegedly taken by Mr. Ding.  Assemblage of a trade secret compilation must be the trade secret owner's creation. *See, e.g.*, 18 U.S.C. § 1839(4) (defining ownership of a trade secret); *VFD Consulting, Inc. v. 21st Servs.*, 425 F. Supp. 2d 1037, 1048 (N.D. Cal. 2006) (granting summary judgment for defendant where plaintiff failed to prove her ownership of or the existence of the trade secret).  Here, however, the record demonstrates and the government does not dispute  that the government constructed its compilations from a random assortment of documents selected for investigative purposes. Google never maintained or treated these materials as a unified collection, nor did it create or curate the compilations in the form presented by the government. To the extent the government insists on maintaining these alleged trade secrets at trial in their current form, the jury instructions should make clear that the trade secret information must be the trade secret owner's, and not material created by the government after the fact.  Moreover, defendant believes it should be made clear to the jury what does not fall under the definition of a "trade secret," and proposes the language cited in the Comment to Ninth Circuit Model Criminal Jury Instruction 23.16 to that effect.

Defendant proposes additional jury instructions regarding "compilation" trade secrets, detailed below as Proposed Instruction Nos. 40A and 40B.

### 5. Instruction No. 43: Theft of Trade Secrets

Government's position: Given the unanimity instruction in Stipulated Instruction No. 50, it is unnecessary to repeat the unanimity instruction within the Theft of Trade Secret instruction. Regarding the defendant's modification of the Fourth element, the government does not need to prove that the defendant both knew and intended that the offense would injure any owner of the trade secret, rather it must prove that the defendant knew or intended that it would injure any owner of the trade secret. 18 U.S.C. § 1832(a). The government's proposed instruction tracks the language of the statute and the Ninth Circuit Model Jury Instructions.

Defendant's position: Defendant proposes adding clarification for the jury that there must be unanimous agreement on what constitutes a trade secret. As a trade secret can include "compilations" of information, the jury must agree on what combination or compilation of information constitutes a trade secret.

### 6. Instruction No. 45: Economic Espionage

Government's position: The government proposes adding a definition of the type of "benefit" that the jury must find the defendant knew or intended to confer on a foreign government. This definition accurately explains the law and will assist the jury to distinguish the benefit requirements of § 1832, which requires intent to confer an economic benefit, from § 1831, which has a broader definition of benefit. *See* Dkt. 105 at 1-2 (*citing* H.R. Rep. 104-788 at 11 (1996)); *see also United States v. Zheng*, 113 F.4th 280, 295, 297 (2d Cir. 2024) (holding that "the benefit that the defendant intended to confer on the foreign instrumentality need not have been an economic benefit; a strategic, tactical, or reputational benefit would also suffice. Intent to benefit oneself is not mutually exclusive of intent to benefit another.").

Defendant's position: Defendant does not agree to the government's inclusion of the definition of "benefit," as it is confusing and argumentative, nor is consistent with the government's theory of the case and the evidence in this case – there is no allegation or evidence to support a jury

finding that Mr. Ding intended that his alleged actions were for the "strategic, tactical, or reputational" benefit of China.

### 7. Instruction No. 46: Knowingly – Defined

Government's position:  The government proposes using the definition of "knowingly" as set out in the Ninth Circuit Model Criminal Jury Instructions No. 4.8.  Contrary to the suggestion in defendant's proposed instruction, the government is not required to prove that defendant knew that the trade secret in question met the statutory definition of a trade secret.  *See United States v. Krumrei*, 258 F.3d 535, 539 (6th Cir. 2001) (holding that "defendant need not have been aware of the particular security measures taken by [the trade secret owner].  Regardless of his knowledge of those specific measures, defendant knew that the information was proprietary."); *United States v. Roberts*, 2009 WL 5449224, at *5 (E.D. Tenn. Nov. 17, 2009) (holding that "a defendant must know that the information he or she seeks to steal is proprietary, meaning belonging to someone else who has an exclusive right to it, but does not have to know that it meets the statutory definition of a trade secret") (quoting H.R. Rep. No. 788, 104th Cong., 2d Sess., at 12), *report and recommendation adopted by* 2010 WL 56085 (E.D. Tenn. Jan. 5, 2010), *aff'd in pertinent part*, *United States v. Howley*, 707 F.3d 575 (6th Cir. 2013); *United States v. Genovese*, 409 F. Supp. 2d 253, 258 (S.D.N.Y. 2005) (concluding that "one can infer that Genovese knew not only that the source code was proprietary, but that any protective measures by Microsoft had been circumvented").

