# EXHIBIT 3

**Pages 1 - 102**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,               )
                                   )
   VS.                             )    **NO. 3:24-CR-00141-VC**
                                   )
LINWEI DING, a.k.a. LEON DING,     )
                                   )
          Defendant.               )
_____    )

                         San Francisco, California
                         Tuesday, January 6, 2026

          **TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:
                    CRAIG H. MISSAKIAN
                    UNITED STATES ATTORNEY
                    450 Golden Gate Avenue, Box 36055
                    San Francisco, California 94102-3495
               BY:  **CASEY E. BOOME, ASSISTANT U.S. ATTORNEY**
                    **ROLAND CHANG, ASSISTANT U.S. ATTORNEY**

                    CRAIG H. MISSAKIAN
                    UNITED STATES ATTORNEY
                    1301 Clay Street, Suite 340S
                    Oakland, California 94612-5217
               BY:  **MOLLY K. PRIEDEMAN**
                    **ASSISTANT U.S. ATTORNEY**


          **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**



REPORTED BY:  Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
              CSR No. 7445, Official United States Reporter

**APPEARANCES**:  (CONTINUED)

For Defendant:

GOODWIN PROCTER LLP
525 Market Street
San Francisco, California 94105
BY:  **DARRYL M. WOO, ATTORNEY AT LAW**
**DAVID P. RAPP-KIRSHNER, ATTORNEY AT LAW**
**RACHEL M. WALSH, ATTORNEY AT LAW**
**COLETTE A. LOWRY, ATTORNEY AT LAW**

GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, California 94063
BY:  **GRANT P. FONDO, ATTORNEY AT LAW**

GOODWIN PROCTER LLP
601 South Figueroa Street, Suite 4100
Los Angeles, California 90017
BY:  **LORA J. KRSULICH, ATTORNEY AT LAW**

that we had flagged as potential hardships for your --

THE COURT:  Why don't you start with the objections that you have, and then we can go to people who you want to add.

MR. CHANG:  Okay.  Thank you.

So the first one was Juror Number 15.  He mentioned that he had a history of panic attacks, but he stated in the questionnaire that those were largely in the past and under control.

Our suggestion was that we should --

THE COURT:  Let me -- just one second.

MR. CHANG:  Yes.

THE COURT:  So I just pulled up the questionnaire. Let me look at it.

[As read]:

". . . history of panic attacks.  They are mostly under control, but stressful situations can trigger anxiety and make it difficult to concentrate for long periods."

Okay.

MR. CHANG:  So our suggestion was we should at least have him come in because it seemed like that had been largely in the past and --

THE COURT:  I think that -- I think that probably makes sense.

Mr. Fondo, what do you think?

**MR. FONDO:** Your Honor, we would -- we disagree. But I would also note that it's not clear that this individual writes or speaks English fluently as well.

**THE COURT:** Really? Are you sure we're looking at the same one?

**MR. FONDO:** I believe so. Number 15.

**THE COURT:** Yeah. I don't see any -- oh.

[As read]:

"English is not my first language, and complex legal discussions are difficult for me."

Oh, yeah, I forgot about that. I mean, that's -- I remember now that what I was thinking was this is no ordinary trial; right? I mean, talk about complex legal discussions. I mean, this whole thing is going to be a really complex discussion. And if we have a person saying that "Complex legal discussions are difficult for me," this doesn't -- maybe there is some sort of trial that they could do, but this doesn't seem like the right one for them.

**MR. CHANG:** We also saw that as well, Your Honor. I will note that he's a software engineering manager and has been for the last six years and has a master's in computer science, and so I think it's at least worth calling him in.

Of course, if he does present with those language issues, we would excuse him for hardship or for cause on that

basis; but we think that on the basis of the questionnaire, he should at least come in.

THE COURT:  Okay.  We'll bring him in and include him in the pool.

So we'll not excuse Juror Number -- sorry.  Which?

MR. CHANG:  Juror Number 15, Your Honor.

THE COURT:  We'll not excuse Juror Number 15 for hardship at this time, on the papers at least.

