# EXHIBIT 4

**Pages 1 - 272**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Vince Chhabria, Judge

UNITED STATES OF AMERICA,　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　)
　　　　　　　　　　　　　　　　　)
　　VS.　　　　　　　　　　　　　)　**NO. 3:24-CR-00141-VC**
　　　　　　　　　　　　　　　　　)
LINWEI DING, a.k.a. LEON DING, )
　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　)
_____)

San Francisco, California
Wednesday, January 7, 2026

**TRANSCRIPT OF VOIR DIRE PROCEEDINGS**

**APPEARANCES:**

For Plaintiff:

　　　　　　　　CRAIG H. MISSAKIAN
　　　　　　　　UNITED STATES ATTORNEY
　　　　　　　　450 Golden Gate Avenue, Box 36055
　　　　　　　　San Francisco, California 94102-3495
　　　BY:　**CASEY E. BOOME, ASSISTANT U.S. ATTORNEY**
　　　　　**ROLAND CHANG, ASSISTANT U.S. ATTORNEY**

　　　　　　　　CRAIG H. MISSAKIAN
　　　　　　　　UNITED STATES ATTORNEY
　　　　　　　　1301 Clay Street, Suite 340S
　　　　　　　　Oakland, California 94612-5217
　　　BY:　**MOLLY K. PRIEDEMAN**
　　　　　**ASSISTANT U.S. ATTORNEY**

　　**(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:　Ana Dub, RMR, RDR, CRR, CCRR, CRG, CCG
　　　　　　　　CSR No. 7445, Official United States Reporter

**APPEARANCES**:   (CONTINUED)

For Defendant:

GOODWIN PROCTER LLP
525 Market Street
San Francisco, California 94105
BY:   **DARRYL M. WOO, ATTORNEY AT LAW**
**DAVID P. RAPP-KIRSHNER, ATTORNEY AT LAW**
**RACHEL M. WALSH, ATTORNEY AT LAW**
**COLETTE A. LOWRY, ATTORNEY AT LAW**

GOODWIN PROCTER LLP
601 Marshall Street
Redwood City, California 94063
BY:   **GRANT P. FONDO, ATTORNEY AT LAW**
**FARZAD "FRED" FEYZI, ATTORNEY AT LAW**

GOODWIN PROCTER LLP
601 South Figueroa Street, Suite 4100
Los Angeles, California 90017
BY:   **LORA J. KRSULICH, ATTORNEY AT LAW**

Also Present:        **Andrea Valladao, Federal Bureau of**
**Investigation**
**Veronica Hernandez, Paralegal**
**John Jay, Trial Technician**

static is to allow me to speak with the lawyers over here at sidebar about all of your requests, and we don't want you to hear us.  So I apologize in advance for the static.  It should just take a couple of minutes, and then we'll be back to you.

Thank you.

(Discussion held at sidebar, not reported.)

**THE COURT:**  All right.  Give everyone a second to settle in.

Okay.  I'm going to read off the juror numbers who are being excused for what we refer to as hardship.  Please don't get up until I've finished reading off all of the numbers, but once I'm done, you all are free to go.

There are some of you that are not being excused for hardship.  And just to tell you a little bit about that, I mean, the discussion we had, I had with the lawyers was about whether this was, like, an inconvenience that is very unpleasant and difficult to deal with versus something that is really, really difficult or impossible to deal with.

And for some people, we didn't conclude that it rose to the level of hardship.  You will have an -- if you're not excused now, you'll have an opportunity to discuss it further with us later on.  But our preliminary conclusion was that it doesn't rise to the level of a hardship.

So the people who are excused are Juror Number 33, 63, 67, 77, 87, 89, and 111.  Thank you for coming in, and you-all

All right.  Well, maybe you will do so in private.  I will --
I'll mark you down.

All right.  Why don't we start with you in the --
closest to the aisle.  Yeah.  Thank you.

PROSPECTIVE JUROR TSERENDOLGOR:  Hi.  I'm Number 37.
My name is Dulamsuren Tserendolgor.  I'm currently in college,
studying industrial and systems engineering.  I live in
San Francisco.

Fun fact about me, I'm a bodybuilder.

THE COURT:  Okay.  Thank you for being the first to
share a fun fact.

What school do you go to?

PROSPECTIVE JUROR TSERENDOLGOR:  San Jose State.

THE COURT:  Thank you.

All right.  Next?

PROSPECTIVE JUROR DAQIQ:  My name is Fariha Daqiq, and
I'm Juror Number 39.  I live in Pleasant Hill, and right now
I'm not working.

THE COURT:  Okay.  And what -- have you had any jobs
in the past that might be interesting?

PROSPECTIVE JUROR DAQIQ:  Yeah.  I did work as
real estate agent and also as notary public, signing agent.

THE COURT:  Okay.

PROSPECTIVE JUROR DAQIQ:  And then I just retired.

THE COURT:  And I guess notary public, there's

**JURY VOIR DIRE**

probably less business for notary publics these days; right?

**PROSPECTIVE JUROR DAQIQ:**  Exactly.  After, you know, that COVID hit, my business just went down the drain, and --

**THE COURT:**  Yeah.

**PROSPECTIVE JUROR DAQIQ:**  -- I decided not to work anymore.

**THE COURT:**  Okay.  And you're speaking with an accent.

**PROSPECTIVE JUROR DAQIQ:**  Yes.

**THE COURT:**  But you seem to speak very good English.

**PROSPECTIVE JUROR DAQIQ:**  Thank you.

**THE COURT:**  You haven't had any trouble understanding anything that I've been saying here today?

**PROSPECTIVE JUROR DAQIQ:**  No.

**THE COURT:**  Okay.  Good.  Thank you.

**PROSPECTIVE JUROR DAQIQ:**  Oh, you're welcome.

**PROSPECTIVE JUROR McCARTHY:**  Number 42, David McCarthy.  I live in San Pablo.  I graduated from Maybeck High School, Berkeley.  I work for Ifshan Violins. I guess my official title under my pay stub would be repairs.

