GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
FARZAD FEYZI (SBN 343538)
*FFeyzi@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 Marshall Street
Redwood City, CA 94063
Tel.: +1 650 752 3100
Fax: +1 650 853 1038

DARRYL M. WOO (SBN 100513)
*DWoo@goodwinlaw.com*
RACHEL M. WALSH (SBN 250568)
*RWalsh@goodwinlaw.com*
JESSICA HUANG FUZELLIER (SBN 315208)
*JHFuzellier@goodwinlaw.com*
DAVID RAPP-KIRSHNER (SBN 344494)
*DRappKirshner@goodwinlaw.com*
COLETTE LOWRY (SBN 359889)
*CLowry@goodwinlaw.com*
**GOODWIN PROCTER LLP**
525 Market Street, Floor 32
San Francisco, CA 94105
Tel.: +1 415 733 6000
Fax: +1 415 677 9041

Attorneys for Defendant:
LINWEI DING

[*Additional Counsel Listed in Signature Block*]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LINWEI DING,<br><br>Defendant. | Case No.  3:24-CR-00141-VC<br><br>**DEFENDANT LINWEI DING'S NOTICE OF MOTION AND MOTION FOR A JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, NEW TRIAL PURSUANT TO RULE 29(C) AND RULE 33 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE**<br><br>Date: April 16, 2026<br>Time: 1:00 p.m.<br>Courtroom: 4 (17th Floor)<br>Judge: Hon. Vince Chhabria<br>450 Golden Gate Avenue<br>San Francisco, CA 94102<br><br>Filed/lodged concurrently herewith:<br>1. Declaration of Grant P. Fondo<br>2. [Proposed] Order |

## NOTICE OF MOTION

**TO THE COURT AND ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 16, 2026, at 1:00 p.m., or as soon thereafter as this matter may be heard at a time set by The Honorable Vince Chhabria in Courtroom 4 of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Defendant Linwei Ding ("Mr. Ding"), will and hereby does move for a judgment of acquittal, or in the alternative for a new trial, pursuant to Rule 29(c) and Rule 33 of the Federal Rules of Criminal Procedure.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the attached Declaration of Grant P. Fondo ("Fondo Decl.") and accompanying exhibits, the pleadings and papers filed in this matter, and on other such arguments or evidence as the Court shall deem proper.

Respectfully submitted,

Dated: February 19, 2026

By: /s/ _Grant P. Fondo_

GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
DARRYL M. WOO (SBN 100513)
*DWoo@goodwinlaw.com*
RACHEL M. WALSH (SBN 250568)
*RWalsh@goodwinlaw.com*
JESSICA HUANG FUZELLIER (SBN 315208)
*JHFuzellier@goodwinlaw.com*
FARZAD FEYZI (SBN 343538)
*FFeyzi@goodwinlaw.com*
DAVID RAPP-KIRSHNER (SBN 344494)
*DRappKirshner@goodwinlaw.com*
NIRAV BHARDWAJ (SBN 350829)
*NBhardwaj@goodwinlaw.com*
NICHOLAS C. WILEY (SBN 351161)
*Nwiley@goodwinlaw.com*
COLETTE A. LOWRY (SBN 359889)
*CLowry@goodwinlaw.com*
**GOODWIN PROCTER LLP**

LORA J. KRSULICH (SBN 315399)
*LKrsulich@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S. Figueroa Street, Suite 4100
Los Angeles, CA 90017
Tel.: +1 213 426 2500

i

Fax: +1 213 623 1673

Attorneys for Defendant:
LINWEI DING

ii

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ......................................................................................................................... 1

FACTUAL BACKGROUND .......................................................................................................... 2

RULE 29 MOTION ........................................................................................................................ 4

I.    LEGAL STANDARD ......................................................................................................... 4

II.    ARGUMENT ....................................................................................................................... 5

  A.    The Government Failed to Prove the Essential Elements of Economic Espionage as to Intent and Knowledge (Counts Eight through Fourteen). ............................... 5

    1.    The Economic Espionage Jury Instruction Should Have Provided that the Government Must Prove Activity Coordinated With or Sponsored by Foreign Government, Which the Government Failed to Prove. .................. 5

    2.    There Is Insufficient Evidence that Mr. Ding Had the Requisite Intent at the Time that the Trade Secrets Were Taken. .................................................... 7

    3.    Intent to Benefit a Private Chinese Company Does Not Satisfy Intent. .... 11

    4.    The Jury Instruction Regarding Economic Espionage Should Have Required the Jury to Find Mr. Ding Knew The Documents Included Trade Secrets, Which the Government Failed to Prove. ..................................... 13

  B.    The Government Failed to Prove the Essential Elements of Theft of Trade Secrets as to Mr. Ding's Intent (Counts One through Seven). .......................................... 15

  C.    The Government Failed to Prove the Essential Elements of a Trade Secret (All Counts). ................................................................................................................ 17

    1.    The Government Failed to Prove Google Took Reasonable Measures to Protect the Trade Secrets (All Counts). ...................................................... 18

    2.    The Government Failed to Prove that Category Three, Category Five, and Category Seven are Non-Public (Counts Three, Five, Seven, Ten, Twelve, and Fourteen). ............................................................................................ 19

    3.    The Government Failed to Prove the Essential Elements of a Trade Secret as to the Combination Trade Secrets (Counts One, Two, Three, Six, Eight, Nine, Ten, and Thirteen). ......................................................................... 21

RULE 33 MOTION ...................................................................................................................... 29

I.    LEGAL STANDARD ....................................................................................................... 29

II.    ARGUMENT ..................................................................................................................... 29

  A.    The Government Failed to Adequately Identify the Relevant Trade Secrets, Resulting in an Unfair Trial. .................................................................................. 29

  B.    The Court's Rulings Regarding the Defense's Experts Resulted in an Unfair Trial. ........................................................................................................................ 32

  C.    The Court's Jury Instructions Were Confusing or Misleading and Resulted in an Unfair Trial. ........................................................................................................... 34

  D.    The Guilty Verdicts Are Against the Cumulative Weight of the Evidence. ........... 34

CONCLUSION ............................................................................................................................ 35

iii

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*3M v. Pribyl*,
   259 F.3d 587 (7th Cir. 2001)..................................................................................... 21

*Barrett Bus. Servs., Inc. v. Colmenero*,
   2025 WL 2048985 (9th Cir. July 22, 2025)............................................................... 19

*Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*,
   53 F.4th 368 (6th Cir. 2022) ..................................................................................... 22

*Experian Info. Sols., Inc. v. Nationwide Marketing Servs. Inc.*,
   893 F.3d 1176 (9th Cir. 2018).................................................................................... 19

*Gasho v. United States*,
   39 F.3d 1420 (9th Cir. 1994)................................................................................... 8, 9

*Integrated Cash Mgmt. Servs., Inc. v. Digit. Transactions, Inc.*,
   732 F. Supp. 370 (S.D.N.Y. 1989), aff'd, 920 F.2d 171 (2d Cir. 1990)................................ 23

*Morissette v. United States*,
   342 U.S. 246 (1952)................................................................................................... 8

*Proofpoint, Inc. v. Vade Secure, Inc.*,
   2021 WL 2588974 (N.D. Cal. June 24, 2021) ........................................................... 34

*United States v. Adamson*,
   291 F.3d 606 (9th Cir. 2002)..................................................................................... 10

*United States v. Alston*,
   974 F.2d 1206 (9th Cir. 1992).................................................................................... 29

*United States v. Chung*,
   659 F.3d 815 (9th Cir. 2011)....................................................................................... 5

*United States v. Chung*,
   633 F. Supp. 2d 1134 (C.D. Cal. 2009) .................................................................... 14

*United States v. Ferguson*,
   246 F.3d 129 (2d Cir. 2001)....................................................................................... 29

*United States v. Giese*,
   597 F.2d 1170 (9th Cir. 1979).................................................................................... 30

*United States v. Goyal*,
629 F.3d 912 (9th Cir. 2010)............................................................................................. 17

*United States v. Hernandez*,
859 F.3d 817 (9th Cir. 2017).......................................................................................... 8, 9

*United States v. Hsu*,
155 F.3d 189 (3d Cir. 1998) .............................................................................................. 6

*United States v. Inzunza*,
638 F.3d 1006 (9th Cir. 2011)......................................................................................... 29

*United States v. Jin*,
833 F. Supp. 2d 977 (N.D. Ill. 2012) .......................................................................*passim*

*United States v Katakis*,
800 F.3d 1017 (9th Cir. 2015)........................................................................................... 4

*United States v. Kellington*,
217 F.3d 1084 (9th Cir. 2000)..................................................................................... 29, 34

*United States v. Lan Lee*,
2010 WL 8696087 (N.D. Cal. May 21, 2010) ...........................................................*passim*

*United States v. Liang Chen*,
2020 WL 6342931 (N.D. Cal. Oct. 29, 2020)............................................................... 30, 31

*United States v. Liew*,
856 F.3d 585 (9th Cir. 2017)........................................................................................... 5, 6

*United States v. Lopez*,
484 F.3d 1186 (9th Cir. 2007)........................................................................................... 4

*United States v. Milwitt*,
475 F.3d 1150 (9th Cir. 2007)........................................................................................... 4

*United States v. Mitchell*,
744 F.2d 701 (9th Cir. 1984)........................................................................................... 30

*United States v. Nosal*,
844 F.3d 1024 (9th Cir. 2016).......................................................................................... 22

*United States v. O'Rourke*,
417 F. Supp. 3d 996 (N.D. Ill. 2019) .......................................................................... 22, 28

*United States v. O'Rourke*,
No. 17-cr-00495, Dkt. 43 (N.D. Ill. Sept. 5, 2018)........................................................ 23, 31

*United States v. Prescott*,
221 F.3d 686 (4th Cir. 2000)........................................................................................... 29

v

*United States v. Reed*,
875 F.2d 107 (7th Cir. 1989)...................................................................................... 29

*United States v. Sanchez*,
969 F.2d 1409 (2d Cir. 1992)..................................................................................... 29

*United States v. Shiah*,
2008 WL 11230384 (C.D. Cal. Feb. 19, 2008)......................................................... 17

*United States v. Sullivan*,
159 F.4th 579 (9th Cir. 2025) .................................................................................... 22

*United States v. Warren*,
25 F.3d 890 (9th Cir. 1994)........................................................................................ 34

*United States v. You*,
74 F.4th 378 (6th Cir. 2023) ...................................................................................... 14

*United States v. Zheng*,
113 F.4th 280 (2d Cir. 2024)........................................................................................ 5

*Vesta Corp. v. Amdocs Mgmt. Ltd.*,
2016 WL 8732371 (D. Or. Apr. 1, 2016) ................................................................. 23

**Federal Statutes**

18 U.S.C. § 1831 ................................................................................................... *passim*

18 U.S.C. § 1832 ...................................................................................................... 2, 5

**Other Authorities**

Restatement (Third) of Unfair Competition § 39 (1995) .......................................... 22

vi

# MEMORANDUM OF POINTS AND AUTHORITIES

# INTRODUCTION

The government has failed to prove its charges against defendant Linwei Ding ("Mr. Ding") beyond a reasonable doubt, requiring a judgment of acquittal as to all fourteen counts. In the alternative, a new trial is warranted in the interests of justice.