The recent Sixth Circuit opinion, *United States v. You*, 74 F.4th 378, 393-95 (6th Cir. 2023), which specifically analyzed this issue, is instructive.  There, like Ding, the defendant argued that the Economic Espionage Act (EEA) required the government to prove that the defendant knew the stolen files were trade secrets.  The Sixth Circuit disagreed, holding that "[k]nowing that the stolen information is proprietary is enough . . . Knowing the facts that technically make the information a trade secret, as the district court put it, "puts a higher burden on the government than the law requires." *Id.* at 394-95.  As the court explained:

> Reading the word "knowingly" to modify each definitional element of "trade secret" would do little, then, to "advance the purpose of scienter," [] by "separat[ing] those who understand the wrongful nature of their act from those who do not."  A defendant who knowingly takes, without permission, confidential property that

> belongs to someone else, knowing that her act will injure the owner or benefit a foreign government, cannot reasonably claim that she acted innocently. It is true . . . that she cannot be convicted under §§ 1831 and 1832 unless the information at issue is in fact a trade secret. But the statutes' overall structure assures us that we do not risk criminalizing otherwise lawful conduct by declining to extend the requirement of knowledge to each element of § 1839(3).

*Id.* at 395 (cleaned up). Finally, the Sixth Circuit stated that the defendant's proffered instruction clashed with Congress' intent in enacting the EEA. "It would not have made sense for Congress to criminalize economic espionage and trade-secret theft but exempt those defendants who know that they have taken proprietary information without permission yet lack knowledge of the legal definition of a trade secret or whether the information happens to meet each element of that definition." *Id.*

As *You* explained, the government's proposed instruction is consistent with the legislative history for the EEA, which provides that the government must only prove that the defendant "knew or should have known," the information was proprietary:

> It is not necessary that the government prove that the defendant knew his or her actions were illegal, rather the government must prove that the defendant's actions were not authorized by the nature of his or her relationship to the owner of the property and that the defendant *knew or should have known* that fact.

H.R. Rep. No. 104-788, at 12 (1996), *reprinted in* 1996 U.S.C.C.A.N. 4021, 4030-31 (emphasis added); 142 Cong. Rec. 27,117 (1996) (government must show the defendant was "aware or substantially certain" that it was misappropriating a trade secret).

<u>Defendant's position</u>: Defendant proposes including specific instructions as to "knowingly" in the context of the charges in this case, which are theft of trade secrets and economic espionage. The instruction proposed tracks language in the Economic Espionage Act (*see* 18 U.S.C. § 1831), and final jury instructions used in similarly-charged cases including *United States v. Chen*, 5:17-cr-00603-BLF, Dkt. No. 372 (Jury Instructions) at pp. 47–48 (N.D. Cal. Aug. 18, 2021); *United States v. Liew*, 856 F.3d 585, 597 (9th Cir. 2017); and *United States v. Lee*, CR 06-0424 JW, 2010 WL 8696087, at *3, 7–8 (N.D. Cal. May 21, 2010).

### B. Additional Proposed Jury Instructions

#### 1. Instruction No. 40A: Compilation Trade Secret

Defendant's position: Mr. Ding proposes this additional jury instruction, attached hereto as **Attachment A**. Defendant contends that certain purported trade secret compilations identified by the government are not entitled to protection because they never existed at Google in the form now asserted. Rather, the government created these compilations by assembling documents allegedly taken by Mr. Ding into collections that Google itself neither maintained nor treated as unified sets. For the reasons stated in Mr. Ding's motion *in limine* no. 12, collections of information assembled by the government, that did not exist as a compilation at Google, cannot be entitled to trade secret protection. Information may not be reconstructed, reorganized, or reassembled after the fact to create a compilation that the owner did not actually possess during the period prior to the charged conduct.