MR. CHANG:  Thank you, Your Honor.

THE COURT:  Okay.  Who else?

MR. CHANG:  Juror Number 24.  This is -- she's ten weeks pregnant and flagged that she had nausea and fatigue.

THE COURT:  Right.

MR. CHANG:  We think we should at least have her come in.  She did answer "yes" to Question Number 10, which is the question about whether she'd be able to serve without hardship; and so on that basis, we think we should at least call her in and see if she's amenable to serving.

THE COURT:  What about the ADHD?  Does that bother you?

MR. CHANG:  That was not a concern unless during voir dire, of course, she provides further clarity on that issue, Your Honor.

THE COURT:  Okay.

Mr. Fondo?

MR. FONDO:  We agree.

THE COURT:  Okay.  Sounds good.  We will bring her in.  Remind me the juror number again?  24?

MR. CHANG:  24, Your Honor.

THE COURT:  Okay.  We will not excuse 24 for hardship on the papers.

Who's next?

MR. CHANG:  Juror Number 95, recent recovery from a bone marrow transplant.

THE COURT:  Sorry.  Hold on.  Let me -- let me get there.

95.  Okay.  You're going to say that there are no prolonged periods of physical exertion, so -- so why are we excusing them?

MR. CHANG:  Yes, Your Honor.  And also, he flagged that he was going to his sister's bachelorette.  So presumably, if he can attend that, he can sit here for a couple of weeks for jury service.  At least worth having him come in.  Of course, if the symptoms are more serious than described in the questionnaire, we would excuse him for hardship.

THE COURT:  Well, but what about the travel plans?  I mean, why shouldn't we -- I don't know -- when is January 22nd?  That's, like, a Thursday, I think.

MR. CHANG:  Yeah, it's a Thursday, end of the second week.  Remember, the 23rd is a dark day tentatively, and so

that actually fits with the three-day weekend.

So we actually thought that he may be able to serve, depending on when he has to drive to the bachelorette party. It's not a flight.  It's a driving-distance party.

**THE COURT:**  Okay.  Yeah, I mean, that's fine.  It might be that they would be entitled to a postponement, but I think it's probably fine to bring them in and talk more about that with them.

Is that okay with you?

**MR. FONDO:**  Your Honor, no, actually.  So I think postponement makes sense.  We're talking about someone that obviously had a pretty significant procedure.  I don't -- I don't know what's going to happen at the bachelorette, whether he's going to be sitting on the couch or what.  But it's prepaid.

But most importantly, Your Honor, I think there's just a real risk.  It's a serious procedure.  And there's obviously other things going on beyond just the transplant.  So we would recommend postponing it and have him serve another time.

**THE COURT:**  Okay.  Hold on a second.  Let me look at it a little more closely.

(Pause in proceedings.)

**THE COURT:**  I'm laughing at the answer to Question Number 26.

All right.  I think we can -- I think we can bring

hardship requests, but you-all are being more sympathetic -- or less sympathetic than I am, I guess.

Go ahead.  Sorry.

**MR. FONDO:**  No, no.  No problem.

So as to Number 84, this is an individual who's retired.  Their spouse is retired.  They apparently have a mother who is -- needs a fair amount of attention on two days a week.

**THE COURT:**  Oh, yeah.

**MR. FONDO:**  But there's no indication that the spouse could not cover for those two days a week.  And so we just think they should come in and we can learn more about what the actual situation is.

**MR. CHANG:**  We agree with the Court's ruling on this. He has a 99-year-old mother, and Monday and Tuesdays are his responsibility to feed, cleanse, and keep her company.  We think he should be excused for hardship.

**MR. FONDO:**  I would also note, in addition to the wife being at home, it appears that one of the -- oh, actually, I take that back.  So his wife is also retired and at home.  So there's clearly somebody there, a responsible adult who could cover those six hours for those two days.

**THE COURT:**  The other thing is that those -- we had those -- indicated that we would have tentative dark days of the 23rd and the 30th.  Is that what I said?