**THE COURT:**  Would be what?  Repairs?

**PROSPECTIVE JUROR McCARTHY:**  Repairs.

**THE COURT:**  Okay.  Thank you.

Maybeck High School.  We looked at that place for our son.  It seems like a wonderful high school.

**PROSPECTIVE JUROR McCARTHY:**  A bit expensive.

**MR. FONDO:** Certainly. Thank you, Your Honor.

**THE COURTROOM DEPUTY:** Court is in recess.

(Recess taken at 12:01 p.m.)

(Proceedings resumed at 12:10 p.m.)

(Proceedings were heard in the presence of the prospective jurors.)

**THE COURT:** Okay. Hi, everyone. Sorry. We had a little bit of extra work to do, so I'm sorry about the delay.

So the following jurors are excused. Please wait until I'm done rattling everybody off, and then we can -- and then you can go. You're free to go. Thank you for being here.

Juror Number 18, Juror Number 19, Juror Number 49, Juror Number 99, and Juror Number 113, you are excused. Thank you very much for being here and you're free to go.

(Prospective Jurors 18, 19, 49, 99, and 113 excused.)

**THE COURT:** Okay. So now, as I mentioned, I'm going to have a little bit of a conversation with you-all about the case and about serving as a juror, and then we'll take our lunch break, and then I'll turn it over -- when you come back from lunch, I'll turn it over to the lawyers and they'll have an opportunity to ask you some questions.

First, just a quick comment about the role of the juror and the role of the judge. So the role of the jury is to decide the facts, to decide what happened; right? So you're going to be hearing a bunch of evidence. You're going to be

**PROSPECTIVE JUROR GREACEN:**  Hi.  Chris Greacen, Juror Number 75.

Google was a client of my company's from 2017 to 2020.  Some amount of revenue came from Google, and that should be acknowledged.

**THE COURT:**  Yes, thank you for -- thank you for sharing that.

Do you believe that that -- the fact that Google was previously a client of your company would interfere with your ability to decide the facts fairly in the case?

**PROSPECTIVE JUROR GREACEN:**  No.

**THE COURT:**  Okay.  Thank you.

Okay.  Next row?  Or same row?  Come on up.

**PROSPECTIVE JUROR THAREJA:**  Juror 74.

Full disclosure, I hate big tech and --

**THE COURT:**  Sorry?

**PROSPECTIVE JUROR THAREJA:**  I'm not a fan of big tech and social media.  I'm not on any of those, and I refuse to.  I feel like they're off to in some way profit off advertising to all of us in each and every way.  And living in the Bay Area, that's front and center every day.  So that's my personal belief.

**THE COURT:**  Okay.  And thank you.  That is exactly the kind of thing that is helpful to hear.

Again, Google is not a party in the case.  You're not

THE COURT:  One more over here, it looks like.

PROSPECTIVE JUROR GUTIERREZ:  Manuel Gutierrez, Juror 70.

THE COURT:  70?

PROSPECTIVE JUROR GUTIERREZ:  Yeah.

THE COURT:  Okay.

PROSPECTIVE JUROR GUTIERREZ:  And just one thing that would, I would say, make me biased is just that, you know, a Chinese nationalist, you know, was trusted with sensitive information or data; and to do that, to, you know, steal it and take it to their country, you know, that's something that would make me biased.

THE COURT:  Yes.  So, in other words, you have strong negative feelings about somebody who would do that?

PROSPECTIVE JUROR GUTIERREZ:  Yeah.

THE COURT:  Yes.  And so the question is, though -- I mean, your job as a juror is to decide whether the person did that -- right? -- and whether the Government proved beyond a reasonable doubt that the person did that.

So if you conclude that the person -- beyond a reasonable doubt that the person did that, that it would make sense to have strong negative feelings about them; right?

I mean, we have all different kinds of cases in the court system.  We have murder cases.  We have sexual exploitation cases.  We have all sorts of bad things that

THE COURT:  And if people want to ask follow-up questions of the jurors, they can.

MR. CHANG:  On Juror Number 5, the Government would like to ask additional follow-up questions to flesh out the Google issue that the Court questioned her about.

THE COURT:  Sure.  What's -- does the defense have a position on Juror Number 5?

MR. FONDO:  We'll wait and see how the questions go, Your Honor.

THE COURT:  Okay.  And then I'm guessing that everybody will agree that Juror Number 46 needs to be excused.

MR. CHANG:  We agree, Your Honor.

MR. FONDO:  Your Honor, we would like to ask some follow-up questions of 46.  I understand the Court's concern.

THE COURT:  There's not a -- there's not a scenario where I would change my mind that Juror Number 46 needs to be excused for cause.  He's -- I'm not going to say what he is --

MR. FONDO:  Understood.

THE COURT:  -- but he's not fit to serve on the jury.

Okay.  So, Bhavna, could you let Juror Number 46 know that he's excused and ask Juror Number 5 to come back in for some questions?

(Pause in proceedings.)

(Prospective Juror Everett enters the courtroom.)

THE COURT:  Okay.  Ms. Everett, the lawyers wanted to

Juror Number 84, please.  Good afternoon.

PROSPECTIVE JUROR HU:  Good afternoon.

MR. CHANG:  Thank you for being here.

In your questionnaire you expressed some concerns about this case, given the nature and the different parties involved; and so we just -- we wanted to first better understand what your concerns were about possibly serving as a prospective juror in this case.

PROSPECTIVE JUROR HU:  I can't remember what I wrote down there anymore.

MR. CHANG:  That's totally fair.