At trial, the government attempted to show that Mr. Ding stole 112 trade secrets[1] from his employer, Google, with the intent to benefit himself and the Chinese government, and to hurt Google. Though the jury returned guilty verdicts on all counts, it found that the government had failed to prove 97 of the 112 trade secrets. The government presented insufficient evidence to support the charges. **First**, as to the Economic Espionage counts, the government failed to prove that Mr. Ding intended to benefit the Chinese government or its instrumentalities when he took the trade secrets, relying only on evidence of acts that post-dated the takings by more than five months, and at most showing an intent to benefit himself and the Chinese *economy* rather than government, and as support for Mr. Ding's farfetched promises to potential investors to build an AI supercomputer he had no ability or intent to actually build.

**Second**, as to the Theft of Trade Secrets counts, the government failed to prove that Mr. Ding took the trade secrets with the intent to benefit someone other than Google and to injure Google. The government presented no evidence that Mr. Ding used or shared the trade secrets, and the evidence showed that Mr. Ding was incapable of building an AI supercomputer with the documents allegedly stolen, which is inconsistent with the requisite intent.

**Third**, the government failed to establish that many of the trade secrets satisfy the legal requirements for a trade secret. The government did not establish that Google had taken reasonable measures to protect the trade secrets where Google had widely disseminated confidential documents, documents were inconsistently labeled, none were labeled with the L4 "secret" category, and the majority included no confidentiality labeling at all. Next, the government unsurprisingly fell short of proving up the 112 trade secrets, as it showed the jury only 18 trade

---

[1] Mr. Ding does not concede that the government proved beyond a reasonable doubt any of the alleged trade secrets and maintains that it did not.

1

secret documents, and glossed over the remaining 87 documents and seven combinations. The government failed to present evidence that certain trade secrets were non-public. As to Categories One, Two, Three, and Six, the jury found the aggregation of all trade secret documents within each such respective categories constituted a trade secret, yet identified none of the individually listed documents within any such subcategories as a trade secret. Because the government's theory was never that these individual documents contained only non-confidential information but that when combined they were uniquely arranged such that the combination was a trade secret, the jury's verdicts as to Counts One through Three, Six, Eight through Ten, and Thirteen show that the jury failed to find that the government had proven any individual trade secrets within these categories. Analyzed, as it therefore must be, as a compilation of public information, the government failed to present evidence that the combinations had independent economic value as combinations of public information, or that the combinations of public information had independent economic value from being secret. The government also failed to establish that Google maintained the combination trade secrets as such. On these facts, and as a matter of law, no rational jury could have found the combinations to constitute trade secrets.

In the alternative, the Court should order a new trial in the interests of justice for several reasons, including the lack of fair notice of the trade secrets the government intended to prove, the Court's rulings regarding Mr. Ding's expert witnesses, certain confusing and misleading jury instructions, and the cumulative weight of the evidence against conviction.

## FACTUAL BACKGROUND

The government initially charged Mr. Ding with seven counts of Theft of Trade Secrets pursuant to 18 U.S.C. § 1832 on March 5, 2024.  Dkt. 1. Later, on February 4, 2025, after the change in administration, the government sought and obtained a superseding indictment, adding seven counts of Economic Espionage pursuant to 18 U.S.C. § 1831. Dkt. 44; *see also* Dkt. 140 ("Second Superseding Indictment" or "SSI") ¶¶ 43-46. The charges were based upon Mr. Ding's conversion of seven high-level categories of trade secrets related to the hardware infrastructure and software platform of Google's AI supercomputer. SSI ¶¶ 35-42. The government later made a pre-trial disclosure that it would argue that Mr. Ding had converted 105 specific trade secret documents

and 17 compilation trade secrets (though the government proceeded with only seven compilations at trial). Fondo Decl. Exs. A & B.

The trial spanned 11 days. The government called 14 witnesses and admitted 520 exhibits at trial. Its lay witnesses provided testimony regarding Google's measures to protect its trade secrets and context regarding Google's AI supercomputer technology. Its expert witnesses consisted of a forensic expert who testified about Mr. Ding's uploads of Google files, an expert on the Chinese government who testified about the structure of the government and its instrumentalities, and a technical expert who testified about the usefulness, value, and secrecy of the trade secret documents. The defense called three witnesses—two experts and one private investigator—and admitted 39 trial exhibits. The defense's expert witnesses consisted of an expert in reasonable measures who testified about industry custom and practice to protect trade secrets, and a technical expert rebutting the usefulness and value of the trade secret documents.

After the government rested, Mr. Ding moved for a judgment of acquittal as to the Economic Espionage counts pursuant to Federal Rule of Civil Procedure 29(a), which the Court took under advisement. Trial Tr. 1774:23-1777:20. Mr. Ding renewed his Rule 29(a) motion as to the Economic Espionage counts after the close of all evidence, as well as moved for a judgment of acquittal as to the Trade Secret counts, both of which the Court took under advisement. Trial Tr. 2013:7-2014:11.[2]

The case was submitted to the jury on January 28, 2026. The verdict form instructed the jury to identify which of the 105 trade secret documents and seven compilations it unanimously agreed constituted trade secrets. Dkt. 367. On January 29, 2026, the jury returned a verdict of guilty on all 14 counts, noting on the special verdict form that it had agreed unanimously as to only 15 of the 112 trade secrets. Specifically, the jury based its verdicts on only the following:

- Counts One and Eight: "Combination of all documents in Category One";
- Counts Two and Nine: "Combination of all documents in Category Two";
- Counts Three and Ten: "Combination of all documents in Category Three";

---

[2] Mr. Ding incorporates by reference his Rule 29(a) arguments made on January 26 and 27, 2026. References to trial testimony are denoted as "Trial Tr." in this memorandum and are set forth for this Court's reference in Ex. C to the Fondo Decl.

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT OF ACQUITTAL
CASE NO. 3:24-CR-00141-VC

- Counts Four and Eleven: Exhibits 402, 407, 408, and 410;

- Counts Five and Twelve: Exhibits 429, 431, and 434;

- Counts Six and Thirteen: "Combination of all documents in Category Six"; and

- Counts Seven and Fourteen: Exhibits 448, 451, 461, and 462.

Dkt. 367.

## **RULE 29 MOTION**

### I.   **LEGAL STANDARD**

Federal Rule of Criminal Procedure 29(a) provides that "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Rule 29(c) further provides that "[a] defendant may move for a judgment of acquittal, or renew such a motion . . . after a guilty verdict" and "[i]f the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal."

The evidence is insufficient to support a conviction if, when viewing the evidence in the light most favorable to the government, a "rational trier of fact could [not find] the essential elements of the crime beyond a reasonable doubt." *United States v. Milwitt*, 475 F.3d 1150, 1154 (9th Cir. 2007) (internal quotations and citation omitted) (reversing conviction for bankruptcy fraud upon conclusion that evidence was insufficient to sustain the verdict); *United States v Katakis*, 800 F.3d 1017, 1022-23 (9th Cir. 2015) (affirming order granting Rule 29 motion upon finding evidence was insufficient to convict appellee of obstruction of justice). "Although the [g]overnment is entitled to every reasonable inference from the evidence, a conviction may not be based on mere speculation." *Katakis*, 800 F.3d at 1024. "[A] reasonable inference is one that is supported by a chain of logic, rather than mere speculation dressed up in the guise of evidence." *Id.* That is because "mere suspicion or speculation does not rise to the level of sufficient evidence." *United States v. Lopez*, 484 F.3d 1186, 1201 (9th Cir. 2007).

## II.    ARGUMENT

### A.    The Government Failed to Prove the Essential Elements of Economic Espionage as to Intent and Knowledge (Counts Eight through Fourteen).

The Court must acquit Mr. Ding on Economic Espionage because the government has failed to prove beyond a reasonable doubt that Mr. Ding held the requisite intent and knowledge.

#### 1.    The Economic Espionage Jury Instruction Should Have Provided that the Government Must Prove Activity Coordinated With or Sponsored by Foreign Government, Which the Government Failed to Prove.

The Economic Espionage Act, codified at 18 U.S.C. § 1831, provides:

> [w]hoever, intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent, knowingly . . . (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains a trade secret; (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys a trade secret; [or] (3) receives, buys, or possesses a trade secret, knowing the same to have been stolen or appropriated, obtained, or converted without authorization.

18 U.S.C. § 1831(a)(1)–(3).

There is a split in authority about whether this provision requires proof that the relevant foreign government or foreign instrumentality sponsored or coordinated the theft of the trade secrets in order to demonstrate the defendant took trade secrets "intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent." 18 US.C. 1831(a). One Ninth Circuit opinion and one Second Circuit opinion have held that such sponsorship or coordination is not required. *United States v. Chung*, 659 F.3d 815 (9th Cir. 2011); *United States v. Zheng*, 113 F.4th 280 (2d Cir. 2024).

But another Ninth Circuit Opinion, a Third Circuit opinion, and two district courts have concluded otherwise. In *United States v. Liew*, in contrasting Theft of Trade Secrets under 18 U.S.C. § 1832 and Economic Espionage under 18 U.S.C. § 1831, the Ninth Circuit explained that "§ 1832 'is a general criminal trade secrets provision' requiring that the benefit be 'economic,' while § 1831 'is designed to apply only when there is evidence of foreign government sponsored

5

or coordinated intelligence activity' and may involve 'any manner' of benefit." 856 F.3d 585, 597 (9th Cir. 2017) (quoting *United States v. Hsu*, 155 F.3d 189, 195 (3d Cir. 1998)). For this proposition, the *Liew* decision relied upon *United States v. Hsu*, a Third Circuit opinion that discussed the legislative history for the Economic Espionage Act and concluded that such "history indicates that § 1831 is designed to apply only when there is 'evidence of foreign government sponsored or coordinated intelligence activity.'" *Hsu*, 155 F.3d at 195.