*Barrett Business Services, Inc. v Colmenero* is instructive. 2025 WL 2048985, at *2 (9th Cir. July 22, 2025). There, the Ninth Circuit made clear that in a compilation-trade-secret case, the proper inquiry is whether the owner took reasonable steps to maintain the secrecy of the compilation *as a whole*, not whether each individual component was separately protected. *Id.* The government cannot satisfy this requirement here. The alleged compilation-trade-secrets were never maintained by Google as compilations at all; rather, they were assembled into purported "wholes" only after the government indicted Mr. Ding. That post-hoc construction cannot retroactively establish the reasonable secrecy measures that *Barrett* requires.

*Hanks v. Anderson*, Case No. 2:19-cv-00999, 2025 WL 3251161, at *6 (D. Utah Nov. 21, 2025), and *VFD Consulting, Inc. v. 21st Servs.,* 425 F. Supp. 2d 1037, 1048 (N.D. Cal. 2008), reinforce a fundamental principle of trade-secret law: the plaintiff must prove that the asserted trade secret actually existed under the control of the alleged owner. In *Hanks* and *VFD Consulting*, the court found that the plaintiff failed to meet this burden because no such trade secret had been shown to exist. The government faces the same defect here. It will be unable to present testimony that any "compilation" trade secrets existed under Google's control, because Google never created or maintained the compilations the government now claims were misappropriated. Instead, those

compilations were assembled by the government—after indicting Mr. Ding—solely for purposes of this prosecution, and cannot retroactively establish the existence of a trade secret.

<u>Government's position</u>:  The government proposes using the Ninth Circuit Model Criminal Jury Instructions that track the language of the statute.  The defendant's proposed additions to the compilation language do not track the statute and suggest that the trade secret owner must store or combine compilation trade secrets in a particular way or place.  For the reasons stated in the government's opposition to the defendant's Motion *in Limine* No. 12, that is not an accurate reflection of the law.

Moreover, none of the authority cited by the defendant supports his proposed instruction.  In fact, *Barrett Bus. Servs., Inc. v. Colmenero*, No. 24-4474, 2025 WL 2048985, at *2 (9th Cir. July 22, 2025), supports the government's opposition. In *Barrett*, the Ninth Circuit held that in determining if reasonable steps were taken to protect a compilation trade secret, the relevant query is whether steps were taken to protect the entirety of the compilation, not whether the trade secret owner "maintained the secrecy of the individual pieces of information that were used to create the compilation." *Id.*  In other words, the fact that individual information in a compilation trade secret is public is not determinative on trade secret status.  The Ninth Circuit also cited the Restatement (Third) of Unfair Competition § 39 cmt. f, which correctly states that compilation trade secrets can include public information: "[t]he fact that some or all of the components of the trade secret are well-known does not preclude protection for a secret combination, compilation, or integration of the individual elements." *Id.*

*Hanks v. Anderson*, No. 2:19-cv-00999, 2025 WL 3251161, at *8-9 (D. Utah Nov. 21, 2025), is plainly inapposite.  The court held that the plaintiff did not prove the existence of a trade secret at trial for factual reasons.  For example, the plaintiff did not produce the confidential client information that comprised the trade secret and did not provide a witness to admit the trade secret evidence. *Id.*  Analyzing Minnesota law, *VFD Consulting, Inc. v. 21st Servs.*, 425 F. Supp. 2d 1037, 1048 (N.D. Cal. 2008), stands for the simple proposition that a civil trade secret plaintiff must establish the existence of a trade secret.