**MR. CHANG:**  That's right, Your Honor.

**THE COURT:**  I think that's confirmed now.  So I think those days will be dark.

And maybe we can tell this person that those days will be dark and they can switch days with their spouse or whoever else is responsible for caring for his mother.

So let's bring this person in.

**MR. FONDO:**  Thank you, Your Honor.

**MR. CHANG:**  I would flag a cause before we move on, then --

**THE COURT:**  Yeah.

**MR. CHANG:**  -- as well, Your Honor.

This person has some very strong opinions in terms of Question 40, as well as Question 44.

(Pause in proceedings.)

**THE COURT:**  I don't think those are a basis for cause.

**MR. CHANG:**  Understood, Your Honor.

**THE COURT:**  Now, he's -- the one answer is, Question 44 [as read]:

"Since this is a case against a Chinese national, I do not think it is appropriate for me to participate in this case."

I mean, that's not correct; right?  It is not inappropriate for this person to participate in this case because the defendant is a Chinese national.  It may be that

they come in and express such strong views and articulate that they can't be fair.  But I don't -- I just don't think that that -- I don't think that these responses come close to a basis for excusing the person for cause on the papers alone.

MR. FONDO:  Thank you, Your Honor.

THE COURT:  So that is 86?  Am I right?

MR. FONDO:  84, I believe.

THE COURT:  84.  Okay.  So we'll bring 84 in.

All right.

MR. FONDO:  The next one is 98, Your Honor.

So this is an individual who expressed that they have severe ADHD --

THE COURT:  Yes.

MR. FONDO:  -- which makes it hard to focus.

So I think it's just a question of the degree.  And we've obviously had people with this issue on juries before, and so I just -- it's hard to assess is that something that really is going to preclude this individual from being a juror.

THE COURT:  I hear you.  I mean, I guess my view is that if somebody has severe ADHD and says that it'll interfere with their jury service, unless we think they're lying about their ADHD, like, we shouldn't bring them in.  That's my view.

MR. FONDO:  I understand, Your Honor.

If I could just -- we've had situations like that in the past and where, through discussion, the person has gotten

from China or Chinese nationals.  Chinese are very clever, and given the chance, they always want to be on top."

THE COURT:  Yeah.  I don't necessarily know if that would be disqualifying.  It might be something to probe further.

But I guess I'm concerned enough about the language issue that I would excuse this person for cause.

Any other objections from the Government?

MR. CHANG:  Those are our only other objections to the cause excusals.

THE COURT:  Okay.  Any additional cause challenges?

MR. CHANG:  Yes.  Juror Number 45.

THE COURT:  All right.

MR. CHANG:  The responses to Questions 27, 28, and 29, which appear to be identical.

THE COURT:  Okay.  Anything else?

MR. CHANG:  That was the primary basis.

THE COURT:  Okay.  I don't think that those responses, on their own, are a basis for disqualifying somebody on the papers.

MR. CHANG:  All right.  Juror Number twenty- --

THE COURT:  When was this -- by the way, when was this case brought?  When was this case charged?

MR. CHANG:  It was -- the original date of indictment

that's a postponement; 59.

64, 65, 69.

73, and that's a postponement.

81, 83, 88.

91, 92, 93, 94, 97, 98.

100; 101, and that's a postponement; 102, postponement; 106, postponement.

And then, finally, 114.

Is that consistent with what you-all have now?

PJ, is that consistent with what you have?

(Discussion off the record between the law clerk and the Court.)

**THE COURT:**  The other thing we could do is, if you need more time to confirm, you could spend some time looking at it at a break and confirm after the break.

**MS. KRSULICH:**  Yeah, that makes sense.

**MR. CHANG:**  That makes sense, Your Honor.

**THE COURT:**  Okay.  So let me just identify the people we're going to call and the cause excusals.

So we're going to call Number 55, 89, and 96.

And the cause excusals are 2, 14, 82, 103, 105, and 107.

**MR. CHANG:**  Sorry, Your Honor.  Can you repeat the last few numbers?

**THE COURT:**  82, 103, 105, 107.

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:  Tuesday, January 27, 2026

_Ana Dub_

_____

Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
Official United States Reporter