PROSPECTIVE JUROR HU:  My feeling was because, you know, I'm Chinese and this is, you know, a case against a Chinese national, I'm not sure whether, you know, I should be sitting in here.

MR. CHANG:  Got it.  Other than that -- and it is -- those facts are indeed true.  I guess knowing the facts that you've been shared now by the Court, as well as your role as a juror, that concern, in particular, do you think you'll be able to serve as a fair juror and unbiased juror in this case?

PROSPECTIVE JUROR HU:  Positive.

MR. CHANG:  Positive?  Okay.

You also expressed some views on Google, and wanted to better understand those as well.

In particular, you just had some concerns about

Google's power and impact.  And when it's a -- Google is a victim company in this case, and I wanted to see if you thought that that would potentially affect your ability to serve.

PROSPECTIVE JUROR HU:  I don't have a specific or particular concern.  It's just that, you know, I read a lot about, you know, these companies.  And Google is so dominating.  And in the situation now, they're controlling everything of -- I do search every day, I use Google, and, you know, it's looking at what I -- what I do, what I did.  And so Google's influence on the society is so great, I'm just a little bit worried.  That's my concern.

MR. CHANG:  Understood.  And as we said, there's no wrong answers here.  We're just asking for some honesty.

Is there anything about those views, about Google's influence, in your opinion, that might impact your ability to serve on this -- on this jury?

PROSPECTIVE JUROR HU:  I don't think so.

MR. CHANG:  Okay.  All right.  I don't have any further questions for you.

PROSPECTIVE JUROR HU:  Thank you.

MR. CHANG:  Thank you.

Juror Number 104, please.

Good afternoon, Juror 104.  Thank you.

You mentioned in your questionnaire that you -- it seems like you've read quite a bit of press coverage related to

this case.  I don't want you to get into the specifics of the coverage and what you read or haven't read, but just wanted to understand, you know, maybe the amount.

You know, is it one article versus -- you said you were following the case daily.  I just wanted to understand what is the extent of the knowledge without getting into the specifics of what you specifically read, if that makes sense.

**PROSPECTIVE JUROR LAU:**  Yeah.  I mean, headlines come up all the time, so you're reading through those headlines and reading through those, just opening it up and seeing and following what's going on out of curiosity just because I'm also in the tech industry and seeing, like, how did he manage to do this.  Or, you know, I don't know how to go too much into details or not, but just normal reading on a day-to-day basis out of curiosity.

**MR. CHANG:**  Understood.

I guess the daily part of it was a little bit of the follow-up -- right? -- that made it sound like it was something you were following very closely, and so we wanted to better understand that part of the answer.

**PROSPECTIVE JUROR LAU:**  Yeah.  I mean, at this point it happened a while ago, so I don't remember all the details, but it was one of those that just piqued curiosity and so I just kept reading about it.

**MR. CHANG:**  Okay.  And then you also expressed some

concerns based on that on whether that may affect your ability to be impartial, and so I wanted to better understand that as well.

**PROSPECTIVE JUROR LAU:** Yeah.  So you have to think about the timing of the situation in that, also because I am Chinese and of -- how do I put this?

The experiences that I've had, feeling like I've been targeted so much recently because of my nationality.  I feel like there's been judgments made around being a Chinese person, even in the professional space, that I don't -- my immediate reaction of those kinds of articles was like:  Well, there's another person getting targeted unfairly.  How do you know that this is true, that he actually stole something or that -- that someone isn't just saying, "Hey, he happens to be Chinese, and therefore, let's pin it on this person"?

It was one of those reactions where it kind of -- I was intrigued to see where it was going because you could see how the world was turning and how everything around me was about me just being -- having black hair and getting people looking at me, or walking in Chinatown and having those kind of sentiments around me.

And so for me, it's where I don't know that I can honestly be able to look at this completely unbiased because it's the Government, again, coming in and trying to target another Chinese person, whether or not they're nationals.

them, they can recover better and more quickly than someone like my mother, and yet there's no protection for her.

So for me, it's where -- I want to say, yes, I would be able to; but at the same time, there's a certain part of me that's just like I don't know.  I'm not really sure until, I guess, the case happens.  I don't know how I would be able to answer.

THE COURT:  Would you go into it committed to trying your best to follow my instructions and follow the law and do your duty under the law?

PROSPECTIVE JUROR LAU:  Yeah, I think so.

THE COURT:  Okay.

MR. CHANG:  I don't have any further questions for this juror.  Thank you.

Juror 45.

PROSPECTIVE JUROR LEONG:  Hi.

MR. CHANG:  Thank you for being here.

I noticed that you were nodding along as Juror 104 was talking, and so I just wanted to understand if you had some thoughts you wanted to share with us on this issue.

PROSPECTIVE JUROR LEONG:  Yeah, I kind of agree with a lot of what she said.  My feelings are maybe along the same lines.  I question -- my question is about the genesis of this case.  Who brought it forward?  When did all this happen?  What are the motivations of all the parties involved?  And is

this -- can we look at it just as this one isolated case with the facts as presented, or is it really a reflection of very public politicized and sensitive topics of AI and China?

MR. CHANG:  Thank you again for your honesty for sharing that.

It's a similar question to the one the Court just asked Juror 104.  Do you think you would be able to come in and listen to the evidence, though, with a fair and open mind?

PROSPECTIVE JUROR LEONG:  I would, but at the back of my mind, I would question -- I would -- unless the motivations were made clear, I would wonder about that, and I would have maybe a dissenting opinion if I didn't agree with something.

MR. CHANG:  So it sounds like you might not be able to put those opinions aside a hundred percent?

PROSPECTIVE JUROR LEONG:  I mean, I can logically weigh the evidence presented.  And if I had no choice but to go with whatever is the logical outcome, then so be it.

MR. CHANG:  Understood.