Two district court opinions have likewise concluded that the government must establish that the defendant coordinated with a foreign government in order to prove the requisite intent under § 1831. In *United States v. Lan Lee*, the court explained that the legislative history, structure of the Economic Espionage Act, and plain meaning of "espionage" supported a requirement that the government prove that a defendant's activity was sponsored or solicited by a foreign government. 2010 WL 8696087, at *4-6 (N.D. Cal. May 21, 2010). The court granted the defendant's Rule 29(c) motion where the evidence showed only that Defendants intended to benefit a private company in the PRC and "[t]here was no evidence that any of Defendants' conduct was solicited, sponsored, [or] coordinated by a representative of the PRC." *Id.* at *7-8. And in *United States v. Jin*, the Northern District of Illinois granted a defendant's Rule 29(c) motion regarding Economic Espionage charges where the evidence showed that the defendant lied to her employer, Motorola, in order to steal thousands of documents regarding telecommunications technology before quitting, with the intent of flying with Motorola's documents to China to share them with her new employer, a private Chinese telecommunications company that developed telecommunications for the Chinese military. 833 F. Supp. 2d 977, 1019 (N.D. Ill. 2012). The Court explained that "[t]he Government put forth no evidence that [defendant] was asked or directed to take the trade secrets, and . . . the evidence did not establish that [defendant] had planned to give the trade secrets to [a foreign instrumentality]." The Court further explained that the defendant planned to share the documents with her private employer and the documents concerned outdated documents the military was not interested in, and included only passing references to technologies relevant to the Chinese military. *Id.* at 19-20.

The jury thus should have been instructed that in order to conclude that Mr. Ding intended

6

to benefit a foreign government or foreign instrumentality, the government was required to prove that Mr. Ding coordinated with or was directed by a foreign instrumentality. Mr. Ding requested such an instruction, but the Court rejected this request. Trial Tr. 2056:4-2058:23. The defense previously filed a motion to dismiss the indictment on similar grounds, which the Court denied. Dkts. 54, 63, 77, 105.

At trial, the government presented no evidence of any solicitation by or coordination with the PRC under the standard that should have been included in the jury instructions. The government presented no evidence that Mr. Ding was solicited by, directed by, or worked in coordination with the Chinese government or its instrumentalities in taking the trade secrets. Indeed, the government's witnesses conceded that they found no evidence that Mr. Ding had shared the trade secrets with anyone, including the PRC. Mr. Crain, the government's computer forensics expert, testified that he found no evidence that Mr. Ding had shared or used the trade secrets. Trial Tr. 478:21-480:15. Similarly, Agent Valladao testified that the government found no evidence that Mr. Ding had disseminated or used the trade secrets or that he had received any payments for the trade secrets. Trial Tr. 784:10-785:2, 786:19-23, 787:7-12.

Under a jury instruction reflecting the requirement that the government prove that Mr. Ding coordinated with the PRC, no rational juror could have concluded beyond a reasonable doubt that Mr. Ding is guilty of Economic Espionage. Accordingly this Court should order that Mr. Ding be acquitted on Counts Eight through Fourteen.

**2.    There Is Insufficient Evidence that Mr. Ding Had the Requisite Intent at the Time that the Trade Secrets Were Taken.**

Under the jury instructions given, the government failed to prove the requisite intent at the time of the key acts. The instructions provided that, to establish Economic Espionage, the government must prove four elements beyond a reasonable doubt:

> **First**, the category of information at issue in the particular count contained one or more trade secrets (with each of you agreeing on which specific document or documents meet the definition); and

> **Second**, the defendant knew that the document or documents included confidential information that he had no right to take; and

> **Third**, the defendant knowingly: (a) took the trade secret information

7

without authorization; or (b) without authorization copied, downloaded, uploaded, or transmitted the trade secret information; and

> **Fourth**, the defendant ***intended or knew*** that his actions would benefit a foreign government or foreign instrumentality.

Dkt. 362 at 19 (Instruction No. 16) (emphasis added).

Under longstanding common law, "[i]t is fundamental that a person is not criminally responsible unless criminal intent accompanies the wrongful act" such that the defendant must have the necessary intent at "the time" that the criminal act was undertaken. *Gasho v. United States*, 39 F.3d 1420, 1429 (9th Cir. 1994). "There must be a 'concurrence of an evil-meaning mind with an evil-doing hand.'" *United States v. Hernandez*, 859 F.3d 817, 823 (9th Cir. 2017) (*quoting Morissette v. United States*, 342 U.S. 246, 251 (1952)). This is just as true for Economic Espionage as it is for other crimes. *Lan Lee*, 2010 WL 8696087, at *7 (the government must show that the defendant "acted intending to turn over possession of the trade secret[s] to or use the trade secret[s] on behalf of or for the benefit of an agent or instrumentality of the PRC"); *Jin*, 833 F. Supp. 2d at 1016 (in an Economic Espionage case, the key inquiry is the defendant's "intent at the time of the offense").

The relevant criminal acts here are Mr. Ding's four uploads of Google documents between May 2022 and April 2023, and his intent and knowledge at that time as it pertains to the Chinese government or its instrumentalities. Per the government's evidence, these uploads occurred between May 2022 and April 2023, specifically on May 21, 2022; June 1, 2022; June 3, 2022; and April 17, 2023. Trial Ex. 767. [3] But these acts were unaccompanied by the requisite intent because the government's evidence also showed that the first date that Mr. Ding or Zhisuan showed any awareness about PRC instrumentalities was not until more than five months later. The earliest evidence of any discussion by Mr. Ding of PRC instrumentalities occurred on September 27-28, 2023, when Mr. Ding discussed Chongqing Liang in a WeChat with a colleague. Trial Ex. 1178 at 33-35; Trial Ex. 1018. All other evidence relating to the alleged PRC instrumentalities occurred between October and December 2023, well after the uploads had taken place. *See* Trial Tr. 721-65;

---

[3] References to trial exhibits are denoted as "Trial Ex." in this memorandum and are set forth for this Court's reference in Ex. E to the Fondo Decl.

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT OF ACQUITTAL
CASE NO. 3:24-CR-00141-VC

Trial Exs. 1158, 1156, 1143, 1034, 336, 1052, 1002, 1003, 1160; *see also* WeChats at Trial Exs. 1125 at 198, 236; 1135 at 107, 110, 130, 223; 1150 at 3. For example:

- Mr. Ding was photographed with the deputy mayor of Shanghai around November 3 or 4, 2023. Trial Tr. 752:1-18; Trial Ex. 336.
- Mr. Ding submitted a personal statement for an application for a government-sponsored talent program in late November to early December 2023. Trial Tr. 762:2-765:7; Trial Ex. 1160.
- Mr. Ding shared a list of potential Zhisuan customers, including PRC entities, with his colleagues on December 26, 2023. Trial Tr. 759:5-762:1; Trial Ex. 1003; Trial Ex. 1125 at 236.

In sum, the evidence of Mr. Ding's earliest intent to work with a PRC instrumentality showed it was in late September 2023, more than one year after the first three uploads, and more than five months after the fourth and last upload. Notably, for Counts Seven and Fourteen, each one of the four trade secrets checked (Exhibits 461, 462, 448, and 451) was downloaded on June 1, 2022 or June 3, 2022, approximately *16 months* before the late September 2023 chat. *See* Appendix 1.

The government thus failed to present evidence that Mr. Ding possessed any intent to benefit a foreign government or foreign instrumentality at the time that he undertook the acts supporting the charged offense—his uploads of the trade secrets. Any intent that occurs afterwards—in this case, long after the operative criminal act—is insufficient to support the finding of a crime. *See Hernandez*, 859 F.3d at 824-25 (reversing conviction where jury instructions and other trial events may have led the jury to find defendant guilty based upon intent that developed only after the charged crime occurred); *Gasho*, 39 F.3d at 1430 (holding in lawsuit against federal agents that agents had no probable cause to arrest plaintiffs where there was no evidence they had the required intent at the time that they took logs from an airplane that had been seized by customs agents). The relevant portion of the jury instruction requires that temporal link—"the defendant knowingly: (a) took the trade secret information without authorization; or (b) without authorization copied, downloaded, uploaded, or transmitted the trade secret information; and Fourth, **the defendant intended or knew that his actions** would benefit a foreign government or foreign instrumentality." Dkt. 362 at 19 (Instruction No. 16) (emphasis added.).

To the extent the government argues that later events qualify as operative criminal acts, it

9

is mistaken. First, e.g., the government made no allegation regarding the December 14, 2023 download of trade secrets from his Google drives to his personal computer in the Second Superseding Indictment. *See* SSI generally. Accordingly, to consider this an operative criminal act would require an impermissible constructive amendment to, or variance from, the Second Superseding Indictment in violation of the Fifth Amendment right to stand trial only on charges made by a grand jury. *See, e.g., United States v. Adamson*, 291 F.3d 606, 615-16 (9th Cir. 2002) (explaining the difference between constructive amendment and variance, and holding there was a variance from the indictment requiring reversal where the government charged one misrepresentation and presented evidence of a different misrepresentation at trial).

Second, possession is not an operative criminal act, either. While the government did initially allege that Mr. Ding's mere possession of the trade secrets was a violation of Section 1831, SSI ¶ 46(c), it later abandoned that position. The government proposed that the Economic Espionage jury instruction include possession as one of the three ways that Mr. Ding may have converted the trade secrets. Dkt. 175 at 54-55; *see also id.* at 65 (defining "possession"). But the Court removed the possession language from its proposed instructions. Dkt. 340 at 19; Dkt. 345 at 19. The government did not object at the charging conference to such removal, consistent with its theory of the case. *See generally* Trial Tr. 2027:7-2086:12. The final jury instruction thus listed the third element of Economic Espionage as follows: "the defendant knowingly: (a) took the trade secret information without authorization; or (b) without authorization copied, downloaded, uploaded, or transmitted the trade secret information[.]" Dkt. 362 at 19 (Instruction No. 16).

Additionally, the government's theory of its case as reflected in its closing and rebuttal arguments shows that it believed Mr. Ding's relevant criminal acts to be the "multiple mass uploads to his personal Google Drive account" between May 2022 to April 2023. *See* Trial Tr. 2115:7-14, 2117:7-10, 2117:18-21, 2120:18-25, 2218:19-22. The government made no argument whatsoever about the legal significance of Mr. Ding's continuing possession of the trade secrets. Indeed, the government made clear that it was focusing on Mr. Ding's taking of the documents and not his continued possession: "[T]he question you have to answer is what he intended to do with them *when he stole them*[.]" Trial Tr. 2213:8-10 (emphasis added). As noted above, he stole them well

10

before any awareness about PRC instrumentalities. Though the government mentioned Mr. Ding's December 14, 2023, download of documents from his personal Google Drive account to his personal laptop, the government argued only that this was evidence that Mr. Ding had been untruthful when he signed a self-deletion affidavit for Google on December 8, 2023, not that this was an operative date of theft. Trial Tr. 2149:6-13.