//

### 2. Instruction No. 40B: Compilation Trade Secret – Value from the Compilation

Defendant's position: Mr. Ding proposes this additional jury instruction, attached hereto as Attachment B. Information alleged to be trade secret, whether compilations or not, must derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. 18 U.S.C. § 1839(3)(B). It may not simply consist of an aggregation of information from various sources that lacks independent economic value. *See United States v. Nosal*, 844 F.3d 1024, 1042-43 (9th Cir. 2016) (recognizing that a compilation must add value beyond "unwashed, public-domain lists" containing public information); *FMC Techs. v. Murphy*, 679 S.W.3d 788, 813 (Tex. Ct. App. 2023) (concluding that the instruction given by the trial court that the compilation trade secret "must add value to the product, beyond simply the sum of its component parts" was a legally correct interpretation of Texas version of the Uniform Trade Secrets Act, citing *Penalty Kick Mgmt. Ltd. v. Coca-Cola Co.*, 318 F.3d 1284, 1291 (11th Cir. 2003) (applying Georgia version of UTSA in observing "even if all of the information is publicly available, a unique combination of that information, *which adds value to the information*, also may qualify as a trade secret" (emphasis added)), and *Catalyst & Chem. Servs. Inc. v. Global Ground Support*, 350 F. Supp. 2d 1, 10 (D.D.C. 2004) (applying District of Columbia version of UTSA in concluding that where each parameter was publicly known, '*the value of the specific combination of parameters must exceed the mere sum of the value of each individual parameter*'" (emphasis added)); *see also United States v. Chung*, 659 F.3d 815 (9th Cir. 2011) (holding that the definition of trade secret in the EEA is derived from the UTSA).

Government's position: The government proposes using the Ninth Circuit Model Criminal Jury Instructions that track the language of the statute. The defendant's proposed additions to the compilation language do not track the statute and incorrectly suggest that compilation trade secrets cannot include an amalgam of public (*i.e.*, information that lacks independent economic value) and proprietary source information. For the reasons stated in the government's opposition to the defendant's Motion *in Limine* No. 12, that is not an accurate reflection of the law.

The government's proposed instruction is also consistent with *United States v. Nosal*, 844 F.3d 1024, 1041-44 (9th Cir. 2016), the sole case cited by Ding. There, the Ninth Circuit upheld EEA convictions because the source lists in question were "classic examples of a trade secret that derives from an amalgam of public and proprietary source data." *Id.*

Respectfully submitted,

Dated: December 10, 2025

CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

By: _____/s/_____
CASEY BOOME (NYBN 5101845)
*casey.boome@usdoj.gov*
MOLLY K. PRIEDEMAN (CABN 302096)
*molly.priedeman@usdoj.gov*
ROLAND CHANG (CABN 271511)
*roland.chang@usdoj.gov*

Attorneys for United States of America

Dated: December 10, 2025

By: _____/s/_____
GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
DARRYL M. WOO (SBN 100513)
*DWoo@goodwinlaw.com*
RACHEL M. WALSH (SBN 250568)
*RWalsh@goodwinlaw.com*
JESSICA HUANG FUZELLIER (SBN 315208)
*JHFuzellier@goodwinlaw.com*
FARZAD FEYZI (SBN 343538)
*FFeyzi@goodwinlaw.com*
DAVID RAPP-KIRSHNER (SBN 344494)
*DRappKirshner@goodwinlaw.com*
NIRAV BHARDWAJ (SBN 350829)
*NBhardwaj@goodwinlaw.com*
NICHOLAS C. WILEY (SBN 351161)
*NWiley@goodwinlaw.com*
COLETTE A. LOWRY (SBN 359889)
*CLowry@goodwinlaw.com*
**GOODWIN PROCTER LLP**

LORA J. KRSULICH (SBN 315399)
*LKrsulich@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S. Figueroa Street, Suite 4100
Los Angeles, CA 90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

Attorneys for Defendant Linwei Ding

**ATTORNEY ATTESTATION**

I hereby attest, pursuant to Local Rule 5-1(i)(3), that I obtained the concurrence in the filing of this document from the signatories indicated by the conformed signature (/s/).