THE COURT:  But that stuff would be the stuff -- those concerns that you've expressed would be on your mind?

PROSPECTIVE JUROR LEONG:  Yeah.

THE COURT:  Yeah.  Okay.

MR. CHANG:  It would be a similar question to the one the Court asked.  So let's say, hypothetically, the evidence did show that the Government had met its burden beyond a

reasonable doubt.  Would you be able to set aside those views and reach a verdict?

PROSPECTIVE JUROR LEONG:  Yes.

THE COURT:  Could you remind me your name and juror number again?  I apologize.

PROSPECTIVE JUROR LEONG:  Kip Leong, Number 45.

THE COURT:  45?

PROSPECTIVE JUROR LEONG:  Yes.

THE COURT:  Thank you.

MR. CHANG:  Excuse me a second, Your Honor.

(Co-counsel confer off the record.)

MR. CHANG:  Apologies, Juror 45.  I have a couple of follow-up questions.

So one of your roles as a juror will be to listen to the evidence, look at the documents that you hear in this case, and reach a verdict.  Some of that evidence may answer those questions, some of it may not; right?  It just depends on what comes in.

Would you be able to reach verdict if you aren't able to, for example, understand the motivations of how the case was charged or those types of decisions?

PROSPECTIVE JUROR LEONG:  Yeah.  I mean, each court case is like an encapsulated bucket of proceedings and evidence, and that's all we have to go on; right?  We shouldn't -- we can't let our outside biases influence the

outcome in contradiction of what is presented to us; right?

MR. CHANG:  Understood.

Okay.  Thank you.  No further questions.

All right.  I wanted to now move on to the topic of artificial intelligence and machine learning, which we've spent a little bit of time on but -- but I wanted to give some more context to the jurors.

So I just wanted to define some terms for everyone. AI is artificial intelligence.  I know for a lot of you, that's very obvious, but I just wanted to make sure we're on the same page.  And then ML is machine learning.  You know, those are abbreviations we'll be using quite a bit.

Just by a show of hands, how many folks have used an AI chatbot before?

(Show of hands.)

MR. CHANG:  Wow.  How many folks have seen AI content on their social media?

(Show of hands.)

MR. CHANG:  Okay.  Wow.

All right.  Well, I wanted to state out front that this case is not about whether AI is good or bad for humanity. We'll leave that question for another day and someone much smarter than me.

As the judge has explained, this case is about the threat of trade secrets and economic espionage.  Specifically,

But in having heard that the primary -- like, my role is to follow the instruction and listen to the facts and take the law as the law, that's something I think I can do on both sides equally, if that makes sense.

MR. CHANG:  It does.

And so the Court did -- has mentioned this a couple of times, but at the end of the trial, he will provide you with the law.  Let's say you disagree with the law.  Do you think you'd be able to follow the Court's instruction?

PROSPECTIVE JUROR WANG:  I think so.  And I hesitate because I don't foresee myself disagreeing so, like -- so vehemently with, like, all of the evidence.  At the end of the day, I don't think that I would think that the final verdict is, like -- that I would disagree with every law that was presented to me.  Does that make sense?

MR. CHANG:  It does.

Can you give us some examples of the types of laws you find unreasonable?

PROSPECTIVE JUROR WANG:  No.  I think that just I would echo a lot of what people have said here today in terms of -- I mean, I just think that inherently Google, as a monopoly, has powers that I myself can't even articulate; but just that inherently, in the power that it has, it has the capacity to be predatory.

And also me being Chinese, I acknowledge that I have

my own unconscious biases regarding, like -- like, in the back of my head, I also think about who's being targeted, why they're being targeted, why certain cases get this sort of treatment relative to others.

But having said all of that, I -- again, I think that -- I didn't really answer your question because I just don't have specific laws in mind, but I do think that on both sides, I would -- I have biases on all ends, I believe, and I think that I could set aside -- or despite all of them, I would be able to follow protocol, follow my role as a juror.

MR. CHANG:  What -- I wanted to probe a little bit more on the Google concerns that you raised.

PROSPECTIVE JUROR WANG:  Sure.

MR. CHANG:  It sounds like you have some opinions on Google, which is, again, totally okay.

Would that influence the perspective you come at in terms of considering the evidence in this case?

PROSPECTIVE JUROR WANG:  I don't think so, no.

MR. CHANG:  All right.  Thank you.  No further questions.

All right.  Let's call...

(Pause in proceedings.)

MR. CHANG:  Juror Number 76, I know we talked for quite a bit, but I have only one or two questions for you, and then we can...

PROSPECTIVE JUROR COPI:  If the law conflicted with my beliefs, yes, I could follow the law unless it was very egregious.

MR. CHANG:  Let's say you think it's very egregious under your personal belief and moral system.

PROSPECTIVE JUROR COPI:  Yeah.

MR. CHANG:  Could you still follow the law?

PROSPECTIVE JUROR COPI:  No.

MR. CHANG:  The next question that you raised is about reasonable doubt.  Would you be able to follow the Court's instruction about what that is as defined in the law?

PROSPECTIVE JUROR COPI:  I hope so.  I think so. I think reasonable doubt is, by definition, not very definite, you know.  What does one person think is reasonable is different from what the next person thinks is reasonable.

MR. CHANG:  Thank you.  No further questions.  You can go back to your seat.

PROSPECTIVE JUROR COPI:  Thank you.

MR. CHANG:  Juror 71.

THE COURT:  Mr. Chang, I'll just let you know that your hour has expired.  If you want to take a couple minutes -- a few minutes to wrap up, go ahead.

MR. CHANG:  Thank you, Your Honor.  Appreciate it.

Good afternoon, Juror 71.

PROSPECTIVE JUROR JOHNSON:  Good afternoon.

MR. CHANG: Thanks for being here.