No rational juror could have concluded beyond a reasonable doubt that Mr. Ding intended to benefit a foreign instrumentality at the time he took trade secrets from Google, which is necessary to find Mr. Ding guilty of Economic Espionage. Accordingly this Court should order that Mr. Ding be acquitted on Counts Eight through Fourteen.

### 3.   Intent to Benefit a Private Chinese Company Does Not Satisfy Intent.

The evidence relevant to Mr. Ding's intent shows, at best, that at the time of the operative criminal acts he intended no more than to benefit himself and Zhisuan, a private Chinese company, not the Chinese government or any instrumentality of it. This is inadequate to prove intent.

The jury instructions defined "foreign instrumentality" as "any agency, bureau, ministry, component, institution, association, or any legal, commercial, or business organization, corporation, firm, or entity that is substantially owned, controlled, sponsored, commanded, managed, or dominated by a foreign government." Dkt. 362 at 19-20 (Instruction No. 16). The jury instructions further provided that "it is not enough for the government to prove that the defendant intended to benefit himself or Zhisuan. Nor is it enough for the government to prove that the defendant intended or knew that his conduct would benefit the country of China or its economy in a way that might generally flow from engaging in economic activity there. Rather, to obtain a conviction for economic espionage, the government must prove beyond a reasonable doubt that the defendant either: (1) intended his actions to confer a benefit on an instrumentality of the Chinese government; or (2) knew that his actions would confer a benefit on an instrumentality of the Chinese government." *Id.*

The government failed to meet the requirements of this instruction because there was no evidence at trial that Mr. Ding intended to benefit the Chinese government or an instrumentality. At most the evidence shows that Mr. Ding elicited funding for his company, Zhisuan, based upon

11

inflated representations about his ability to build an AI supercomputer. As discussed above, the government's witnesses admitted that they found no evidence that Mr. Ding had shared, used, or been paid for the trade secrets. *Supra* at 7. Further, lead FBI Special Agent Valladao testified that Zhisuan had developed no product to sell as of August 2023. Trial Tr. 795:15-796:14. Dr. Sanchez confirmed that Zhisuan did not build a product, not to mention an AI supercomputer. Trial Tr. 1401:11-16. Agent Valladao further admitted that the open-source code that Zhisuan used for its proof of concept of the purported product contained no Google trade secrets, and that the R&D Group WeChat records of Zhisuan's engineers contained discussions of only open-source technology, and no discussion of the trade secrets. Trial Tr. 840:4-20; Trial Tr. 832:14-838:9. Indeed, as Agent Valladao testified, Zhisuan's core team was focused on marketing and fundraising, not on building an AI supercomputer. Trial Tr. 799:18-801:2, 804:6-24. And, Agent Valladao admitted such efforts were unsuccessful. Trial Tr. 806:4-12. The witnesses further testified that the trade secrets would not be adequate to build Google's AI supercomputer, and that Google's technology, referred to as a tech island, made it much more challenging to replicate anything absent replication of the entire system. Trial Tr. 1372:22-25, 1385:23-1386:8, 1387:18-23, 1585:1-1586:4, 1802:14-24. The government's witnesses also made clear that building an AI supercomputer requires extraordinary resources. Trial Tr. 1554:9-1555:5, 1578:1-4, 104:6-9, 107:23-108:1.

It would not be enough for Mr. Ding to intend that the trade secrets benefit himself and Zhisuan, and only indirectly benefit the Chinese government. In *Lan Lee*, a case factually similar to the current case, the government presented evidence that Defendants intended to use the trade secrets in a private company in the PRC and that Defendants intended to apply for $3.5 million in funding from a PRC program to fund their initial development. 2010 WL 8696087, at *7. The court noted that "there was no evidence that Defendants intended or were required as a condition of the grant to transfer any technology to the PRC" and no evidence of a venture capital relationship such that the PRC would benefit from a private corporation's use of trade secrets. *Id.* at *8. The Court granted defendants' Rule 29 motion because this sort of indirect intent is inadequate: the government is required to "present[] evidence upon which a rational trier of fact could find that

12

Defendant[] acted intending to turn over possession of the trade secret to or use the trade secret on the behalf or for the benefit of an agent or instrumentality of the PRC" and "[e]vidence that Defendant[] solely intended to benefit [himself] in the PRC, or benefit a private corporation in the PRC is insufficient for the charge of Economic Espionage." *Id.* And in *Jin*, the court granted a defendant's Rule 29(c) motion regarding Economic Espionage charges, explaining that "the evidence did not establish that [defendant] had planned to give the trade secrets to [a foreign instrumentality]" where the evidence showed only that defendant planned to share the documents with her private employer. 833 F. Supp. 2d at 1019-20. The Chinese military was her employer's client, but the documents concerned outdated technology the military was not interested in and included only passing references to technologies relevant to the Chinese military. *Id.*

The same is true here as in *Lan Lee* and *Jin*. The government did not present any evidence that the PRC or an instrumentality took an ownership interest in Zhisuan, or that Zhisuan was required to transfer technology to the PRC or an instrumentality in exchange for funding or otherwise. The closest the government came was a draft strategic agreement between Zhisuan and the Tianfu Institute of Research and Innovation that vaguely referenced "the transfer and transformation of scientific and technological achievements," but the agreement is not executed. Trial Ex. 1002. Though other evidence suggests *an* agreement was later executed, the government presented no evidence about the terms of any agreement that was actually entered into, instead asking the jury to speculate that the draft strategic agreement was later signed. Trial Tr. 758:25-761:1. Nor did the government present evidence that the technology that was the subject of the trade secrets, rather than AI writ large, was of any interest or relevance to the PRC or instrumentality. The government has failed to prove the requisite intent. Accordingly, this Court should order that Mr. Ding be acquitted on Counts Eight through Fourteen.

> **4.    The Jury Instruction Regarding Economic Espionage Should Have Required the Jury to Find Mr. Ding Knew The Documents Included Trade Secrets, Which the Government Failed to Prove.**

Section 1831 provides for a fine or imprisonment for one who "knowingly—(1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains a trade secret; [or] (2) without authorization copies, duplicates, sketches, draws,

13

photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys a trade secret." Under this language, the defense argued that the Economic Espionage instruction should require the government to prove that the defendant knew that the documents included trade secrets. Trial Tr. 1850:15-1859:8. The Court disagreed and instructed the jury that the government was required to prove only that "the defendant knew that the document or documents included confidential information that he had no right to take." Dkt. 362 at 19-20 (Instruction No. 16).

Courts are split as to whether the government must prove that the defendant knew the information he or she took was a trade secret. In *United States v. You*, the Sixth Circuit held the government need not prove that the defendant knew he was taking a trade secret and it is enough to show that the defendant knew he was taking confidential information. 74 F.4th 378, 393 (6th Cir. 2023). In *United States v. Chung*, on the other hand, the court concluded that the language of Section 1831 required the government to prove that the defendant had knowledge that the misappropriated information constituted a trade secret. 633 F. Supp. 2d 1134, 1143 (C.D. Cal. 2009). The court reasoned that traditionally a crime requires mens rea, and the mens rea of a crime extends to each element of that crime. *Id.* Accordingly, "[w]hether the information was a trade secret is the crucial element that separates lawful from unlawful conduct. Possession of open-source or readily ascertainable information for the benefit of a foreign government is clearly not espionage. The essence of economic espionage is the misappropriation of trade secret information for the benefit of a foreign government." *Id.* at 1145. And in *Jin*, the Northern District of Illinois agreed with *Chung* and concluded that "knowingly" modifies "trade secret" such that the government must "prove that a defendant knew, as a factual matter, that the information she possessed had the general attributes of a trade secret." *Jin*, 833 F. Supp. 2d at 1012.

The defense maintains that *Chung* and *Jin* are correct and the jury should have been instructed that it must find the defendant knew he was taking a trade secret. Under the appropriate instruction that the defense requested, the government failed to meet its burden as to many if not all of the documents underlying the jury's verdicts. As to all Categories, no document was marked "L4," Google's category for its "secrets." Trial Tr. 364:4-19. As to Category Four, the evidence

14

shows that some of the source documents for Exhibit 410 had no confidential markings, and some source documents were shared with more than 160,000 people. Trial Ex. 1195 at 13-14; Trial Tr. 151:22-25, 182:3-25, 220:11-25, 1649:1-7. As to Category Five, the evidence shows that none of the source documents for the exhibits checked in the verdict form (Exhibits 429, 431, 434) included confidential markings, and that Exhibit 431 was shared with more than 160,000 people. Trial Ex. 1195 at 16, 18; Trial Tr. 1649:1-7. And as to Category Seven, the evidence shows that some of the source documents for the exhibits checked in the verdict form (Exhibits 461, 462, and 451) had no confidential markings, and that some source documents (relating to Exhibit 462) were shared with more than 160,000 people. Trial Ex. 1195 at 21-22; Trial Tr. 1649:1-7.

Under a jury instruction reflecting the requirement that the government prove that Mr. Ding knew that the documents he took included trade secrets, no rational juror could have concluded beyond a reasonable doubt that Mr. Ding is guilty of Economic Espionage for any exhibits, as none was marked as an L4 secret. Even if that were not dispositive, there was a failure of proof as to exhibits that had no outward markings of confidentiality. Indeed, the testimony of Mr. Pooley and Google's Ms. Adkins and Mr. Linton (discussed *infra*) showed that Google's marking system was so flawed that Mr. Ding could not have known the documents were Google's trade secrets.

Accordingly, this Court should order that Mr. Ding be acquitted on all Economic Espionage Counts, or in the alternative, Counts Four, Five, Seven, Eleven, Twelve, and Fourteen.

**B.    The Government Failed to Prove the Essential Elements of Theft of Trade Secrets as to Mr. Ding's Intent (Counts One through Seven).**

The Court must acquit Mr. Ding on the charges of Theft of Trade Secrets because the government has failed to prove beyond a reasonable doubt that Mr. Ding had the requisite intent.