_____ /s/

# ATTACHMENT A

INSTRUCTION NO. 40A

COMPILATION TRADE SECRET – OWNERSHIP

Offered by Defendant Linwei Ding

For an alleged trade secret to qualify as a compilation trade secret, it must have been in existence and in the possession of the trade secret owner as that particular compilation at the time of the conduct charged. Information may not be reconstructed, reorganized, or reassembled after the fact to create a compilation that the owner did not actually possess during the period prior to the charged conduct.

**Source:** *Barrett Bus. Servs., Inc. v. Colmenero*, No. 24-4474, 2025 WL 2048985, at *2 (9th Cir. July 22, 2025) ("When dealing with compilations that are alleged to be trade secrets, we ask whether the owner took reasonable steps to maintain the secrecy *of the compilation as a whole, not whether it maintained the secrecy of the individual pieces of information that were used to create the compilation*.") (emphasis added); *see also* 18 U.S.C. § 1839(4) (defining ownership of a trade secret); *Hanks v. Anderson*, Case No. 2:19-cv-00999, 2025 WL 3251161, at *6 (D. Utah Nov. 21, 2025) (entering judgment for defendant because plaintiff failed to prove the existence of a compilation trade secret controlled by the plaintiff); *VFD Consulting, Inc. v. 21st Servs.*, 425 F. Supp. 2d 1037, 1048 (N.D. Cal. 2008) ("Without a proven trade secret there can be no action for misappropriation, even if defendants' actions were wrongful").

**Defendant's Argument:** Defendant contends that certain purported trade secret compilations identified by the government are not entitled to protection because they never existed at Google in the form now asserted. Rather, the government created these compilations by assembling documents allegedly taken by Mr. Ding into collections that Google itself neither maintained nor treated as unified sets. Information may not be reconstructed, reorganized, or reassembled after the fact to create a compilation that the owner did not actually possess during the period prior to the charged conduct.

*Barrett Business Services, Inc. v Colmenero* is instructive. 2025 WL 2048985, at *2 (9th Cir. July 22, 2025). There, the Ninth Circuit made clear that in a compilation-trade-secret case, the proper inquiry is whether the owner took reasonable steps to maintain the secrecy of the compilation *as a whole*, not whether each individual component was separately protected. *Id.* The government cannot satisfy this requirement here. The alleged compilation-trade-secrets were never maintained by Google as compilations at all; rather, they were assembled into purported "wholes" only after the government indicted Mr. Ding. That post-hoc construction cannot retroactively establish the reasonable secrecy measures that *Barrett* requires.

*Hanks v. Anderson*, Case No. 2:19-cv-00999, 2025 WL 3251161, at *6 (D. Utah Nov. 21, 2025), and *VFD Consulting, Inc. v. 21st Servs.,* 425 F. Supp. 2d 1037, 1048 (N.D. Cal. 2008), reinforce a fundamental principle of trade-secret law: the plaintiff must prove that the asserted trade secret actually existed under the control of the alleged owner. In *Hanks* and *VF Consulting*, the court found that the plaintiff failed to meet this burden because no such trade secret had been shown to exist. The government faces the same defect here. It will be unable to present testimony that any "compilation" trade secrets existed under Google's control, because Google never created or maintained the compilations the government now claims were misappropriated. Instead, those compilations were assembled by the government—after indicting Mr. Ding—solely for purposes of this prosecution, and cannot retroactively establish the existence of a trade secret.

**Government's Argument:** The government proposes using the Ninth Circuit Model Criminal Jury Instructions that track the language of the statute. The defendant's proposed additions to the compilation language do not track the statute and suggest that the trade secret owner must store or combine compilation trade secrets in a particular way or place. For the reasons stated in the government's opposition to the defendant's Motion *in Limine* No. 12, that is not an accurate reflection of the law.