In your questionnaire, you had some thoughts about many of the topics that we covered today, and so I wanted to just better understand the concerns you raise about artificial intelligence.

And as I said, this case is not about the chatbots that we all see or those things, but it is about the artificial intelligence computing structure that supports a lot of that. And so knowing that information, I just wanted to first understand what your thoughts were on AI in general.

PROSPECTIVE JUROR JOHNSON: Yeah. I think for me, just being a recent college graduate and kind of being in this new world of AI, I see both the pros and cons of it, how it can be helpful. But then I also see that -- there does -- there needs to be some legal, just regulations regarding it over just the overuse of it and misuse, depending on how it's being used, and then also the implications regarding the world and the environment and everything.

So I see where it can come in handy, but also I can see where it could be a danger to just other factors or implications of society.

MR. CHANG: With those perspectives, would you be able to be open-minded when it comes to considering the information and evidence related to AI in this case?

PROSPECTIVE JUROR JOHNSON: Yeah, I'm willing to be

open-minded.

MR. CHANG:  You also mentioned some concerns about just the criminal justice system, and I wanted to better understand those as well.

PROSPECTIVE JUROR JOHNSON:  Yeah.  I think, if I remember correctly, the question was regarding if I believe the criminal justice system is fair.

And I said it just depends, just because from just knowing my history and then just American history regarding people of color and just different cases, like watching movies or seeing documents and stuff, and just knowing of just different cases where it's not necessarily always fair, depending on just certain environments and the scenarios.

But also regarding the justice system, I don't think it's always fair regarding the person, depending on the context, so...

MR. CHANG:  Understood.  Thank you for your honesty.

Would you be able to -- using those perspectives that you just shared, would you be able to come in as a juror and listen to the evidence carefully and follow the instructions that the Court has provided?

PROSPECTIVE JUROR JOHNSON:  Yes.

MR. CHANG:  Your Honor, if you could give me two minutes to confer with my co-counsels to make sure we don't --

one?

MR. FONDO:  No, Your Honor.

THE COURT:  Okay.  He will be excused for cause.

I said I was going to go back and think about it, but so far I felt pretty confident on both of those so I thought I would just go ahead and say it.

MR. CHANG:  Okay.  The next one is Juror Number 76.

THE COURT:  Okay.

MR. CHANG:  We spent quite a bit of time with him, and ultimately, his view was that he had pretty strong philosophical views about whether intellectual property could even be intellectual property essentially and --

THE COURT:  Let me interrupt you for a second.

MR. CHANG:  Yeah.

THE COURT:  I was listening pretty carefully to what he said and it's on the record, and I think that's -- I think it's a tricky one.

What's the defense's view?

MR. FONDO:  Your Honor, I -- it's a little bit like the prior one, which was, although more involved and more kind of technical analysis --

THE COURT:  You mean a little bit like --

MR. FONDO:  36.

THE COURT:  Yeah.  Not like the one -- not like 42 --

MR. FONDO:  No, no.

**MR. CHANG:**  Thank you, Your Honor.

(Pause in proceedings.)

**MR. CHANG:**  Juror 104, Prospective Juror 104.

**THE COURT:**  Yes.

**MR. CHANG:**  It seems like she --

**THE COURT:**  Same thing.  I listened pretty carefully. I -- what she said is on the record.  I agree that it maybe is a bit of a close question, but what's the defense's view?

**MR. FONDO:**  Your Honor, we don't think there's grounds for cause.  I, frankly, don't remember her saying anything that was sort of as close a call as maybe some of the other ones that has caused you some concern, but I'd have to check my notes.

**THE COURT:**  I mean, this one, it was kind of -- kind of the same thing.  Like, it depended on who was asking her questions and how the questions were being asked.

But at one point she said, "I would go into it committing to doing my duty."  At another point she said -- sort of earlier on she said, "I don't know if I could."

You followed up with her and you asked her a question, Mr. Fondo, and her response to that question was pretty reassuring.  I don't remember exactly what your question was and what her answer was, but it was pretty reassuring.  Maybe I'll go back and look during the break, but I think this one is a close question.

Anything further you want to say about that, Mr. Chang?

MR. CHANG:  Just to put on the record, I'm looking again at the notes of my colleagues, but she did say at some point on the record that she doesn't know if she can keep her personal views separate from the decision, couldn't say she could be fair, and she wants to be able to say that she could convict if the evidence supported beyond a reasonable doubt but essentially could not say that.

THE COURT:  Yeah.  I mean, again, her answers were a little bit all over the map depending on the way the question was slanted.

MR. FONDO:  Your Honor, my recollection, also, she -- was that she said if the facts determined that the person was guilty, she could find them guilty.

THE COURT:  Yeah.

MR. FONDO:  So I don't think -- I don't think she said anything that's grounds for cause.

THE COURT:  Okay.  Any other challenges?

I'll take that one under submission.

Any other challenges from the Government?

MR. CHANG:  Juror Number -- Prospective Juror Number 45.

(Pause in proceedings.)

MR. CHANG:  Let me find my notes, Your Honor.

**JURY VOIR DIRE**

THE COURT:  I don't think this one is close.  I mean, I don't think 104 is close, but 45 is not close.

MR. CHANG:  Okay.

THE COURT:  His concerns were much, much less significant than 104's.  That challenge is denied.  If you want to put anything on the record about it later, you can, but I'm not going to -- I'm going to deny that challenge.

MR. CHANG:  Understood.

Nothing further from the Government, Your Honor.

THE COURT:  Okay.  Any challenges from the defense?

MR. FONDO:  Yes, Your Honor.

I think you said you're considering Number 5, so we won't I won't -- I don't need to argue that anymore.

THE COURT:  But to be clear, I mean, it's not obvious to me that you would challenge Number 5.  So to be clear, you're challenging Number 5?