The government alleges in Counts One through Seven that Mr. Ding committed Theft of Trade Secrets as to seven categories of trade secrets. SSI at ¶¶ 43-44. In order to establish Theft of Trade Secrets, the government must prove beyond a reasonable doubt, *inter alia*, that "the defendant intended to take the trade secret information for the economic benefit of anyone other than Google" and "the defendant intended or knew that the offense would injure Google." Dkt. 362 at 16 (Instruction No. 15).

15

The government failed to prove that Mr. Ding had the requisite intent for Theft of Trade Secrets—for the trade secrets in a particular category to benefit someone other than Google *and* that the offense would injure Google—because there is no evidence that Mr. Ding disseminated or used the information. The absence of evidence that Mr. Ding disseminated or used the information goes to the absence of evidence of intent to benefit someone other than Google and to injure Google. The government's evidence showed that Mr. Ding uploaded the trade secrets from his Google laptop to his personal shared drive beginning in May 2022 and ending in April 2023. Trial Ex. 767. But the government presented no evidence that Mr. Ding used the trade secrets at any time, or that he used deceptive means when uploading these documents.

The government provided affirmative testimony that they found no evidence that Mr. Ding had shared or used the trade secrets. Trial Tr. 478:21-480:15, Trial Tr. 784:10-785:2, 786:19-23. They provided affirmative testimony that Mr. Ding applied for a patent in China with Rongshu, but the patent contained no Google trade secrets. Trial Tr. 790:20-22. The government examined the proof of concept of the product that Zhisuan was attempting to market and found no Google trade secrets in those materials. Trial Tr. 840:4-20. The government's witnesses also testified that Rongshu had no success in raising funds and that not a single investor had signed a term sheet with Zhisuan other than MiraclePlus. Trial Tr. 806:4-12; Trial Tr. 790:23-791:8. Indeed, the government's witness testimony shows that Mr. Ding was incapable of building an AI supercomputer replicating Google's technology, Google was a "tech island," and that Mr. Ding never did build an AI supercomputer. *Supra* at 12. Further, Mr. Ding did not use deceptive means in connection with the uploads. For example, he did not alter the file names, and he uploaded the materials using his Google-issued computer he knew was subject to monitoring. Trial Ex. 777; Trial Tr. 447:24-448:2.

Instead of presenting evidence that Mr. Ding had actually used the trade secrets, the government suggested that Mr. Ding took the trade secrets to keep in his back pocket for his job search and to use in recruiting investors. But contrary to the government's speculation, the fact that Mr. Ding held on to rapidly aging trade secrets without using them for between six and 18 months after he took them, while Rongshu and Zhisuan floundered, is entirely inconsistent with an intent

16

to take the trade secrets to injure Google and to benefit someone other than Google. If Mr. Ding had taken the trade secrets with that intent, surely he would have used them to help his failing companies. The government's speculation, particularly considering the evidence that contradicts it, falls short of the government's burden to prove Mr. Ding's intent beyond a reasonable doubt. *See United States v. Goyal*, 629 F.3d 912, 921 (9th Cir. 2010) (holding that speculative testimony about fraudulent intent was inadequate to support conviction, especially where it contradicted other evidence); *United States v. Shiah*, 2008 WL 11230384, at *21-22 (C.D. Cal. Feb. 19, 2008) (acquitting defendant following bench trial because there was insufficient evidence of intent to benefit anyone else where the defendant never accessed the files after copying them and had obtained them through means that appeared to be in the normal course of employment).

In light of the above, no rational juror could conclude beyond a reasonable doubt that Mr. Ding is guilty of Theft of Trade Secrets. Accordingly this Court should order that Mr. Ding be acquitted on Counts One through Seven.

**C.    The Government Failed to Prove the Essential Elements of a Trade Secret (All Counts).**

To establish Theft of Trade Secrets and Economic Espionage, the government must prove (among other things) that each category of information that Mr. Ding is charged with converting includes one or more trade secrets. Dkt. 362 at 16-17 (Instruction Nos. 15 & 16). To prove a "trade secret" the jury must find three elements are satisfied:

**First**, the information is not generally known to or readily ascertainable through proper means by another person who can obtain economic value from it; and

**Second**, the owner of the information has taken reasonable measures to keep such information secret; and

**Third**, the information derives independent economic value, actual or potential, from being secret.

Dkt. 362 at 14 (Instruction No. 13).

17

**1.    The Government Failed to Prove Google Took Reasonable Measures to Protect the Trade Secrets (All Counts).[4]**

No rational juror could conclude beyond a reasonable doubt that Mr. Ding is guilty of Theft of Trade Secrets or Economic Espionage because the government presented insufficient evidence that Google took reasonable measures to protect its trade secrets. The jury found Mr. Ding guilty of stealing 15 trade secrets including combinations; the jury made no such finding as to the remaining 97 trade secrets. Of the 15 trade secrets, four were combination trade secrets only— Categories One, Two, Three, and Six. Thus, the issue is whether the evidence showed beyond a reasonable doubt that Google took reasonable measures as to trade secret Exhibit Nos. 402, 407, 408, 410, 429, 431, 434, 448, 451, 461, 462, and the combinations of Categories One through Three, and Six.

The government called two Google employees to testify about Google's protection measures: Heather Adkins, Google's VP of Security Engineering, and Matt Linton, Google's Lead for Security Response & Incident Management. Ms. Adkins and Mr. Linton testified that Google disseminates some "confidential materials" to more than 100,000 or even 190,000 employees. Trial Tr. 220:11-25, 242:6-8, 370:3-5. Ms. Adkins further testified that materials are sometimes authorized to be shared more broadly than they should be, including at least one trade secret document that Ms. Adkins told the government had been overshared. Trial Tr. 248:9-249:22, Trial Tr. 250:24-251:1. Ms. Adkins further testified that employees may mislabel documents and that under Google's system, documents that were not marked as confidential could be confidential or they could be public, and that documents that were marked confidential could be confidential or they could be public. Trial Tr. 267:3-18. Both Ms. Adkins and Mr. Linton testified that most of the trade secret documents were not marked to be confidential. Trial Tr. 256:7-12; Trial Tr. 363:25-364:3. Ms. Adkins did not testify about Google's protective measures specifically as to the trade secret documents the jurors marked for Counts Four, Five, Seven, Ten, Eleven, and Fourteen (Exhibit Nos. 402, 407, 408, 410, 429, 431, 434, 448, 451, 461, 462). And at no time did Ms.

---

[4] Attached hereto as Appendix B is a table summarizing why there is insufficient evidence that that individual exhibits the jury identified as trade secrets qualify as such.

18

Adkins or Mr. Linton testify regarding the protective measures Google undertook as to the combinations of documents, particularly given that many of the constituent documents were labeled and treated differently under Google's protective measures. "When dealing with compilations that are alleged to be trade secrets," as the compilations in Counts One, Two, Three, Six, Eight, Nine, Ten, and Thirteen are, the question is "whether the owner took reasonable steps to maintain the secrecy of the compilation as a whole, not whether it maintained the secrecy of individual pieces of information that were used to create the compilation." *See Barrett Bus. Servs., Inc. v. Colmenero*, 2025 WL 2048985, at *2 (9th Cir. July 22, 2025) (citing *Experian Info. Sols., Inc. v. Nationwide Marketing Servs. Inc.*, 893 F.3d 1176, 1188 (9th Cir. 2018)).

The government presented no expert to testify regarding reasonable measures. On the other hand, the defense's expert, James Pooley, testified that industry standards require that documents include clear and consistent labels. Trial Tr. 1448:8-16. Mr. Pooley further testified that a policy providing that all information is to be considered confidential, like Google's policy, is ineffective: "If everything is confidential, then nothing is confidential." Trial Tr. 1449:21-1450:1.

In light of the above, no rational juror could conclude beyond a reasonable doubt that Mr. Ding is guilty of Theft of Trade Secrets and Economic Espionage. Accordingly, this Court should order that Mr. Ding be acquitted on all counts.

### 2. The Government Failed to Prove that Category Three, Category Five, and Category Seven are Non-Public (Counts Three, Five, Seven, Ten, Twelve, and Fourteen).

No rational juror could conclude beyond a reasonable doubt that Mr. Ding is guilty of Theft of Trade Secrets or Economic Espionage to the extent the government has failed to prove that the trade secrets are non-public.

Dr. Sanchez repeatedly admitted during his testimony that the trade secret documents include public information. Though he testified that none of the 105 trade secret documents was publicly available in their entirety, he also provided broad testimony that "Google has published some high-level information about some of these systems" and that "[i]n general, these documents have some public information." Trial Tr. 983:20-22, 984:2-6, 1390:2. And, he repeatedly testified that various trade secret materials were public. *E.g.*, Trial Tr. 1359:3-1360:4, 1366:17-1367:25,

19

1382:11-1384:1, 1389:24-1390:5. The trade secret documents or combinations as a whole thus cannot satisfy the requisite elements of a trade secret; the government was required to identify particular portions of the trade secret documents that are "actually secret" to permit the jury the ability to adequately assess the evidence.

But the government failed to do so for many documents and combinations. Instead, it elicited only broad testimony regarding whether a document or combination of documents included non-public information.

**Category 3.** Dr. Sanchez testified that none of the documents in Category 3 are fully publicly available. Trial Tr. 1116:12-14. He further testified that the combination of all of the information in Category 3 is not publicly available. Trial Tr. 1134:5-9. He did not, however, testify that any particular portion of any particular document in Category 3 was not publicly available.

**Category 5**. Dr. Sanchez testified that each document in Category 5 contains some non-public information, inferring each also contained public information. Trial Tr. 1164:17-19. He further testified that the combination of all of the information in Category 5 is not publicly available. Trial Tr. 1176:14-18. He did not, however, testify that any particular portion of any particular document in Category 5 was not publicly available.

**Category 7**. Dr. Sanchez testified that each document in Category 7 contains some non-public information again, inferring that each also contained public information. Trial Tr. 1204:17-20. He further testified that the combination of all of the information in Category 7 is not publicly available. Trial Tr. 1214:7-10. He did not, however, testify that any particular portion of any particular document in Category 7 was not publicly available.

The government has thus failed to carry its burden to establish that any particular material in these trade secret documents qualifies as a trade secret.[5] In light of the above, no rational juror could conclude beyond a reasonable doubt that Mr. Ding is guilty of Theft of Trade Secrets and Economic Espionage as to Category Three, Category Five, and Category Seven. Accordingly, Mr. Ding should be acquitted on such Counts and related Counts Ten, Twelve, and Fourteen.