Moreover, none of the authority cited by the defendant supports his proposed instruction. In fact, *Barrett Bus. Servs., Inc. v. Colmenero*, No. 24-4474, 2025 WL 2048985, at *2 (9th Cir. July 22, 2025), supports the government's opposition. In *Barrett*, the Ninth Circuit held that in determining if reasonable steps were taken to protect a compilation trade secret, the relevant query is whether steps were taken to protect the entirety of the compilation, not whether the trade secret owner "maintained the secrecy of the individual pieces of information that were used to create the compilation." *Id.* In other words, the fact that individual information in a compilation trade secret is public is not determinative on trade secret status. The Ninth Circuit also cited the Restatement (Third) of Unfair Competition § 39 cmt. f, which correctly states that compilation trade secrets can include public information: "[t]he fact that some or all of the components of the trade secret are well-known does not preclude protection for a secret combination, compilation, or integration of the individual elements." *Id.*

*Hanks v. Anderson*, No. 2:19-cv-00999, 2025 WL 3251161, at *8-9 (D. Utah Nov. 21, 2025), is plainly inapposite. The court held that the plaintiff did not prove the existence of a trade secret at trial for factual reasons. For example, the plaintiff did not produce the confidential client information that comprised the trade secret and did not provide a witness to admit the trade secret evidence. *Id.* Analyzing Minnesota law, *VFD Consulting, Inc. v. 21st Servs.,* 425 F. Supp. 2d 1037, 1048 (N.D. Cal. 2008), stands for the simple proposition that a civil trade secret plaintiff must establish the existence of a trade secret.

**ATTACHMENT B**

INSTRUCTION NO. 40B

COMPILATION TRADE SECRET – VALUE FROM THE COMPILATION

Offered by Defendant Linwei Ding

For an alleged trade secret to qualify as a compilation trade secret, it must derive economic value from the compilation and may not simply consist of an aggregation of information from various sources that lacks independent economic value.

**Source:** *See* 18 U.S.C. § 1839(3)(B) (defining "trade secret" as information that "derives independent economic value, actual or potential, from not being generally"); *see also United States v. Nosal*, 844 F.3d 1024, 1042-43 (9th Cir. 2016) (recognizing that a compilation must add value beyond "unwashed, public-domain lists" containing public information); *FMC Techs. v. Murphy*, 679 S.W.3d 788, 813 (Tex. Ct. App. 2023) (concluding that the instruction given by the trial court that the compilation trade secret "must add value to the product, beyond simply the sum of its component parts" was a legally correct interpretation of Texas version of the Uniform Trade Secrets Act, citing *Penalty Kick Mgmt. Ltd. v. Coca-Cola Co.*, 318 F.3d 1284, 1291 (11th Cir. 2003) (applying Georgia version of UTSA in observing "even if all of the information is publicly available, a unique combination of that information, *which adds value to the information*, also may qualify as a trade secret" (emphasis added)), and *Catalyst & Chem. Servs. Inc. v. Global Ground Support*, 350 F. Supp. 2d 1, 10 (D.D.C. 2004) (applying District of Columbia version of UTSA in concluding that where each parameter was publicly known, '*the value of the specific combination of parameters must exceed the mere sum of the value of each individual parameter*'" (emphasis added)); *see also United States v. Chung*, 659 F.3d 815 (9th Cir. 2011) (holding that the definition of trade secret in the EEA is derived from the UTSA).

**Defendant's Argument:** Information alleged to be trade secret, whether compilations or not, must derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. 18 U.S.C. § 1839(3)(B). It may not simply consist of an aggregation of information from various sources that lacks independent economic value.

**Government's Argument:** The government proposes using the Ninth Circuit Model Criminal Jury Instructions that track the language of the statute. The defendant's proposed additions to the compilation language do not track the statute and incorrectly suggest that compilation trade secrets cannot include an amalgam of public (*i.e.*, information that lacks independent economic value) and proprietary source information. For the reasons stated in the government's opposition to the defendant's Motion *in Limine* No. 12, that is not an accurate reflection of the law.

The government's proposed instruction is also consistent with *United States v. Nosal*, 844 F.3d 1024, 1041-44 (9th Cir. 2016), cited by Ding. There, the Ninth Circuit upheld EEA convictions because the source lists in question were "classic examples of a trade secret that derives from an amalgam of public and proprietary source data." *Id.*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **December 10, 2025**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **December 10, 2025**.

_____ /s/