MR. FONDO:  We are challenging, yes, Your Honor.

THE COURT:  Okay.

MR. FONDO:  We're also challenging Number 48, Your Honor.

THE COURT:  48?

MR. FONDO:  Yeah.

MR. CHANG:  Really quickly, Your Honor, just for record purposes, we've talked extensively about 5.  So we share -- our view is that she stated carefully she could be a

THE COURT:  I have no concern about that.  That was one thing that was clear from this juror's demeanor and everything he said, that he will do his job and he will not be trying to make his client happy in this case.  That, I'm very confident about.

MR. FONDO:  I respect that, Your Honor, but I'm just -- but we still have the same position that we're concerned about that relationship.

THE COURT:  Okay.  Response.

MR. CHANG:  We agree with Your Honor.  We don't think it's disqualifying here.  And you had some pretty thoughtful questions for him about whether it would affect his ability. He said on the record something to the effect of, "No, it wouldn't affect my ability to be fair and impartial."

And he did note Google probably wouldn't be happy if they found out this jury acquitted, but he said it wouldn't have an impact on his job.

THE COURT:  Okay.  So I'm going to think about that one too.  So I'm going to think -- I'm still thinking about 76 and 104, the Government's challenges; and 5 and 95, the defense's challenges, and I'll let you know when I come back out.

And I'm going to give you-all until 4:20 to plan your peremptory challenges, and you have -- you have -- I will not give you much time as the sheet is passing back and forth,

maximum of probably 90 seconds.  So plan ahead, and I'll be back out here at 4:20.

And, Bhavna, why don't you tell the jurors that it's going to be more like 4:30.

And you have the sheets?  Which you don't need to fill out the sheets, but you can just -- that'll tell you which order you announce your peremptory challenges in.

MR. FONDO:  And, Your Honor, did you make a final decision as to how many jurors?

THE COURT:  I think 16.  I think we can -- I think we have the numbers for 16.  I'm not a hundred percent sure, but I'll let you know when I come back.

MR. FONDO:  Thank you, Your Honor.

THE COURTROOM DEPUTY:  Court is in recess.

(Recess taken at 4:12 p.m.)

(Proceedings resumed at 4:25 p.m.)

(Proceedings were heard out of the presence of the prospective jurors.)

THE COURTROOM DEPUTY:  Come to order.  Court is back in session.

THE COURT:  Okay.  So, as I mentioned, I will be excusing Juror Number 5 and Juror Number 76 for cause, will not be excusing Juror Number 95 or 104 for cause.  I -- that -- by my count, that leaves us with 38 people.

And I would be inclined to excuse two more people for

hardship.  One of them is Juror Number 30, Mr. Jules, who provides one-on-one support to autistic kids at the school and is concerned about getting paid.  I think that with an agency like that, it's very unlikely that I can convince them to pay him.  So I would be inclined to excuse him.

And Juror Number 31, Ms. Latoof, who on her current schedule has to be there by 3:30 -- be in Martinez by 3:30 on Tuesday, Thursday, and Friday for pickup.

**MR. CHANG:**  Let me confer with my co-counsel.

(Pause in proceedings.)

**MR. CHANG:**  Your Honor, the Government has no objections to both.  We agree with your ruling.

**THE COURT:**  Okay.

**MR. FONDO:**  And we do object, Your Honor.  So, and let me actually -- we have the other objections I want to make sure we get on the record too.

But, Your Honor, we went through the whole hardship things.  We just don't think at this point that they have -- as you said, it may be a challenge, but I don't think it's an impossibility.  I don't think it's a hardship.

**THE COURT:**  Okay.  I think it's -- I think it's pretty rough.  I'm going to excuse Number 30 and 31 for hardship grounds -- on hardship grounds.

And then you said you wanted to put your other objections on the record.  Shall we do that now before we

**JURY VOIR DIRE**

THE COURT: Thanks.

THE COURTROOM DEPUTY: -- and I wrote on this.

THE COURT: All right. So the Government goes first.

(Pause in proceedings.)

MR. CHANG: For our first peremptory, Juror Number 36.

THE COURT: Okay. Ms. Copi.

All right. And does the Government have -- does the defense have the next two?

MR. FONDO: Sorry. What, Your Honor?

THE COURT: Oh, defendant has the next one.

MR. FONDO: Yeah. The next one would be Juror Number 3.

THE COURT: Okay. Government?

MR. CHANG: Juror Number 43, Your Honor.

THE COURT: All right. Number 43, Mr. Wang.

And then the defense has two.

MR. WOO: Your Honor, to be clear, these go in order right in the box. So, like, exercising a strike on, like, 112 --

THE OFFICIAL REPORTER: I'm sorry. I can't hear you, sir.

MR. WOO: I'm sorry.

THE COURT: No. Because we have 36 jurors --

MR. WOO: Yeah.

THE COURT: -- and we're going to pick 16 of them, and

MR. CHANG:  And my understanding for the alternate challenges are just to the alternate jurors; correct, Your Honor?

THE COURT:  Yes.

MR. CHANG:  Thank you.

THE COURT:  All right.  So the defense is Number 4 and Number 5.

MR. FONDO:  So we will strike Jurors Number 9 and 15.

THE COURT:  All right.  9 and 15.

All right.  The Government has a challenge now.

MR. CHANG:  45.

THE COURT:  All right.

Now the defense has two.

MR. FONDO:  44 and 48.

THE COURT:  44 and 48.

All right.  And now the Government has one.

(Pause in proceedings.)

MR. FONDO:  Juror -- Your Honor, there was an issue. We have a concern about the two jurors most recently struck by the Government.  They're both Asian jurors.

THE COURT:  Okay.  Remind me who they are again.

MR. FONDO:  So it is Mr. Collin Wang and then --

THE COURT:  What are the numbers?