---

[5] Though the government addressed the non-public nature of some portions of Exhibit 402 under Category Four, it did not address the non-public nature of any particular portion of Exhibits 407, 410, or 408 under Category 408. Trial Tr. 1144:16-17, 1161:5-9.

20

**3.** **The Government Failed to Prove the Essential Elements of a Trade Secret as to the Combination Trade Secrets (Counts One, Two, Three, Six, Eight, Nine, Ten, and Thirteen).**

No rational juror could conclude beyond a reasonable doubt that Mr. Ding is guilty of Theft of Trade Secrets or Economic Espionage to the extent they relied on combination trade secrets.

**a.** **The Jury Instructions Should Have Required the Jury to Find that Google Maintained the Combination Trade Secrets, Which the Government Failed to Prove.**

In addition to the 105 trade secret documents individually, the government argued at trial that all of the documents in each of the seven categories constituted compilation trade secrets. Trial Tr. 2135:8-10. The Court accordingly instructed the jury as part of the Trade Secret instruction that "a group of individual trade secret documents can combine to make a separate trade secret, if the value of the combination is greater than the sum of its parts, and if the combination itself meets the definition of a trade secret as I have set forth." Trial Tr. 2102:25-2103:4.  The defense requested the addition of language providing that the jury must find that "in order to be a trade secret, each alleged combination trade secret must still meet each individual element of a trade secret, including that the owner took reasonable measures to maintain the secrecy of the combination as a whole," but the Court disagreed. Trial Tr. 2044:18-2045:4, 2047:16-17. The defense previously filed a motion in limine to exclude evidence of the combination trade secrets on this basis, which the Court also denied. Dkt. 155; Dkt. 292.

When the jury returned a verdict, it found Mr. Ding guilty of Counts One, Two, Three, Six, Eight, Nine, Ten, and Thirteen based upon solely the combination trade secrets and no individual trade secret documents. Dkt. 367 at 1-3, 6, 8-10, 13. Having found none of the individual documents to be trade secrets, these Counts must be evaluated under the law pertaining to compilations of non-confidential or public material.

The essence of a compilation trade secret is the *owner's* efforts to gather and organize the information for the *owner's* business use: "A trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but *the unified process, design and operation of which, in unique combination, affords a competitive advantage* and is a protectable secret." *3M v. Pribyl*, 259 F.3d 587, 595–96 (7th Cir. 2001) (emphasis added).

21

Accordingly, "[a] [combination-trade-secret] plaintiff must offer concrete evidence that *its business method* uniquely strung together certain elements in a particular way." *Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, 53 F.4th 368, 376, 380 (6th Cir. 2022) (cleaned up and emphasis added) (conferring trade secret protection upon a "curated collection of broccoli product research" that plaintiff had compiled over the course of nine years).

Criminal trade secret prosecutions illustrate just this—the government must present evidence that an alleged compilation is a particular combination that the *trade secret owner* prepared contemporaneously for its use in business. For example, in *United States v. Nosal,* the defendant was charged with trade secret theft for, among other things, downloading confidential information from his employer's database of information on over one million executives to use in defendant's own competing executive search firm. 844 F.3d 1024, 1030 (9th Cir. 2016), overruled on other grounds by *United States v. Sullivan*, 159 F.4th 579 (9th Cir. 2025). The database included data from public sources like LinkedIn, as well as non-public sources such as personal connections. *Id.* at 1030-31. The use of the database was central to the employer's executive search work. *Id.* The defendant argued that the data downloaded from the database was composed largely, if not entirely, of public information and therefore could not qualify as trade secrets. *Id.* at 1042. The Ninth Circuit disagreed, explaining that "[t]he fact that some or all of the components of the trade secret are well-known does not preclude protection for a secret combination, compilation, or integration of the individual elements" and that "a compilation that affords a competitive advantage and is not readily ascertainable falls within the definition of a trade secret." *Id.* (quoting Restatement (Third) of Unfair Competition § 39 cmt. f (1995)).

Similarly, in *United States v. O'Rourke*, the combinations were ones that the *trade secret owner* prepared contemporaneously for its use in business. 417 F. Supp. 3d 996, 1007 (N.D. Ill. 2019). In that case, the government grouped the documents into categories and brought three counts per category, but it did not itself define or construct the alleged trade secrets. In *O'Rourke*, the first category consisted of a single document, and categories two through five consisted of reports that were all saved in the same subfolder by the trade secret owner where each category consisted of documents of the same type, such as lab reports or alloy experiment data reports. *Id.; see also*

22

*United States v. O'Rourke,* No. 17-cr-00495, Dkt. 43 at 2-3 (N.D. Ill. Sept. 5, 2018).[6]

Here, in contrast, the government presented no evidence that Google compiled the particular combinations of information reflected in the combination trade secrets. When asked whether Google "ever stored and organized [the source documents] in a manner that reflects the alleged trade secret categories compiled by the Government," Mr. Linton said "I don't think I can really answer that." Trial Tr. 397:21-24. And Mr. Crain testified that he did not know much about how the government had grouped the 105 trade secret documents and could not testify about the groupings from memory. Trial Tr. 479:7-13. Indeed, instead of evidence that Google grouped the documents, or that the documents reflect a particular Google process, documents of disparate subject matter were included in the same category even though they were different kinds of documents, concerned different components or different versions of a vast system, were created at different times, had different labels, were authored by different people, and were part of much larger collections of documents. For example, Category 1 inexplicably includes ISAs from three different versions of Google's TPU. *See* Trial Ex. 775. Nor did any Google witness testify about the money and effort that Google expended to create the combination trade secrets that were the bases of the convictions for Counts One, Two, Three, Six, Eight, Nine, Ten, and Thirteen. The undisputed record and evidence is that the combination trade secrets were not created by Google at all but created by the government in the process of charging this case. *See* Dkt. 167 at 5 (admitting that "the government selected and organized a portion of the documents stolen by the defendant into trade secret categories").

The jury instruction should have directed the jury that it must find that Google maintained the combination trade secrets as compilations in order to conclude that they constituted trade secrets. Though the government chose seven categories, Mr. Ding uploaded the trade secret documents on four separate occasions and on each occasion he uploaded an assorted set of

---

[6] Civil cases also show that there must be evidence that an alleged compilation was prepared by the trade secret owner. *See, e.g., Vesta Corp. v. Amdocs Mgmt. Ltd.*, 2016 WL 8732371, at *6 (D. Or. Apr. 1, 2016) (requiring plaintiff to identify "how it combined the alleged methods and processes into a unique comprehensive payments solution"); *Integrated Cash Mgmt. Servs., Inc. v. Digit. Transactions, Inc.*, 732 F. Supp. 370, 376 (S.D.N.Y. 1989), aff'd, 920 F.2d 171 (2d Cir. 1990) (relying upon evidence that the "generic utilities were constructed in a specific manner in order that they be especially suited to the task they were to perform in a specific context").

documents that spanned multiples of the categories that the government later constructed. *See* Appendix 1. Under the instruction that should have been given, the government failed to prove that the combination trade secrets qualify as trade secrets. The government's *post hoc* combinations of information for the purposes of this prosecution, rather than Google's contemporaneous compilations of information to provide value in the operation of its business, do not qualify as combination trade secrets.

In light of the above, under the proper jury instruction, no rational juror could have concluded beyond a reasonable doubt that Mr. Ding is guilty of Theft of Trade Secrets or Economic Espionage based upon combination trade secrets. Accordingly this Court should order that Mr. Ding be acquitted on Counts One, Two, Three, Six, Eight, Nine, Ten, and Thirteen.

> **b.    Even Under the Given Jury Instruction, the Government Did Not Prove the Combination Trade Secrets Qualify as Trade Secrets Because It Did Not Address Them in Any Detail.**

No rational juror could conclude beyond a reasonable doubt that Mr. Ding is guilty of Theft of Trade Secrets or Economic Espionage based upon combination trade secrets consisting of documents that the government never showed the jury and for which the government failed to elicit any detailed testimony.

Before trial the defense moved to preclude the government from relying on entire documents as trade secrets without reasonable particularity regarding which portions are trade secrets. Dkt. 158. The Court denied the defense's motion as moot in light of the government's forthcoming identification of documents it planned to focus on at trial, explaining that, "if the government does not put on enough evidence to support a jury finding beyond a reasonable doubt that a given document is a trade secret, the Court may order the document to be excluded and instruct the jury that it cannot convict based on that document." Dkt. 292 at 2. The government later listed 33 trade secret documents that it would focus on at trial, though it insisted that it would introduce and elicit testimony regarding the other documents. Fondo Decl. Ex. D.

At trial, however, the government showed the jury and elicited detailed testimony about only 18 documents total (discussed in greater detail below), leaving 87 documents that were never

24

shown or explained to the jury. Instead, the government simply elicited testimony that summarized the 87 documents at a high level without referring to any specific portion, or simply summarized a group of documents at a high level without referring to any specific portion of a document. For example, Dr. Sanchez frequently testified at a high-level only about the "type of information" reflected in a document or group of documents rather than the actual specific trade secret information. *E.g.*, Trial Tr. 1027-28, 1101-04, 1133-34. Similarly, in other instances, Dr. Sanchez testified at a similarly high-level merely about a "sense of" what the documents address, what the documents "relate to," or at a "high level" about what the "technology is" that is reflected in the documents. *E.g.*, Trial Tr. 1129-33, 1170-72, 1175-76, 1213-14. And in most instances, Dr. Sanchez addresses large groups of documents all together, sometimes referring to specific exhibit numbers but often simply discussing unnamed "other documents" in the category. *E.g.*, Trial Tr. 1133-34, 1160-61, 1175-76, 1213-14.

The jury's verdict shows that the jury concluded that Mr. Ding was guilty of Counts One, Two, Three, Six, Eight, Nine, Ten, and Thirteen solely on the basis of the combination of all of the documents in Category One, Category Two, Category Three, and Category Six, and not on the basis of any individual document in those categories. But the jury could not conclude that all of the documents in each of these categories combined, constituted a trade secret when the jury was only shown 18 documents, and never shown or walked through the remaining 87 of these documents.

**Category One**. The jury found one trade secret in this category: the combination of all of the documents in the category. The jury did not find that any individual document in this category constituted a trade secret. This category consists of 16 documents spanning 902 pages. The government showed the jury only six of these documents: Exhibits 363, 372, 371, 373, 362, and 358. Trial Tr. 1014-19, 1020-22, 1022-26, 1030-35, 1035-43, and 1044-48. The remaining ten documents (Exhibits 359, 360, 361, 364, 365, 366, 367, 368, 369, 370) were not shown to the jury and Dr. Sanchez did little more than mention or summarize at a high level the remainder. Trial Tr. 1007 (walking through pages of Exhibit 363 but not Exhibits 364-70); Trial Tr. 1027-28 (testifying only about "type of information" in Exhibits 359, 360, and 361).