MR. FONDO:  43 and 45.

THE COURT:  Okay.  And you're -- do you want to

articulate your concern a little bit more?

MR. FONDO:  Certainly, Your Honor.  There's very few Asian American jurors in this jury pool percentage-wise and --

THE COURT:  Really?

MR. FONDO:  I'm sorry.  What?

THE COURT:  Really?

MR. FONDO:  There's not a lot, Your Honor.

THE COURT:  Huh.  Okay.

MR. FONDO:  I mean, I don't think there's a lot, and certainly of Chinese descent, and so -- and these are both of Chinese descent and the defendant is Chinese.

THE COURT:  Both Chinese descent and what?

MR. FONDO:  And the defendant is Chinese.

THE COURT:  Oh.  Okay.  So you believe that they -- you're making a *Batson* challenge?

MR. FONDO:  Correct, Your Honor.

THE COURT:  Does the Government want to articulate race-neutral reasons for excusing these jurors?

MR. CHANG:  Yes, Your Honor.  Let me confer with my colleagues briefly.

(Pause in proceedings.)

MR. CHANG:  On Juror Number -- can I start or should we wait?

THE COURT:  Sure.  43.

MR. CHANG:  Yes.  Juror Number 43, so on the

questionnaire he stated that he holds negative feelings to the extent, quote -- thank you, court reporter -- quote [as read]:

> "I hold negative feelings to the extent that Google is a monopolist and that its reach impinges on its consumers and employers."

And then during questioning today when asked about whether he would be able to follow the law in certain circumstances, he expressed some concerns about that, some skepticism.  And so for those reasons, we exercised our peremptory.

THE COURT:  What was the skepticism he expressed about being able to follow the law?  Do you remember any more detail about that?

MR. CHANG:  So he was one of the individuals who had some concerns about laws being unreasonable and whether he would be able to follow them.

There was some additional questioning where he -- I would say he walked back those questions -- those responses a bit, but we have some concerns about that in addition to his very, very strong views on Google in terms of it being a monopolist.  And so for those reasons, we exercised our peremptory.

THE COURT:  Okay.  And then what about 45?

MR. CHANG:  So 45 was one we discussed yesterday as well.  He has some very strong Administration views.  This is

the individual who wrote in his questionnaire three times, quote [as read]:

"The current Administration uses the law to punish" -- "to favor their friends, punish their enemies, and enrich themselves.  The military and law enforcement are blindly following corrupt orders," end quote

And then today when questioned, we -- one of the issues he raised was wanting to know the motivation behind the prosecution's charging process, how the Government decided to bring the case.  As the Court correctly ruled in *Mills*, that's off limits in a criminal case.  And so for those separate reasons, we exercised our peremptories.

THE COURT:  Okay.  Your response from the defense.

MR. FONDO:  Yes, Your Honor.  As to the first juror, 43, the juror actually sort of corrected their statement -- "correct" is not the right word, but they stated that they could follow the law.  They could not think of any law that he did not agree with and that he said he could follow the law, and he found no examples of any types of laws unreasonable.  So I don't think that that -- their stated basis.

I would also note that the first -- two out of the first three are Chinese individual -- people, Chinese people that they've stricken.

THE COURT:  Why did you strike Raymond Chow?

(Pause in proceedings.)

MR. FONDO:  Oh, let me just check.  Which juror number is that?  Sorry.

That's the Nvidia person, Your Honor?

THE COURT:  Yeah.

MR. FONDO:  For the same reasons that we expressed cause -- concerns about the cause.  Very strong relationship between Nvidia and Google and he has very strong relationships there.

THE COURT:  Okay.  So the *Batson* challenge is overruled.

And I will just remark that I found, both from my observation in the courtroom and from going through this list, there's actually a pretty high concentration of Asian American prospective jurors.  I was surprised to hear you say that the percentage was very low.  I thought it was unusually high, actually, just based on my history of observing jury pools here in federal court.

But, anyway, those challenges are overruled.

What's next?  Oh, the Government was working on Number 9.

MR. CHANG:  Yes.

THE COURT:  And the Government was working for a long time on Number 9, so I need your challenge on Number 9.

MR. CHANG:  Juror 68.

THE COURT:  Okay.  Juror 68.

Okay.  Two for the defense.

MR. FONDO:  Your Honor, Jurors 66 and 75.

THE COURT:  All right.  One for the Government.

MR. CHANG:  Juror 84.

THE COURT:  84.  Okay.

MR. FONDO:  Your Honor, the defense chooses 79 and 85.

THE COURT:  79 and 85.

Okay.  Government's final challenge before we get to have the jury in and then we pick the alternates.

MR. FONDO:  Your Honor, if I may, just -- let me just verify, but my understanding is 84 is also Chinese.

THE COURT:  Yes.  Are you making a challenge?

MR. FONDO:  Yes, we are.

THE COURT:  Okay.  What is the Government's basis for excluding 84?

MR. CHANG:  So this was a juror that we raised questions about yesterday on the record just based solely on the papers, so we had some concerns about his ability to be fair and impartial.

THE COURT:  What was it based on the papers?

MR. CHANG:  I don't recall -- I think yesterday I raised a concern about the questions in the last page of the questionnaire; but, in general, he had some very strong opinions about allegations of IP theft against Chinese

nationals.  In particular, in response to Question 40, he said, quote [as read]:

 "Most cases of U.S. IP theft against Chinese nationals were proven to be either witch hunt or racial discrimination."

 THE COURT:  Okay.

 MR. CHANG:  And then I would say today he expressed similar concerns about the -- similar to the types of concerns that he raised in his juror questionnaire in terms of just, in general, prosecutions involving these types of allegations and having a perspective on it that raised some concerns about his ability to be a hundred percent fair and impartial.