**Category Two**. The jury found one trade secret in this category: the combination of all of

25

the documents in the category. The jury did not find that any individual document in this category constituted a trade secret. This category consists of seven documents spanning 101 pages. The government showed the jury only two of these documents: Exhibits 374 and 377. Trial Tr. 1092-1100 and 1104-06. The remaining five documents (Exhibits 376, 379, 378, 380, and 375) were not shown to the jury and Dr. Sanchez did no more than summarize them at a high level. Trial Tr. 1101-02 (testifying at a high level about the "type of information" in Exhibits 376 and 375); Trial Tr. 1102-04 (testifying at a high level about the "type of information" in Exhibits 378, 379, and 380).

**Category Three**. The jury found one trade secret in this category: the combination of all of the documents in the category. The jury did not find that any individual document in this category constituted a trade secret. This category consists of 19 documents spanning 210 pages. The government showed the jury only one of these documents: Exhibit 383. Trial Tr. 1117-29. The remaining 18 documents (Exhibits 382, 384, 381, 385, 393, 394, 388, 390, 397, 398, 389, 396, 399, 387, 386, 395, 392, 391) were not shown to the jury and Dr. Sanchez did no more than summarize them at a high level. Trial Tr. 1129-33 (testifying "at a high level" about what the "technology is" that's reflected in Exhibits 390, 397, 398, 399, 392, and 391); Trial Tr. 1133-34 (testifying about the "type of information" contained in "other documents" listed in Trial Ex. 775).

**Category Six**. The jury found one trade secret in this category: the combination of all of the documents in the category. The jury did not find that any individual document in this category constituted a trade secret. This category consists of four documents spanning 51 pages. The government showed the jury only one of these documents: Exhibit 438. Trial Tr. 1187-97. The remaining three documents (Exhibits 437, 439, 440) were not shown to the jury and Dr. Sanchez did no more than summarize them. Trial Tr. 1197-98 (testifying generally about what is contained in the "other documents," including Exhibit 437, the "RDMA document," and Exhibit 440).

While the government elicited testimony regarding specific pages, tables, and diagrams for 10 documents, it failed to do so for the remaining 36 lengthy documents across Categories One, Two, Three, and Six. In light of the above, no rational juror could conclude beyond a reasonable doubt that the combinations of all of the documents in Categories One, Two, Three, and Six qualify

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT OF ACQUITTAL
CASE NO. 3:24-CR-00141-VC

as trade secrets. Accordingly, this Court should order that Mr. Ding be acquitted on Counts One, Two, Three, Six, Eight, Nine, Ten, and Thirteen.

###### c.       There Is Insufficient Evidence that the Combination Trade Secrets Had Independent Economic Value.

No rational juror could conclude beyond a reasonable doubt that Mr. Ding is guilty of Theft of Trade Secrets or Economic Espionage to the extent they relied on combination trade secrets for which there is insufficient evidence of independent economic value.

During its closing, the government argued that "Dr. Sanchez testified about how the combination of all the documents in each category is . . . even more valuable than each document on its own." Trial Tr. 2133:9-12. But Dr. Sanchez's testimony makes clear that the overall sum is no more than the sum of its parts.

As to **Category One**, he asserted that the combination of the documents provided more value than just the value of each document on its own, but explained only that "these components are not necessarily designed in isolation" and the combination "reveals additional information about [components'] code design and their interactions." Trial Tr. 1049:14-1050:7.

As to **Category Two**, he asserted that the combination of the documents provided additional value that goes above and beyond the value from the individual documents, but he explained simply that they provide "a more complete picture of how to build such a system because they're describing complementary information," and appears to discuss only some of the constituent documents and only at a high level. Trial Tr. 1106:7-1107:3.

As to **Category Three**, he asserted that that the combination of the documents provided additional value that goes above and beyond the value of the individual documents, but again explained only that "the combination of these documents gives a more complete picture of what is the custom software that Google uses in managing these TPU-based systems." Dr. Sanchez discussed but one example, Exhibit 383, despite the fact that there are 19 documents in this category. Trial Tr. 1122:22-1129:9, 1134:10-24.

As to **Category Six**, he asserted that the combination of the documents would be valuable, separate and apart from the individual value from the individual documents, but explained just that

27

they provide "a more complete picture of what the road map is for Google -- for Google's products -- or for Google's SmartNIC devices, as well as what their strategy is for producing these -- these components." Dr. Sanchez also provided an example in which he discussed only three of four of the exhibits in this category. Trial Tr. 1198:24-1199:16.

In sum, Mr. Sanchez's testimony boils down to a high-level opinion that the combinations provide a "more complete picture" of each category because they include more information. But he does not explain exactly what portion of each document is valuable and he does not explain exactly how these portions interact all together to create a combination that is more valuable than the addition of the value of each constituent piece. His testimony thus shows that the combinations provide no novel insight into Google's processes, but simply that more documents provide more information. Dr. Sanchez also fails to discuss *all* of the trade secret documents that are part of each combination, failing to demonstrate that there is any value at all to the full combination of documents. There was consequently insufficient evidence that any of these combinations is a trade secret apart from the individual documents in each category.

In light of the above, no rational juror could conclude beyond a reasonable doubt that the combinations in Categories One, Two, Three, and Six qualify as trade secrets. Accordingly this Court should order that Mr. Ding be acquitted on Counts One, Two, Three, Six, Eight, Nine, Ten, and Thirteen.

### d.     The Government Failed to Prove the Essential Elements of Trade Secrets.

As discussed in greater detail above, the government failed to prove beyond a reasonable doubt the underlying trade secret claims. Moreover, the jury failed to find that the government had met its burden to prove beyond a reasonable doubt that 97 of the 112 trade secrets were trade secrets and stolen by Mr. Ding. Further, the verdict was inconsistent as to Counts One through Three, Six, Eight through Ten, and Thirteen, in that the jury failed to find that the government had proven beyond a reasonable doubt that any of the individual trade secrets within these categories were trade secrets. *Cf. United States v. O'Rourke*, 417 F. Supp. 3d 996, 1006 (N.D. Ill. 2019) (rejecting defendant's challenge to combination jury instruction because "the Court *also* instructed the jury that the information also had to be a trade secret" and the jury's verdict reflected they had identified

28

trade secrets in the constituent materials).

In light of all of the above, no rational juror could conclude beyond a reasonable doubt that Mr. Ding is guilty of Economic Espionage. Accordingly this Court should order that Mr. Ding be acquitted on Counts Eight through Fourteen.

### **RULE 33 MOTION**

### I.      **LEGAL STANDARD**

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." In weighing a Rule 33 motion, a district court must determine whether "it would be a manifest injustice to let the guilty verdict stand." *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992) (quoting *United States v. Reed*, 875 F.2d 107, 114 (7th Cir. 1989)). A district court has broad discretion to grant a new trial. *United States v. Inzunza*, 638 F.3d 1006, 1026 (9th Cir. 2011) ("A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal." (quoting *United States v. Alston,* 974 F.2d 1206, 1211 (9th Cir. 1992)); *United States v. Ferguson,* 246 F.3d 129, 133 (2d Cir. 2001) ("[Rule 33] by its terms gives the trial court broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice.") (internal quotation and citation omitted); *see also United States v. Prescott,* 221 F.3d 686 (4th Cir. 2000) ("By its terms, Rule 33 confers broad discretion on a district court"). In determining whether to grant a new trial pursuant to Rule 33, "the court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weight the evidence and evaluate for itself the credibility of the witnesses." *United States v. Kellington,* 217 F.3d 1084, 1097 (9th Cir. 2000) (citing *Alston,* 974 F.2d at 1211).

### II.     **ARGUMENT**

#### A.      **The Government Failed to Adequately Identify the Relevant Trade Secrets, Resulting in an Unfair Trial.**

The government did not adequately and consistently identify the relevant trade secrets, and allowing the jury's guilty verdict to stand would be a miscarriage of justice.

The Sixth Amendment and Federal Rule of Criminal Procedure 7 require that a defendant

29

be fairly informed of the nature and cause of the accusations against him. U.S. CONST. amend. XI; Fed. R. Crim. Proc. 7(c)(1). In a prosecution for the theft of trade secrets, the government must "identify the alleged trade secrets with particularity." *United States v. Liang Chen*, 2020 WL 6342931, at *5 (N.D. Cal. Oct. 29, 2020). Where a federal indictment is deficient, district courts may "direct the filing of a bill of particulars" in order to allow the defendant to adequately prepare for trial and to minimize or avoid surprise at trial. *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979) (cleaned up); *United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984).

Here, the government did not allege that Mr. Ding stole specified trade secrets or particular documents, but simply that he stole seven broad categories of documents consisting of more than 1,000 unique files. Dkt. 140 at ¶¶ 34-42. The government provided somewhat more detail in letters, identifying 105 trade secret documents spanning more than 2,400 pages, but the government did not identify the relevant portions of these documents. Fondo Decl. Ex. A. The government also disclosed that it planned to argue that 17 combinations of the 105 documents constituted combination trade secrets, again without identifying any particular portions of the documents or how they formed a combination. Fondo Decl. Ex. B.

Mr. Ding filed a motion in limine seeking to preclude the government from relying upon entire documents without identifying which portions were trade secrets. Dkt. 159 at 10-14. The Court denied this motion as moot in light of its direction to the government to identify which documents it would focus on at trial. Dkt. 292 at 2. The government later disclosed that it planned to focus on only 33 of the 105 trade secret documents at trial. Fondo Decl. Ex. D. At trial, however, the government actually focused on just 18 documents and discussed the 87 other documents only in summary fashion. *Supra* at 24-25. Even for these 18 documents it showed the jury, the government treated each document as a whole as a trade secret rather than exhaustively and specifically identifying the particular portions of each document that were purportedly trade secrets. The government walked through particular portions of these 18 documents, but noted that it was simply covering examples of page ranges. *E.g.*, Trial Tr. 1019:1-10 (Dr. Sanchez testified regarding Exhibit 363 that "[t]hese are just very selected examples, but the whole document is revealing information that would be valuable").