 THE COURT:  Really?  I don't remember that in the discussion with him today.  I mean, it's possible I'm just not remembering something, but he seemed very solid to me today.  That was my takeaway from our discussion with him.

 MR. CHANG:  He also had some strong views about Google in terms of its influence on society.  I do think those two issues in combination -- he did walk them back today.  We agree with Your Honor.

 That being said, how strong those opinions were, "witch hunt" is quite a strong word to use.  And so for those reasons, in addition to the answers provided on the record, were why we decided to exercise a peremptory.

 THE COURT:  Okay.  Now, so let's talk about the

mechanics of a *Batson* challenge for a second.  Because, obviously, when this usually comes up is on a habeas petition or on an appeal or something like that; right?

And the -- I mean, I guess what -- my inclination is to deny this -- deny the challenge provisionally without prejudice to you moving for a mistrial and, you know, going through the -- going through the jury pool and, you know, comparing the things that were said by people the Government didn't exclude to things that were said by people the Government did exclude, you know, white people the Government didn't exclude compared to Asian people the Government did exclude.

That would be my inclination -- right? -- is to deny the challenge without prejudice to you filing a motion for a mistrial.  But is there some other way you would propose that I go about this?

MR. FONDO:  Well, Your Honor, we would suggest that their request be denied to strike that juror.

THE COURT:  The request to strike the juror?

MR. FONDO:  Correct.  And all three.  It goes to our request as to all three.

THE COURT:  I understand that.

(Pause in proceedings.)

THE COURT:  I'm not going to deny their challenge as to the first two.

What do I have to find to deny their challenge; right? What do I have to find? Do I have to find that it was race based? Do I have to find that it was racially discriminatory?

MR. FONDO: So, Your Honor, I don't have the exact provision in front of me, so I don't want to misstate it, but -- but I think that it's -- these jurors were stricken because of their nationality.

THE COURT: And I don't think I can deny their peremptory challenge unless I find that they were stricken because of their nationality.

I'm concerned about Juror Number 84.

MR. CHANG: I will say, Your Honor, I want to be careful about how I characterize what I said yesterday, but we had some very serious concerns given the "witch hunt" language and racial discrimination under penalty of perjury. I do believe we moved for a cause strike yesterday based solely on the papers, and that's very strong language to call a criminal prosecution a witch hunt. I don't think anyone else used such strong language.

THE COURT: Well, they weren't calling your criminal prosecution a witch hunt; right?

MR. CHANG: But our case is a case of IP theft against a Chinese national. It's exactly the kind of case he's calling a witch hunt.

THE COURT: And he is saying most cases of U.S. IP

theft against Chinese nationals were proven to be either witch hunting or racial discrimination?

MR. CHANG:  Correct, Your Honor.

THE COURT:  Query how inaccurate that is, but the challenge is denied.  It's without prejudice to filing a motion for a mistrial.

MR. FONDO:  Thank you, Your Honor.

THE COURT:  Okay.  So who's up next?  I lost track.

MR. FONDO:  I think we are.  Is that correct?

THE COURT:  What number challenge are we on, Bhavna?

THE COURTROOM DEPUTY:  15.  I think the Government's next.

THE COURT:  So defense did 13 and 14?

THE COURTROOM DEPUTY:  Yes.

THE COURT:  Okay.

THE COURTROOM DEPUTY:  79 and 85.

THE COURT:  All right.  So this is your last challenge for who's going to be on the jury before we get to the alternates.

(Pause in proceedings.)

MR. CHANG:  Juror Number 16.

THE COURT:  All right.  Juror Number 16.

And now the last one for the defense before we get to the alternates challenge.

MR. FONDO:  Juror Number 90.

**JURY VOIR DIRE**

THE COURT:  All right.

Okay.  So I'm going to announce -- I'm going to rattle off the numbers of the people who I think are the jurors, and everybody go through their lists.  Everybody follow along.  Okay?

Is everything okay?

MR. FONDO:  I think so, Your Honor.

THE COURT:  Okay.

MR. FONDO:  Sorry about that.

THE COURT:  It's okay.

All right.  So Juror Number 7 would be Juror Number 1; correct?

Juror Number 2 will be Juror Number 24.

Juror Number 3 will be Juror Number 25.

Juror Number 4 will be Number 37; right?

Number 5 will be 39.

Number 6 will be 51.

Number 7 will be 54.

Number 8 will be 61.

Number 9 will be 62.

Number 10 will be 70.

Number 11 will be 71.

And Number 12 will be 72.

And so now we have to pick four alternates, and the Government has the first challenge.

**JURY VOIR DIRE**

THE COURT:  All right.  So then the alternates are, Juror Number 13 will be 86.

Juror Number 14 will be 104.

Juror Number 15 will be 109.

And Juror Number 16 will be 110.  She can bring us some wine at the end of the trial.

Is that right?  Did I rattle off the jurors correctly?

MR. FONDO:  Your Honor, I believe so, but could we just have a moment to double-check that?

THE COURT:  Yes.

MR. FONDO:  Thank you.

(Pause in proceedings.)

MR. FONDO:  Your Honor, I have confirmation from our team that we're in agreement.

THE COURT:  Okay.  Bhavna, you can start letting them back in.

And the Government, if they have an issue, they can let me know at sidebar.

THE COURTROOM DEPUTY:  Okay.

THE COURT:  I'll be right back.  I'm just going to go get my instructions.  You can let them in.

(Pause in proceedings.)

(Proceedings were heard in the presence of the prospective jurors.)

THE COURT:  Mr. Chang, did you confirm that I called

**CERTIFICATE OF REPORTER**

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:  Wednesday, January 28, 2026

_Ana Dub_

_____

Ana Dub, CSR No. 7445, RDR, RMR, CRR, CCRR, CRG, CCG
Official United States Reporter