30

The government proceeded similarly at trial regarding the combination trade secrets. It narrowed the combination trade secrets from 17 to seven. Dkt. 367. And just as it did not identify particular portions of the constituent documents, the government did not identify particular portions of the documents that comprised the combination and did not even discuss particular documents that comprised the combination. *Supra* at 24-26. Though the government presented its case at a high level on the basis of entire documents and combinations of documents, it acknowledged during a hearing on January 26, 2026 that "to the extent that a trade secret document has public information in it, we're not claiming that the public information itself is a trade secret" and "the point is that the trade secret documents do include -- some of them include some public information." Trial Tr. 1816:1-9, 1817:22-1818:16. And, as discussed above, Dr. Sanchez never made clear which portions were public and which were not. *Supra* at 19-20.

As a result of the government's lack of precision, it was able to constantly shift the goal posts. The defense was forced to prepare for a trial based upon approximately 2,400 pages of technical documents, plus seventeen combinations, only for the government to focus on a smaller number of trade secret documents and combinations. Furthermore, the government never identified which portions of documents were trade secrets or which portions of documents comprised the combination trade secrets. Again, the defense (and jury) was left guessing about what exactly the government considered to be trade secrets, as demonstrated by the fact that the jury rejected 97 of 112 trade secrets the government attempted to prove.

In so doing, the government violated the Constitutional principle that a defendant be fairly informed of the charges against him, materially prejudicing Mr. Ding's ability to evaluate the purported trade secrets, build his defenses, and prepare for trial. *See Liang Chen*, 2020 WL 6342931, at *5 (granting motion for bill of particulars and agreeing with defendant that the "uncertain and shifting landscape" caused by the government's non-exhaustive list of example trade secrets "impairs their ability to prepare for trial"); *United States v. O'Rourke*, No. 17-cr-00495, Dkt. 43 (N.D. Ill. Sept. 5, 2018) (ordering government to provide a bill of particulars where "[i]t is unclear what part of the data, combination of parts of the data, or particular trends and conclusions that can be determined from the data constitute trade secrets" and "the referenced documents appear

31

to contain a variety of information that could constitute" the alleged trade secrets).

The government could and should have identified the precise trade secrets at issue before trial, and could and should have stuck to the precise trade secrets that it identified. Its failure to do so resulted in moving goal posts that impacted Mr. Ding's ability to prepare for trial and defend himself, particularly considering the constraints presented by the Criminal Justice Act. Mr. Ding is therefore entitled to a new trial in the interests of justice.

**B.      The Court's Rulings Regarding the Defense's Experts Resulted in an Unfair Trial.**

The Court's rulings regarding the defense's experts Mr. Pflaum and Mr. Pooley resulted in an unfair trial, and allowing the jury's guilty verdict to stand would be a miscarriage of justice.

The parties exchanged expert disclosures on August 26, 2025. For its part, as relevant here, the government disclosed Dr. Daniel Sanchez as an expert to provide opinions about the non-public nature and value of the trade secrets. For his part, Mr. Ding notified the government that it planned to call Mr. Isaac Pflaum as an expert regarding similar topics. The government filed a *Daubert* motion to exclude Mr. Pflaum's testimony on September 9, 2025. Dkt. 146. In response to the narrow issues that the government raised, the defense provided a supplemental disclosure on October 31, 2025. The government went on to file a supplemental *Daubert* brief on November 20, 2025, raising new issues. Dkt. 229.

The Court held a *Daubert* hearing regarding Mr. Pflaum on December 5, 2025. The Court expressed reservations regarding Mr. Pflaum's qualifications and the reliability of his opinions during these proceedings. The government filed additional supplemental *Daubert* briefs on December 11, 2025, and December 23, 2025, raising new issues each time. Dkt. 272; Dkt. 280. As trial approached, the *Daubert* motion still had not been resolved and the defense did not know whether it would be able to call an expert to counter the testimony of Dr. Sanchez. Mr. Ding scrambled to attempt to find a rebuttal expert during this period. On January 6, 2026 the Court informed the defense that the Court was still undecided about whether to allow Mr. Pflaum to testify and proposed to hold another *Daubert* hearing during trial. Jan. 6, 2026 Tr. 57:10-58:16. The Court

32

acknowledged that it was difficult for the defense not to know whether Mr. Pflaum would be able to testify but that it would let the parties know later that week. *Id.* at 65:1-9.

Out of an abundance of caution, Mr. Ding informed the government later that day that he was in the process of retaining Mr. Novak to provide expert testimony in rebuttal to Dr. Sanchez and on January 7, 2026, the defense disclosed Mr. Novak's CV to the government. On January 19, 2026, the government filed a *Daubert* motion to exclude Mr. Novak's testimony. Dkt. 328. *Daubert* hearings regarding Mr. Pflaum were scheduled for January 20, 2026, and January 21, 2026. On the morning of January 20, 2026, in an effort to gain certainty and plan for the defense's case, the defense offered to withdraw Mr. Pflaum's testimony and present only Mr. Novak's rebuttal. Trial Tr. 1072:3-1073:3. Later that morning, the Court approved the proposal. *Id.* at 1109:3-18.

The defense disclosed a report regarding Mr. Novak's opinions on January 21, 2026. Dkt. 333. A *Daubert* hearing regarding Mr. Novak's opinions was held on January 23, 2026, after which the Court denied the government's *Daubert* motion. Mr. Novak testified before the jury on January 27, 2026. The government emphasized during cross-examination that Mr. Novak had been reviewing the trade secret documents for only three weeks. Trial Tr. 1963:6-11. In contrast, the government made sure to elicit Dr. Sanchez's testimony that he spent over a year reviewing the trade secret documents. Trial Tr. 2021:23-25.

The delay in the Court's ruling regarding Mr. Pflaum resulted in the delayed retention of another expert, Mr. Novak. This had a direct impact on the jury's assessment of the credibility of Mr. Novak, as Mr. Novak necessarily had a very compressed time in which to review and analyze the trade secret documents. This likely led the jury to assign less weight to Mr. Novak's testimony regarding key aspects of the case such as whether the trade secret documents qualified as trade secrets at all. This was particularly prejudicial where the jury heard that the government's expert had been able to spend *over a year* analyzing the trade secret documents.

In addition to the delay regarding Mr. Novak, the defense was also prejudiced by the Court's restriction of the testimony of Mr. James Pooley. The defense disclosed on August 26, 2025, that Mr. Pooley would opine regarding best practices in protecting trade secrets and whether Google's practices were consistent with those practices. The government moved to exclude Mr. Pooley's

33

testimony, arguing in relevant part that Mr. Pooley's testimony would invade the province of the jury to determine an ultimate issue in the case. Dkt. 148. The defense opposed the motion, citing numerous cases in which testimony about whether a company's protections are consistent with best practices is routinely admitted, including Mr. Pooley's testimony in other cases. Dkt. 170; *see, e.g., Proofpoint, Inc. v. Vade Secure, Inc.*, 2021 WL 2588974, at \*1–2 (N.D. Cal. June 24, 2021) (Mr. Pooley allowed to testify regarding plaintiff's failure to demonstrate reasonable efforts to protect trade secrets). After a *Daubert* hearing, the Court granted the government's motion in part, allowing Mr. Pooley to testify about best practices, but not about Google's shortcomings. Dec. 9, 2025 Tr. 348:15-350:18; Dkt. 263. At trial, Mr. Pooley testified as limited. As a result, the jury lacked helpful expert guidance in evaluating whether Google took reasonable measures to protect its trade secrets,.

The delay in the Court's ruling regarding Mr. Pflaum and the exclusion of portions of Mr. Pooley's testimony resulted in an unfair trial. Mr. Ding is therefore entitled to a new trial in the interests of justice.

### C. The Court's Jury Instructions Were Confusing or Misleading and Resulted in an Unfair Trial.

As discussed above, *supra* at 5-7, 23-24, the Court's jury instructions regarding Economic Espionage and Combination Trade Secrets were confusing and misleading, and led the jury to reach verdicts that were irrational and supported by insufficient evidence. *See United States v. Warren*, 25 F.3d 890, 898 (9th Cir. 1994) (evaluating a Rule 33 motion regarding jury instructions to determine "whether the instructions—taken as a whole and viewed in the context of the entire trial—were misleading or confusing, inadequately guided the jury's deliberations, or improperly intruded on the fact finding process"). The confusing and misleading jury instructions resulted in a miscarriage of justice. Mr. Ding is therefore entitled to a new trial in the interests of justice.

### D. The Guilty Verdicts Are Against the Cumulative Weight of the Evidence.

For all of the reasons discussed herein, the guilty verdicts returned by the jury are against the manifest weight of the evidence. *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000) ("If the court concludes that, despite the abstract sufficiency of the evidence to sustain the verdict, the evidence preponderates sufficiently heavily against the verdict that a serious

34

miscarriage of justice may have occurred, it may set aside the verdict, grant a new trial, and submit the issues for determination by another jury."). Mr. Ding is therefore entitled to a new trial in the interests of justice.

## **CONCLUSION**

For the reasons discussed above, the Court should grant Mr. Ding's motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(c). The Court should enter a judgment of acquittal on all counts. In the alternative, the Court should order a new trial pursuant to Federal Rule of Criminal Procedure 33.

Respectfully submitted,

Dated: February 19, 2026

By: /s/      *Grant P. Fondo*
GRANT P. FONDO (SBN 181530)
*GFondo@goodwinlaw.com*
DARRYL M. WOO (SBN 100513)
*DWoo@goodwinlaw.com*
RACHEL M. WALSH (SBN 250568)
*RWalsh@goodwinlaw.com*
JESSICA HUANG FUZELLIER (SBN 315208)
*JHFuzellier@goodwinlaw.com*
FARZAD FEYZI (SBN 343538)
*FFeyzi@goodwinlaw.com*
DAVID RAPP-KIRSHNER (SBN 344494)
*DRappKirshner@goodwinlaw.com*
NIRAV BHARDWAJ (SBN 350829)
*NBhardwaj@goodwinlaw.com*
NICHOLAS C. WILEY (SBN 351161)
*Nwiley@goodwinlaw.com*
COLETTE A. LOWRY (SBN 359889)
*CLowry@goodwinlaw.com*
**GOODWIN PROCTER LLP**

LORA J. KRSULICH (SBN 315399)
*LKrsulich@goodwinlaw.com*
**GOODWIN PROCTER LLP**
601 S. Figueroa Street, Suite 4100
Los Angeles, CA 90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

Attorneys for Defendant:
LINWEI DING

35

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **February 19, 2026**. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **February 19, 2026**.

/s/ Grant P. Fondo
Grant P. Fondo

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR JUDGMENT OF ACQUITTAL
CASE NO. 3:24-CR-00141-VC